# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 1:21-cr-491 |
| ) | |
| Plaintiff, ) | Judge J. Philip Calabrese |
| ) | |
| v. ) | |
| ) | |
| PAUL SPIVAK, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## OPINION AND ORDER

Defendant Paul Spivak seeks review of the decision of the Magistrate Judge revoking bond and ordering his detention pending trial. Consistent with the Constitution's protection of liberty, federal law favors release unless the defendant presents a serious flight risk or presents a danger to himself or others. Given the centrality of liberty to our constitutional order and the presumption of innocence, the United States bears the burden of proving that detention is warranted. In the Court's opinion, the United States has not met its burden on the record before the Court.

## BACKGROUND

Mr. Spivak is the chief executive officer of US Lighting Group, Inc., a publicly traded Florida corporation that designs and manufactures commercial LED lights, aftermarket automotive parts, and fiberglass recreational boats and campers. (ECF No. 1-1, ¶ 17, PageID #8.) He was arrested on June 8, 2021 on a criminal complaint charging that he conspired to commit securities fraud (15 U.S.C. §§ 78j(b) & 78ff; 17

C.F.R. § 240.10b-5) in what the United States alleges is a pump-and-dump scheme in violation of 18 U.S.C. § 371, between February 15, 2021 and June 7, 2021.

An affidavit from a special agent with the Federal Bureau of Investigation supports the criminal complaint. (ECF No. 1-1.) The agent sets forth facts establishing probable cause that Mr. Spivak committed the charged offenses. (*Id.*, ¶¶ 16–46, PageID #8–16.) He describes an alleged "pump and dump" scheme whereby Mr. Spivak obtained and concealed beneficial ownership in free trading shares in US Lighting Group stock and then conspired to promote the stock by coordinating press releases with planned promotional programs aimed at raising the share price and trading volume so he and his alleged co-conspirators could then sell the stock at an artificially high price. (*Id.*, ¶¶ 23–24, PageID #9.) In support, the affiant describes several recorded meetings and phone calls involving Mr. Spivak, his co-conspirators, undercover employees, and a confidential witness that outline the mechanics of the alleged fraudulent scheme. (*Id.*, ¶¶ 26–35, 38–44, PageID #10–16.)

### A.  Bond and Conditions of Release

Mr. Spivak was arrested on June 8, 2021 and appeared that day in federal court by video. On June 23, 2021, a grand jury returned an indictment. (ECF No. 13.) At Mr. Spivak's initial appearance, the United States sought pretrial detention. The Magistrate Judge held a detention hearing on June 11, 2021 at which the parties reached an agreement for a $600,000 bond secured by ten percent with conditions, including location monitoring and surrender of Defendant's passport. (ECF No. 20, PageID #95.) Mr. Spivak was returned to custody pending a home inspection by pretrial services and deposit of $60,000. (*Id.*) Pretrial services conducted an in-

person assessment of Mr. Spivak's residence around June 11, 2021 and June 28, 2021. (*Id.*) They found a BB gun in the home and noted poor cellular service and internet coverage during the first visit, making electronic monitoring difficult and ineffective. (*Id.*, PageID #111.) On the second visit, pretrial services noted the internet equipment had been updated and the officer made a test call verifying that she had cell service, although "it was still pretty shoddy . . . ." (*Id.*, PageID #113.) Accordingly, pretrial services concluded that the home was not suitable for home detention. (*Id.*, PageID #113–14.)

About a week after pretrial services completed its first visit to Mr. Spivak's home, he moved for a detention hearing, claiming he satisfied all the bond conditions for release, including paying $60,000 to secure the bond, allowing the FBI to take custody of his weapons and search his home, removing all other dangerous devices from his home, surrendering his passport, allowing pretrial services to review his home, correcting the internet issues, and installing a land line. (ECF No. 11, PageID #38.) Three days after that, the United States moved to reopen the detention hearing. (ECF No. 12.) The United States represented that it had recently learned of and was investigating an incident intended to intimidate a witness relative to this case. (*Id.*, PageID #40.) The Magistrate Judge held an arraignment and detention hearing on June 28, 2021.

B. **The Detention Hearing Before the Magistrate Judge**

At the hearing, the United States moved for detention pursuant to 18 U.S.C. § 3142(f)(2)(A) and (B). (ECF No. 20, PageID #97.) First, the United States argued under Section 3142(f)(2)(A) that Mr. Spivak presents a serious risk of flight. (*Id.*,

3

PageID #98.) The United States proffered the following facts in support: Mr. Spivak has access to "assets that can be liquidated and used to flee" and recently received over four million dollars from the sale of his business; "he has plans for contingencies if caught by law enforcement, including creating a cover story"; he "associates with anti-Government conspiracy theorist groups"; and owns several firearms. (*Id.*, PageID #99–100.) It also noted that Mr. Spivak's spouse is from Russia and likely to be charged as a co-conspirator and that Mr. Spivak made statements expressing a willingness to live there. (*Id.*, PageID #103.)

Next, the United States argued under Section 3142(f)(2)(B) that Mr. Spivak presents a serious risk of obstruction and pressuring witnesses. (*Id.*, PageID #100.) In support, the United States proffered the following: a witness, Phil, indicated Mr. Spivak "was volatile and a loose cannon" with a "history of making threatening comments"; shortly after Mr. Spivak learned of that witness's comments, the witness found a bag of dead mice or rats on his doorstep; agents previously observed a mice and rodent problem at Mr. Spivak's home; and two of Mr. Spivak's associates, Anthony Corpora and Steve Eisenberg, at Mr. Spivak's direction, attempted to pressure the witness to write a letter to the Court stating Mr. Spivak was not responsible for the bag of rodents and that he was not intimidated by the incident. (*Id.*, PageID #100–01.)

Next, the United States addressed the detention factors set forth in 18 U.S.C. § 3142(g). (*Id.*, PageID #101.) The United States explained that there are emails, phone calls, and meetings between Mr. Spivak and his co-conspirators speaking to

4

the elements of the alleged offense, conspiracy to commit securities fraud. (*Id.*, PageID #102.) The United States also noted that Russia does not have an extradition agreement with the United States and that Mr. Spivak has millions of dollars at his disposal. The United States argued that Mr. Spivak was dishonest with law enforcement about his collection of firearms and weapons. Finally, the United States reiterated that Mr. Spivak knows the identity of the confidential informant and that the witness who described him as volatile later awoke to a bag of dead rodents at his doorstep. (*Id.*, 102–07.)

The Magistrate Judge had the pretrial officer testify about her visits to Mr. Spivak's home to review its suitability for electronic monitoring. On her second visit, Mr. Spivak's wife showed her a letter from their internet provider indicating they had updated the internet equipment at the house. (*Id.*, PageID #113.) The officer had cell service around the home on her second visit, but found that coverage was still "shoddy" based on a phone call she made during her visit. (*Id.*) She testified that even with the improved internet coverage, home detention could not work because of the phone issues. (*Id.*, PageID #114.) She also testified in response to questions from counsel for both parties.

Defendant cross-examined the FBI special agent. (*Id.*, PageID #124.) Among other things, the agent testified that "there is nothing that directly, at this moment, anything [that] ties Mr. Spivak to the rodent," in reference to the witness intimidation incident the United States described. (*Id.*, PageID #131.) Further, the agent confirmed that the individual who was intimidated planned to leave his employment

5

at Mr. Spivak's business on July 1, 2021. (*Id.*, PageID #135.) He also testified that in some of the recorded calls or meetings, Mr. Spivak "had spoken very fondly of Russia" and mentioned he once spent a year there. (*Id.*, PageID #132.)

Defendant called Steven Eisenberg, an employee at US Lighting Group, to testify. (*Id.*, PageID #153.) Mr. Eisenberg has known Mr. Spivak about seven and a half months. (*Id.*) He testified that he has never witnessed Mr. Spivak threaten anyone with bodily harm. (*Id.*, PageID #154.) He testified that he spoke with the witness who found the bag of rodents after the incident, not to intimidate him but to request, at Mr. Spivak's direction, that he write a character reference for Mr. Spivak. (*Id.*, PageID #158–59 & 161.) Mr. Spivak also testified that he did not attempt to intimidate any witnesses. (*Id.*, PageID #166.) Defense counsel also submitted a number of reference letters on Mr. Spivak's behalf and argued that Mr. Spivak had complied with all the bond conditions, has not traveled to Russia since 2006, has a wife and child here, and should be released. (*Id.*, PageID #174–75.)

### C. The Detention Order

The Magistrate Judge ordered Mr. Spivak detained pending trial. (ECF No. 15.) Specifically, the Magistrate Judge found that there is a serious risk that Mr. Spivak will not appear and will endanger the safety of another person or the community if not detained. (*Id.*, PageID #58.) He found clear and convincing evidence that

> [b]ased upon the quantity of Defendant's weaponry; the secret rooms; cabinets, and compartments at Defendant's home; the discovery of a pistol at his home by the Pretrial Services Officer; his ties to a foreign country; his highly liquid financial position; the circumstances of threatening activities to witnesses in this case; the contents of his jail

6

>telephone calls; and the lack of residential internet connectivity to ensure home detention, no condition or combination of conditions exist that would reasonably ensure the safety of the community or Defendant's appearance.

(*Id.*, PageID #58.) Based on those findings and pretrial service's conclusion that Mr. Spivak's residence was not amenable to home detention, the Magistrate Judge revoked the previously ordered bond. (*Id.*)

Defendant appealed the release order on July 12, 2021 pursuant to 18 U.S.C. § 3145(b), which permits review of a magistrate judge's detention or release order by a federal district court with original jurisdiction. (ECF No. 18.)

### D.     Evidence at the Hearing on August 3, 2021

The Court held a hearing on the appeal on August 3, 2021. At the hearing, the United States proffered the transcript from the detention hearing and many of the same facts proffered at that earlier hearing before the Magistrate Judge. It also proffered two phone calls between Defendant and Mr. Corpora, his associate, recorded from jail after the witness, Phil, reported discovering a bag of rodents outside his home. In the phone calls, Mr. Spivak states he does not know where Phil lives and that he has only known Phil for two weeks. But he also directs Mr. Corpora, in various ways, to contact Phil and have Phil tell law enforcement that the only reason he is detained is because of the rodent incident. Further, Mr. Spivak directs Mr. Corpora to have Phil report that Mr. Spivak could not have arranged for the rodents to appear at Phil's doorstep from jail. Also, the United States proffered that Phil has relevant information and is a witness in this matter. Based on its proffers, the United States argued Defendant presents a serious flight risk and already has

intimidated and threatened witnesses. Further, it argued that because Mr. Spivak lied about the number of firearms he owned, among other things, no set of conditions can be fashioned to justify his release, nor can the Court have confidence Mr. Spivak will comply with conditions of release.

Defendant offered a number of exhibits: (1) Defendant's wife's expired Russian passport; (2) her certificate of naturalization to the United States, dated March 20, 2009; (3) her United States passport; (4) the FBI's inventory of its search of Defendant's home; (5) receipts for two firearms purchased by Defendant's wife; (6) photographs of the storage room in Defendant's basement; (7) photographs of the sliding mirror cabinet; (8) a webpage from TacticalWalls selling the sliding mirror cabinet; (9) an invoice reflecting the purchase and installation of new cellular antenna at Defendant's home; and (10) an invoice reflecting the purchase and installation of internet devices and services for Defendant's home. Defendant also explained that he and his wife purchased weapons in connection with Defendant's businesses (one aspect of which involves development of new technologies to detect weapons in settings such as schools) and that Mr. Corpora has taken possession of any weapons or firearms the FBI did not seize. Defendant argued that he has fulfilled all conditions for bond and that the United States has not proved by clear and convincing evidence that he intimidated a witness in this matter.

The Court took the matter under advisement at the conclusion of the hearing.

## ANALYSIS

District courts review a magistrate judge's release or detention order de novo. *United States v. Tripplett*, No. 1:19-cr-700, 2020 WL 6702118, at *1 (N.D. Ohio Nov.

13, 2020) (citing *United States v. Alexander*, 742 F. Supp. 421, 423 (N.D. Ohio 1990)). On review, the district court engages "in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) (citing *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985)).

Under the Bail Reform Act, "a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)). To merit an order of detention, the United States must prove either (1) by a preponderance of the evidence, that Mr. Spivak poses a risk of flight, *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004); or (2) by clear and convincing evidence, that he poses a risk to the safety of others and the community, *Stone,* 608 F.3d at 946 (citing 18 U.S.C. § 3142(f)(2)(B)).

I. **Risk of Flight and Safety of Others**

The Court finds that the record does not show, by a preponderance of the evidence, that Mr. Spivak poses a risk of flight. Defendant owns businesses here; his wife, three-year-old daughter, and mother-in-law live with him; and he voluntarily surrendered his passport. Apart from a fondness for Russia, his ties to that country are relatively remote and can be managed with home detention and electronic monitoring. These conditions also abate the concern about Defendant's financial liquidity. To the extent potential charges against Mr. Spivak's wife provide an incentive for him to flee with her, presumably she will surrender her passport if and

9

when charged. In any event, the fact that she holds a United States passport does not prove that her husband poses a risk of flight. Electronic monitoring as a condition of release mitigates any concern.

As for the risk that Defendant will obstruct justice or threaten, injure, or intimidate any witnesses, the United States has presented strong circumstantial evidence that Mr. Spivak already threatened or intimated a witness, or attempted or intended to do so. No direct evidence ties Mr. Spivak to the mice left on Phil's doorstep. But that incident came one day after Corpora informed Mr. Spivak of problems with Phil and Mr. Spivak directed Corpora and Eisenberg to have Phil call the FBI—at a time when Defendant knew the United States was investigating. On these facts and circumstances, the United States has presented at most a preponderance of the evidence, short of carrying its burden by clear and convincing evidence.

## II. The Factors Under Section 3142

In determining whether there are conditions of release that will reasonably assure Mr. Spivak's appearance and the safety of others and the community, the Court reviews the record in light of the factors listed in 18 U.S.C. § 3142(g): (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." To order detention under Section 3142(e) requires proof by clear and convincing evidence. 18 U.S.C. § 3142(f); *Yamini*, 91 F. Supp. 2d at 1127.

10

### II.A. Nature and Circumstances of the Offense Charged

The first factor considers whether the offense charged is a crime of violence, has a minor victim, or involves a controlled substance. 18 U.S.C. § 3142(g)(1). The charged offense is not a crime of violence and does not involve a controlled substance. Further, the indictment charges a violation of federal securities laws, a non-violent offense, and Mr. Spivak enjoys a presumption of innocence. This factor weighs in favor of release.

### II.B. Weight of the Evidence

"This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt" and is not a pretrial determination of guilt. *Stone*, 608 F.3d at 948. In addition to the issue of intimidation discussed above, the Court considers Mr. Spivak's collection of firearms and other weapons. There is no dispute the FBI took possession of most of Defendant's weapons and firearms found in his home. There is also no suggestion in the record that Defendant has ever used weapons or firearms in a violent or dangerous manner. Mr. Spivak's associate, Anthony Corpora, took possession of the weapons (and look alikes) the FBI left behind. Corpora's surrender of those weapons to pretrial services and prohibiting Mr. Spivak from keeping any weapons in the home minimize any risk that Mr. Spivak might use weapons to harm the community, including witnesses. Further, a no-contact order combined with electronic monitoring offers sufficient assurances for the safety of others.

### II.C. History and Characteristics of the Person

The history and characteristics of a defendant include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Additionally, they include whether the defendant was on probation or parole at the time he committed the offense. *Id.* § 3142(g)(3)(B). Mr. Spivak, who is 62 years old, has longstanding personal and business ties to the community and the other considerations in Section 3142(g)(3)(B) generally weigh in his favor.

To the extent the United States argues Mr. Spivak lied to the Magistrate Judge regarding his use of the sliding mirror cabinet or to pretrial services about the quantity of firearms or weapons he owned, the Court finds that the record of the hearing before the Magistrate Judge does not show that Mr. Spivak lied on this issue. Although the Court understands—and, to a degree, shares—the concerns of the United States regarding Mr. Spivak's willingness to work in good faith to ensure compliance with the conditions of his release, the Court finds that Mr. Spivak's statements and these concerns are insufficient to overcome the Bail Reform Act's preference for release. For now, at least, the record supports a determination that there are conditions that will reasonably mitigate any character concerns.

### II.D. Nature and Seriousness of the Danger Release Poses

Under 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the

12

person's release." Considering the record as a whole, there is little evidence, if any, beyond that already discussed that Mr. Spivak will pose a serious danger to the community if released, especially with the conditions already mentioned. From the record, it appears that Mr. Spivak uses the phone frequently—a tool of the offense with which the United States charges him—and he may well continue to use his phone (or others) to engage in the sort of conduct precipitating the charges in the first place. Although "economic harm may qualify as a danger contemplated by the Bail Reform Act," the record amounts to little more than speculation that Mr. Spivak may engage particular conduct going forward—short of the clear and convincing evidence the statute requires. *United States v. Israel*, No. 17-cr-20366, 2017 WL 3084374, at *5 (E.D. Mich. July 20, 2017) (citing *United States v. Madoff*, 586 F. Supp. 2d 240, 254–53 (S.D.N.Y. 2009)). On balance, this and the other factors, considered individually and collectively, weigh in favor of release. The United States has failed to prove by clear and convincing evidence that no condition or combination of conditions could reasonably assure the safety of other persons and the community.

## RELEASE CONDITIONS

Section 3142(c)(1)(B) provides that, if a judicial officer determines the pretrial release of a defendant will endanger the safety of the community, the court must use "the least restrictive further condition, or combination of conditions" to reasonably assure the safety of the community. The statute goes on to provide an illustrative list of the types of conditions that the court may use to effect this purpose. 18 U.S.C. § 3142(c)(1)(B)(i)–(xiv).

In this case, the Court finds that there is a combination of conditions that will reasonably ensure the safety of others and the community. In addition to the bond and other conditions to which the parties previously agreed, and the standard conditions, the Court **ORDERS** the following additional conditions of release:

1. Defendant shall be subject to home detention at his residence at all times, including the particular electronic monitoring Pretrial Services recommends. Mr. Spivak must remain at his residence except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by Pretrial Services. Pretrial Services shall test Mr. Spivak's residence to determine whether home detention with electronic monitoring is feasible there. If it is not, the parties shall work together with Pretrial Services to find an alternative residence that is amenable to home detention.

2. Anthony Corpora shall surrender any weapons in his possession Mr. Spivak or his wife own or surrendered to him.

3. Mr. Spivak and his wife may not keep firearms, ammunition, destructive devices, or weapons at his residence or place of detention.

4. Mr. Spivak shall avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution.

5. Mr. Spivak shall not travel outside the Northern District of Ohio or obtain a passport or other international travel document.

Defendant's failure to abide by any conditions of release may be grounds for revocation and subsequent detention.

## CONCLUSION

Based on the record, the Court determines that the foregoing combination of conditions will reasonably assure Defendant's appearance and the safety of the community. Therefore, the Court orders the release of Mr. Spivak subject to those conditions pending trial. For all the foregoing reasons, the Court **VACATES** the order of detention and **ORDERS** the release of Defendant Paul Spivak pending trial subject to the conditions set forth in this Order and such other terms as Pretrial Services may require.

**SO ORDERED.**

Dated: August 16, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio