1              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF OHIO
2                  EASTERN DIVISION

3

UNITED STATES OF AMERICA,        Case No. 21-cr-491
4
              Plaintiff,
5                                        July 22, 2024
        vs.                              10:33 a.m.
6
PAUL SPIVAK,
7  OLGA SMIRNOVA,
CHARLES SCOTT,
8  CHRISTOPHER BONGIORNO,

9              Defendants.

10

11

12          TRANSCRIPT OF PRETRIAL PROCEEDINGS

13       BEFORE THE HONORABLE J. PHILIP CALABRESE

14            UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20  Official Court Reporter:   Susan Trischan,RMR,CRR,FCRR,CRC
                              7-189 U.S. Court House
21                             801 West Superior Avenue
                              Cleveland, Ohio   44113
22                             (216) 357-7087

23

24  Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.
25

```
 1    APPEARANCES:

 2    For the Government:        Alexander Abreu, AUSA
                                 Elliot Morrison, AUSA
 3                              Megan Miller, AUSA
                                 Stephanie Wojtasik, AUSA
 4                              Office of the U.S. Attorney
                                 Northern District of Ohio
 5                              801 West Superior Avenue
                                 400 U.S. Court House
 6                              Cleveland, Ohio   44113
                                 (216) 622-3600
 7
       For Defendant Spivak:     David L. Axelrod, Esq.
 8                              Lauren W. Engelmyer, Esq.
                                 Ballard Spahr - Philadelphia
 9                              51st Floor
                                 1735 Market Street
10                             Philadelphia, PA   19103

11    For Defendant Smirnova:    John F. McCaffrey, Esq.
                                 Anthony R. Petruzzi, Esq.
12                             Izaak Zrnich, Esq.
                                 Tucker Ellis
13                             Suite 1100
                                 950 Main Avenue
14                             Cleveland, Ohio   44113

15    For Defendant Scott:       David M. DeVillers, Esq.
                                 Barnes & Thornburg
16                             Suite 3300
                                 41 South High Street
17                             Columbus, Ohio   43215

18                                William R. Martin, Sr., Esq.
                                 Barnes & Thornburg
19                             Suite 1200
                                 555 12th Street, N.W.
20                             Washington, D.C.   20004

21    For Defendant Bongiorno:   Michael J. Rosen, Esq.
                                 Law Office of Michael J. Rosen
22                             Suite 3400
                                 100 South East 2nd Street
23                             Miami, Florida   33131

24                         - - - - -

25
```

1                MONDAY, JULY 22, 2024, 10:33 A.M.

2                THE COURT:  Hi.  Good morning, everyone.

3                We're on the record in Case Number

4     1:21-cr-491.

10:33:14  5                Counsel, will you please state your

6     appearances for the record?

7                MR. MORRISON:  Yes, Your Honor.

8                On behalf of the United States we have four

9     AUSAs on the line currently.  I think it might speed

10:33:24 10   things up for me just to introduce everybody.

11                This is AUSA Elliot Morrison.

12                With me is, of course, AUSA Megan Miller,

13    AUSA Alex Abreu, and AUSA Stephanie Wojtasik.

14                And Ms. Wojtasik filed her appearance this

10:33:38 15   morning.  I don't know if the Court saw that, but just in

16    case, I wanted to make you aware that she did file that

17    this morning.

18                And I recall your concerns about the size

19    of the team.  Just wanted to reassure you, there was

10:33:48 20   never a plan for Mr. Abreu to try this by himself.  Just

21    had to have a bit of a change in plans when a senior and

22    experienced prosecutor like him leaves the office.

23                THE COURT:  Fair enough.

24                My concern was more to the staffing along

10:34:04 25   the way.  I figured there would be more at trial.

         1                    And I did see Ms. Wojtasik's appearance

         2      this morning, so welcome to you.

         3                    Counsel for Mr. Spivak.

         4                    MR. AXELROD:  Good morning, Your Honor.

10:34:17  5                    David Axelrod and Lauren Engelmyer on

         6      behalf of Paul Spivak.

         7                    THE COURT:  All right.  Good morning.

         8                    Counsel for Ms. Smirnova.

         9                    MR. McCAFFREY:  Good morning, Judge.

10:34:26 10                    John McCaffrey, Tony Petruzzi, and Izaak

        11      Zrnich on behalf of Ms. Smirnova.

        12                    THE COURT:  All right.  Counsel for

        13      Mr. Scott.

        14                    MR. DeVILLERS:  Good morning, Your Honor.

10:34:39 15                    David DeVillers and Billy Martin for

        16      Mr. Scott.

        17                    THE COURT:  And counsel for Mr. Bongiorno.

        18                    MR. ROSEN:  Good morning, Your Honor.

        19                    Michael Rosen standing alone for

10:34:49 20      Mr. Bongiorno.

        21                    THE COURT:  All right.  Good morning, each.

        22                    A few things on my agenda.  I'm sure there

        23      are some other issues that have come up that we can

        24      address as well.

10:35:00 25                    First question I figured I would start on

1     is the metadata issue and kind of find out where we stand

2     on getting that resolved.

3                    So, Mr. Morrison, perhaps I'll start with

4     you since I think that's an issue that was of general

10:35:15   5     concern on your side.

6                    MR. MORRISON:  Yes.  And I think we'd

7     referenced we are happy to try and work with the defense

8     on that, and my sense is that Mr. Abreu and Mr. Petruzzi

9     spoke this morning about that issue, and made progress

10:35:29  10     towards resolution.

11                    MR. PETRUZZI:  That's correct, Your Honor.

12                    Tony Petruzzi here.

13                    Some of the metadata fields were not

14     provided.

10:35:41  15                    We talked this morning with Alex Abreu and

16     explained that some of the, like, titles were not

17     produced, for instance, or a folder path.  And the folder

18     paths, basically, they're consistent with what the

19     Government produced, and our production was consistent

10:35:57  20     with most of the Government's productions.

21                    The folder path issue is documents were

22     basically put by the defense team into folders and they

23     created the names of those folders, and those folders

24     have work product in them.

10:36:10  25                    Much like the Government's production, the

1    SEC production, they just titled the folder SEC.  So it's

2    not the original folder path.  We don't have that the way

3    it was collected.

4              The titles to the documents are

10:36:21  5    descriptive, but some of the descriptions in them were

6    changed to discuss -- like an example of one document,

7    the title goes right to an affirmative defense, so that

8    would be work product.

9              But some of the others, a lot of the others

10:36:38 10    we think we can produce to the Government, and then that

11    way they'll know what the documents are.  The

12    descriptions are consistent with the exhibit list

13    descriptions, so we think we're good there.

14              In terms of most of the Government

10:36:51 15    productions, they did not produce, like, custodian and we

16    did not as well, but custodians basically is kind of a

17    created field in the most part.

18              If it's like, you know, the defense, you

19    know, we can change everything to Smirnova/Spivak is the

10:37:08 20    custodian and in a sense that doesn't matter.  The

21    Government did not produce that in most of theirs, and so

22    the fact that, you know, same with folder path, to the

23    extent they did very bland names.

24              Create dates and modified dates, in many of

10:37:22 25    the Government's productions and ours, are also kind of a

1    date maybe you copied the document, so that's really

2    again consistent with theirs.

3                    And if you recall, we had this USLG bit

4    mass issue in the beginning of this case, and, you know,

10:37:37   5    we said, you know, under the case law and Sedona

6    Conference Principles, don't ask for what you don't need.

7                    And we didn't really need a lot of these

8    metadata fields for most of their productions, except the

9    bit mass one which we got.

10:37:51   10                    And even then, the create date and modified

11    dates for the most part were not the original dates on

12    it, but we said in the letter we don't feel we need it

13    unless it was an issue.  And that's what we feel here.

14                    We do have the author and author metadata

10:38:06   15    fields which were not produced, but we can produce that.

16    Just to point out, on most of the Government's

17    productions they did not produce that field.  Again, that

18    might not be consistent on some.

19                    I can tell you on one document it was a

10:38:17   20    document gathered by defense and it might have

21    Mr. McCaffrey's secretary as the author, so there's going

22    to be some things there.

23                    But in talking to Mr. Abreu -- and he can

24    correct me if I'm wrong -- we feel if we can add some of

10:38:29   25    these fields, he understands the folder path field will

1    not be needed.  We can do the title of the document,

2    except for maybe a few that are truly work product,

3    unless we change the names, and then the eAuthor fields.

4                    So I think we'll be able to do that, and

10:38:48  5    that would take, you know, a day or two.

6                    THE COURT:  All right.  Mr. Abreu, did you

7    want to speak to any of that?

8                    MR. ABREU:  Thank you, Your Honor.

9                    As Mr. Petruzzi said, yes, we're working

10:39:00 10    through it.

11                    This isn't an issue of, like I mentioned

12    earlier, I think maybe a handful of e-mails where

13    metadata, the actual metadata of, like, the creation of

14    the file, who sent it, that kind of stuff is important.

10:39:15 15                    This is more just being able to organize

16    the information, knowing what we're looking at at a

17    glance as opposed to going through each, you know, one of

18    the documents and seeing what's in there.

19                    And so this shouldn't be a tough issue to

10:39:31 20    overcome.  I don't think we're really concerned about who

21    at the transfer agent created a specific record.  That's

22    not what we're worried about.

23                    We just want to know that it's a transfer

24    agent record for what stock and, like, what month.  And

10:39:46 25    so we should be able to work through that pretty quickly,

1    and I appreciate Tony's -- Tony's willingness to work

2    with us on that.

3            THE COURT:  All right.  Thanks.

4            So it sounds like that should largely move

10:40:00 5    into the past here in fairly short order, unless I'm

6    misunderstanding your -- or missing something.

7            MR. ABREU:  I think that's right, Judge.

8            THE COURT:  All right.  With that, I want

9    to turn and just try to start getting a sense, I'm not

10:40:20 10   sure it makes sense, I'm not sure it's the best use of my

11   time or our collective time to go through witness lists

12   witness-by-witness, but have you, Mr. Morrison, been kind

13   of figuring out, you know, lengths of examinations and so

14   forth?

10:40:41 15           MR. MORRISON:  Yes, Your Honor.

16           And I think the best way to describe it is,

17   you know, I was in Yellowstone National Park on Tuesday,

18   I came out for the conference on Wednesday, and flew home

19   on Thursday.

10:40:54 20           I've been trying to get up to speed as much

21   as humanly possible, and we're still at the stage where

22   there's, as you know, of course, when you're getting your

23   arms around a big case like this, there's a part where

24   you're still kind of feeling all the parts of the

10:41:09 25   elephant.  And I think we're still making our way to the

1    trunk here.

2              At the same time, while we are kind of

3    building out the case -- and as you said there's sort of

4    a keeping-your-options-open phase -- it's not that we're

10:41:20  5    trying to sort of play a shell game with what the options

6    are, but, you know, as we go through all the details, we

7    come up with more relevant information that we want to

8    add to the exhibit list or identify additional investors

9    and victims who are witnesses.

10:41:35  10              And so to a certain degree we're adding,

11   and but at the same time we're trying to, as we get into

12   the details -- and as you know the process, trial

13   preparation is always refining, refining -- we're

14   subtracting.

10:41:49  15              So, for example, while we've added a number

16   of victim investor witnesses, we are trying to trim back

17   the number of witnesses when possible.

18              And so that's a lot easier for us to do

19   when we have kind of more ready access.

10:42:01  20              So with law enforcement witnesses, for

21   example, we've cut down on the number of undercover

22   witnesses that we plan to call by half approximately.

23              And so as we go through that process, I'm

24   hopeful that we're not going to be at the four-week end

10:42:17  25   of the kind of possibility, but nor am I hopeful that

1    we're going to be at the two-week.

2              I'm more thinking the three-week is a

3    reasonable estimate of kind of the Government's case in

4    chief, bearing in mind that we can't account for what the

10:42:32 5    defense's cross-examination is going to be.

6              So that's kind of trying to get in mind our

7    direct examination and any redirect time, and things like

8    that.

9              And in terms of the other parts of the

10:42:44 10   trial, I do think it's helpful to have the Court's

11   decision over the weekend.  Thank you for getting that

12   out.

13             I know you've been bogged down with TRO

14   matters, and I know from my clerkship how much of a

10:42:56 15   disruption that can be for chambers, and so I really do

16   appreciate you spending time over the weekend to get that

17   out and it was very helpful to us.

18             We do still have a number of questions

19   about the logistics, but I think having some of those

10:43:08 20   questions answered might help us give more accurate

21   estimates of the length of the trial.

22             THE COURT:  All right.  Happy to address

23   questions on logistics, either now or later if that makes

24   sense.

10:43:21 25             You tell me.

1          MR. MORRISON:  Well, if it's good for you,

2     it might make sense, depends on how much more you want to

3     get into the details of the exhibit and witness lists and

4     how precise an estimate you want.

10:43:33  5          I probably don't think at this exact moment

6     it will get a whole lot more precise, so we could save

7     those questions for later after everyone's had a turn

8     here.

9          THE COURT:  All right.  Well, let's come

10:43:44 10    back to that later then.

11          I suppose the other question I have is to

12     what extent, if any, have you and your team conferred in

13     that process with defense counsel to start identifying

14     the witnesses and anticipated lengths of examinations?

10:44:02 15          MR. MORRISON:  Well, we have not discussed

16     with them the expected lengths of the examinations.

17          It's my understanding that Mr. Abreu did

18     provide the identities of the witnesses that were on the

19     last list.

10:44:14 20          We have, kind of over the weekend, been

21     trying to update that, and to be candid I have not

22     provided that to the defense, so they shouldn't be put on

23     the spot to know what we're doing with these additional

24     witnesses or even who they are or how many there are.

10:44:26 25          But I wanted to try and refine that,

1    bearing in mind the concerns they have about trying to

2    identify people and identifying exhibits before sending

3    that over to them.

4              But we do fully intend to confer with them

10:44:36  5    about that.  And I think to their concern about being

6    able to understand what is -- what the subject of the

7    testimony is, you know, I take their point.

8              You know, I think Mr. Abreu's witness list

9    did identify what the subject of their testimony is

10:44:52 10    consistent with the trial order.

11              I take their point, however, that it would

12    help them to have a little more detail as they prepare

13    for trial before they get the *Jencks* of what exactly that

14    means.  Right?

10:45:05 15              They're going to testify about

16    communications.  You know, a victim is going to testify

17    about communications with the defendants and other

18    co-conspirators.

19              Well, my goal is to be able to add to that

10:45:17 20    description, you know, primarily these particular

21    defendants or these particular co-conspirators.

22              And I think also by identifying the

23    witnesses, the victims by name, their trading references

24    are already a part of the exhibit lists, it will be

10:45:31 25    easier to marry up the specifics of what they are going

1    to say in terms of their preparation.

2                    And in addition to that, we're also

3    endeavoring to go through with each witness and with as

4    many exhibits as possible which phase or phases of the

10:45:42  5    trial that witness or exhibit is relevant to.

6                    And I take the point that's helpful not

7    just to them but to us, right?  We've got to get our

8    ducks in a row on that, and then it will be helpful, I

9    think, for everyone to have our sense of that.

10:45:55 10                    And so we are trying to go through that.

11    Candidly, we have not provided that to them yet, but as I

12    said it's been a relatively condensed time period since

13    the end of Wednesday afternoon.

14                    THE COURT:  And thanks for that update.  I

10:46:10 15    appreciate it.

16                    If I may ask the same questions of the

17    defense counsel.

18                    Have you been narrowing in on the witnesses

19    you intend to call and how long you expect to put them on

10:46:19 20    the stand, recognizing I appreciate -- so I don't need to

21    hear the speeches -- you don't have any burden and you

22    may elect at the time of trial not to call any witnesses.

23    I get that.

24                    I'm just trying to plan accordingly and the

10:46:33 25    like, and I think there's a point at which, recognizing

1    that you're all preserving your rights and reserving the

2    right to make that decision, I'm not penalizing you for

3    doing less.  I'm just trying to figure out what does this

4    look like in a scenario where we're having defendants

10:46:49  5    actively putting on witnesses as well.

6                 So have you made progress on that front?

7                 Start with Mr. Axelrod.

8                 MR. AXELROD:  Well, Your Honor, I guess I

9    have to start because I, you know, I filed the motion to

10:47:01  10   compel last week, and the issues that I raised in the

11   motion to compel with respect to exhibits still haven't

12   been resolved.

13              We are no further along with the

14   Government's exhibits than we were last week.

10:47:15  15              I'll just give you a couple examples.

16              Exhibit 105 is Paul Spivak's Apple iPhone

17   which probably contains, you know, 50,000 individual

18   pieces of data.

19              I have no idea.  Listen, if they just want

10:47:30  20   to hand up his phone as an exhibit, I don't know what

21   relevance that has.  I assume they will want stuff off

22   that phone, but I don't know what they intend to use off

23   of that phone.

24              Furthermore, if you use an example, Exhibit

10:47:43  25   303, which is SEC investigation, again I don't know what

1    that document is, but I know that the SEC turned over

2    8,900 different documents to the U.S. Attorney's Office

3    that have been produced to us.  They are Bates labeled.

4                    And I don't know if that SEC investigation

10:47:59  5    in Exhibit 303 is meant to be 8,900 different documents,

6    or if that pertains to a single document.

7                    And those kind of -- those are two

8    examples, but those problems kind of go through pretty

9    much a lot of the Government's exhibit list which we

10:48:17 10    still haven't received clarity on.

11                    I mean, I find myself in the same place I

12    was last week.

13                    Mr. Morrison, you know, helpfully says he

14    wants to provide us detail on what the witnesses say, but

10:48:31 15    again says, "I'm not going to produce *Jencks*."

16                    I guess I just don't understand why he's

17    willing to produce a description of what a witness

18    intends to testify about, but he refuses to produce

19    *Jencks*, which would be what the witness has said to the

10:48:46 20    Government and what is potentially in that witness's

21    testimony.

22                    I've looked at the witness list.  I

23    actually think -- the Government's witness list.  I

24    actually think it makes a lot of sense, to be quite

10:48:57 25    honest.

1           I think there's a clear delineation between

2   Count 1 and Count 2.

3           I think anyone who has looked at the

4   discovery or understands this case, understands that

10:49:07  5   almost all the witnesses are Count 1 witnesses, and Count

6   2 is primarily an FBI agent, a cooperator, and a

7   recordings case.

8           I assume that very few of the documents on

9   the Government's exhibit list pertain to that, that Count

10:49:23 10   2.  So I'm actually happy that the Government is going to

11   provide us more information on that, but that part is

12   very clear to me.

13           I think Mr. Morrison's estimation of three

14   weeks seems lengthy to me based on I think the investor

10:49:39 15   witnesses will all be relatively quickly.  I can't

16   imagine them being on the stand for more than a half an

17   hour, 40 minutes a pop.

18           I suspect the cooperator witnesses will be

19   more lengthy, but again I haven't seen *Jencks* so I'm just

10:49:51 20   going off of what I could assume that, based on my

21   experience as an AUSA, what I would ask them and what I

22   would use to build their testimonies out.

23           So again, you know, just based on what

24   I -- how I expect the Government to present their phase

10:50:05 25   one case, which I think will be the heavy witness case, I

1    suspect that our defense case for Mr. Spivak and

2    Ms. Smirnova, and to some extent, you know --

3    Mr. McCaffrey can correct me on this -- but I think that

4    theirs will largely kind of run together because of the

10:50:24  5    nature of those two defendants, I think it's a three to

6    five day defense case.

7             And then again with regard to Count 2, once

8    we move to the Count 2 part of the case, again that's not

9    largely a witness case; that's largely a tape case.  So I

10:50:36 10    think that the defense case will probably be a lot

11    shorter for Count 2.

12            And then I can barely wrap my head around

13    what the stage three will look like, but I suspect the

14    defense case will be very short in that phase of the

10:50:48 15    case.

16            THE COURT:  Mr. McCaffrey, any different

17    assessment?

18            MR. McCAFFREY:  No, Judge.

19            But I did want to add just a couple of

10:51:00 20    comments.

21            The length of the first trial is still

22    unknown to us because, as the Court saw in the motion for

23    reconsideration and also the supplemental motion for

24    reconsideration, the Government intended to introduce as

10:51:21 25    404(b) evidence much of the evidence that's in the Count

1    2 case.

2              We obviously are resisting that, and are

3    preparing a motion in limine on that issue.

4              So to the extent that we know what that is,

10:51:35  5    that could -- that could affect the length of the trial

6    by a few days even.

7              Also, in -- when we did get the reverse

8    proffer, the reverse proffer was given without

9    attribution for any witnesses.  So we're still in the

10:51:52 10    dark as far as, you know, who is saying what and what's

11    the source of the information that the Government

12    presented in the reverse proffer.

13              The -- we haven't received any *Jencks*

14    material yet, Your Honor.  That, you know, from my

10:52:12 15    standpoint, my client's only charged in two counts, the

16    conspiracy counts.  I don't know if there are witnesses

17    that are going to say a lot about Ms. Smirnova or nothing

18    about Ms. Smirnova.

19              And that's -- that's going to affect

10:52:30 20    whether or not I cross-examine that witness for two hours

21    or I don't ask any questions.

22              So that's -- I guess I'm in -- I'm no

23    further along than we were when we spoke last week.

24              THE COURT:  All right.  Thank you.

10:52:48 25              Mr. DeVillers or --

1          MR. DeVILLERS:  Yeah -- I'm sorry, I

2     interrupted.

3               THE COURT:  -- or Mr. Martin.

4               MR. DeVILLERS:  I'll take it, Judge.

10:52:57  5          Again, I really don't have a problem in

6     principle with the witness list.  I kind of get that.

7               Again, I still don't know what the exhibits

8     are.  I understand that they are put in boxes of

9     individual counts, but -- of the substantive counts, but

10:53:11 10    it's the Count 1 and Count 2 that my client's

11    particularly concerned about since that's what he's

12    charged in, and I just don't know what they are.

13               As far as our witnesses, we have an expert

14    that we intend to put on.  I'm certain we'll do that.

10:53:23 15  And then perhaps the defendant.  But I can't see

16  Mr. Scott's case being more than a day long.

17               THE COURT:  Mr. Rosen.

18               MR. ROSEN:  Judge, good morning.

19               I'm not going to repeat what's been said.

10:53:40 20  It applies to us as well.

21               I anticipate a day, maybe a spillover to a

22    second day, for defense witnesses.

23               THE COURT:  All right.  There was some

24    mention of motion in limine on the 404(b) issue.

10:54:27 25               I've been giving that issue some thought

1    for quite some time.  Obviously what I've said thus far

2    is I don't think there's any per se Evidentiary Rule in

3    the case on that.

4                    So we do have more work to do.

10:54:46  5                    I'm reluctant to make it as a general

6    proposition.  I did address that in the ruling over the

7    weekend to some degree.  I think I'm not sure I have

8    anything to add at this point beyond that.

9                    The -- I guess the real question I want to

10:55:02 10   ask at this point is with the exchange of the witness

11   lists, are there any objections that anybody has to any

12   of the specific witnesses, you know, as, you know, just

13   being called as a witness?

14                    MR. MORRISON:  Well, Your Honor, I think

10:55:19 15   the defense has sought to exclude the Government's

16   expert.

17                    That's the only one I'm aware of.

18   Obviously, and again I don't want to hold them

19   to -- well, they haven't seen the update to our witness

10:55:31 20   list, but I don't think it will be anything surprising.

21   It will be additional victim investors; fewer law

22   enforcement witnesses.

23                    And --

24                    THE COURT:  Yeah, I should clarify.

10:55:39 25                    I was not asking about the pending Rule 702

1    motion yet.

2                I will get there shortly, but subject to

3    that.

4                MR. MORRISON:  And, Your Honor, I guess we

10:55:52 5    can't speak to -- in details to their expert.

6                We've only just begun to review their

7    expert reports that were provided and, you know, that's

8    kind of part of the reason for our request for a

9    continuance.

10:56:03 10                You know, I've got a 38-page report from

11    Mr. DeVillers which, you know, credit to them that it's

12    detailed, but it goes through sort of quantitative

13    analyses of various trading periods, and that's just for

14    Mr. Scott, and a separate one from Mr. Axelrod and

10:56:20 15    Mr. McCaffrey.

16                And so as we go through those, we'd intend

17    to kind of potentially file something, although I'm not

18    anticipating trying to keep them out altogether, but I do

19    think it's possible we would ask our expert to prepare a

10:56:32 20    response, a rebuttal.

21                MR. ROSEN:  Your Honor, on behalf of

22    Mr. Bongiorno, I'm just going to note that the Court gave

23    all parties a deadline to file witnesses and exhibits.

24    And with new counsel coming in for the Government I'm

10:56:49 25    hearing changes and additions to their witness lists.

1          So I guess it becomes a function of when is

2     the Court setting the case for trial, when are we going

3     to get those additional witnesses, but I think it should

4     be noted that the time for that has come and gone.

5          THE COURT:  I'm just trying at the moment

6     to figure out if anyone is objecting to the witnesses who

7     have been disclosed.

8          MR. ROSEN:  On behalf of Mr. Bongiorno, no,

9     Your Honor.

10         THE COURT:  I think I saw Mr. DeVillers

11    shake his head no.

12         MR. AXELROD:  And, Your Honor, this is Dave

13    Axelrod.

14         Based on what I know about the witnesses,

15    besides the expert, no objection.

16         I mean, I think it will come -- I think

17    with some of the cooperators I suspect that some of the

18    substance of their testimony may be objectionable, but

19    not -- not on a per se basis.

20         THE COURT:  Right.  And that's what I'm

21    trying to get at here is just, you know, is there anybody

22    who you're looking at and saying, "Oh, witness 14 just,

23    you know, we will object to for some reason"?

24         MR. AXELROD:  Briefly, because we touched

25    on it, I do -- I am a bit concerned about the

1    Government's proposed rebuttal expert disclosure.

2              I mean, we filed a motion to preclude their

3    expert, I think for good reason, because it didn't meet

4    the new Federal Rule requirement for what an expert

10:58:11 5    disclosure may look like, but I am concerned that now

6    they understand that and they're going to use this

7    rebuttal as essentially a second bite at the apple.

8              But I'm not going to make that argument

9    until I actually see what they propose.

10:58:27 10              THE COURT:  So with respect to the 702

11    motion, by my calculation the deadline for a response

12    from the United States is this Friday.

13              Hopefully we calculate the same deadlines.

14    And if so, I just want to make sure we're on track for

10:58:46 15    that.

16              MR. MORRISON:  Your Honor, just briefly.

17              We're happy to respond by this Friday.

18              I did want to point out it is, even as

19    captioned by the defense themselves, not a Rule 702

10:59:00 20    motion.  It's a Rule 16 motion.  In my opinion, it's far

21    belated.

22              This was an expert report disclosed in June

23    of 2023.  The deadline for pretrial motions was January

24    of 2024, and this was filed in June of 2024.  So we don't

10:59:14 25    view it as a Rule 702 motion, but the defense apparently

1       in drafting it didn't view it as a Rule 702 motion by

2       their own terms, and it seems to us to be a highly

3       untimely pretrial motion.

4                   So that's our initial response.  We're

10:59:28  5   happy to set that out in writing by this Friday.

6                   THE COURT:  All right.  Thanks.

7                   I guess with respect to any forthcoming

8       rebuttal reports, the only thing I will say is that

9       there's a well-worn path and time-honored tradition in

10:59:52 10  litigation of lawyers representing any party, civil or

11      criminal, using rebuttal reports or witnesses to smuggle

12      in all sorts of evidence that was overlooked on the

13      initial round of evidence or testimony.

14                  The only thing I can really say on that is

11:00:10 15  I think the scope of rebuttal is far narrower than that

16      time-honored tradition.  I do intend, both with respect

17      to fact witnesses or expert reports, vigorously to police

18      that line.  If it's not proper rebuttal, it's not coming

19      in, whether it's an expert report or it's a witness.

11:00:31 20                 Proper rebuttal has to be proper rebuttal,

21      and that is a line that I do police.

22                  So I think without seeing anything else,

23      I'm not sure there's reason to say much else.

24                  So I'll look for that response later this

11:00:49 25  week, and that will be helpful as I move into that.

1            I think you wanted to ask about some trial

2       logistics.

3            There's a few other items on my list.  I

4       think the big one is actually figuring out what day we're

11:01:11 5       going to start the trial.

6            Happy to hear from everybody briefly on

7       that.  I think I know everybody's positions.

8            I've been giving it a great deal of

9       thought, as you all might suspect, but, Mr. Morrison, let

11:01:27 10       me hear from you on where you stand on the trial date.

11            MR. MORRISON:  Well, I think we're

12       approximately where we were last Wednesday with, you

13       know, the caveat that, frankly, I'm at the stage where

14       the more that I'm learning, the more that I see I have to

11:01:43 15       do.

16            And again to your point, I want it to be

17       put together, organized, efficient, and I see no way for

18       it to be even two of those three things by August 12th.

19            And I think the more that I go through, the

11:02:00 20       more that I think we need more time.

21            That being said, you know, this is an

22       all-hands-on-deck situation for our office.  We will work

23       with the date that the Court chooses.

24            And the only thing I would put on the

11:02:12 25       Court's radar that I failed to mention last week is that

1    the main case agent here is the main case agent in

2    another securities fraud trial that is set for September

3    30th before Judge Oliver.

4              I do think there is a possibility that case

11:02:27  5    could be continued, but there's just a possibility of our

6    kind of Government representative being pulled in two

7    directions.

8              THE COURT:  All right.  Thank you.

9              Mr. Axelrod.

11:02:40  10             MR. AXELROD:  Your Honor, I think you know

11   my position.  I won't waste time.  We're ready to go to

12   trial August 12th, and my schedule's difficult if we are

13   talking about a continuance.

14             THE COURT:  Any different view,

11:02:55  15   Mr. McCaffrey?

16             MR. McCAFFREY:  No, Your Honor.

17             But I'll again remind the Court that when

18   we set the trial date, I had advised the Court of a

19   wedding out of town.

11:03:07  20             I just came back from a, last week, a

21   family vacation where my family vacationed but I

22   certainly didn't because I was getting ready for trial.

23             And I have to be there for this, this

24   wedding, which is the -- September 18th, through that

11:03:29  25   week.

1          So I can work with the Court to -- you

2     know, if we continue it another week, I think that that

3     would work.

4          But beyond that, I think I'm running into

11:03:46  5     the issue which I've identified.

6          Thank you.

7          THE COURT:  All right.  Thank you.

8          Mr. DeVillers.

9          MR. DeVILLERS:  Yes, Your Honor.

11:03:57 10          I think I mentioned this last time.

11          I have a pretty substantial trial starting

12     October 7th as well down here in the Southern District,

13     so I suppose we could live with a week, but after, after

14     that, I think it really kind of bumps into some pretty

11:04:13 15     tough problems, for me at least.

16          THE COURT:  And Mr. Rosen?

17          MR. ROSEN:  Judge, I'm good to go on August

18     12th.

19          Fortunately or unfortunately, I don't have

11:04:24 20     a trial set thereafter.  I've got, you know, cases going

21     on, but there's no trial dates.

22          So I guess I'll talk about a family

23     vacation the end of October which I have scheduled a date

24     for.  Hopefully we're not going to be in that area, but I

11:04:39 25     guess if we're spending time talking about it, I do have

1    a commitment the last week of October.

2                    And Judge, somewhere before we say goodbye,

3    I do want to address some thoughts I've had about the

4    jury selection process.

11:04:51  5                    I just don't know when it is the right time

6    to mention that, but I do want to run by some thoughts

7    with the Court.

8                    THE COURT:  Well, it's helpful for me to

9    hear from each of you on that because there's been some

11:05:28 10   moving parts on timing and some different positions at

11   different times.

12                    So I think I keep it all straight in my

13   head, but better for me to confirm.

14                    What I'm inclined to do, in fact what we

11:05:48 15   will do, is start on August 19th, so I'm moving it back

16   one week.

17                    We'll set a couple other dates between now

18   and then to make sure that the witnesses and evidence and

19   any objections and so forth are coming together.

11:06:06 20                    In a way, what I'm balancing in that regard

21   of setting other pretrial hearings and the like is on the

22   one hand wanting to make sure that the work is getting

23   done.  On the other hand, you just need time to do it.

24                    And so I don't -- on the one hand, I know

11:06:23 25   the hearings will force it.  On the other hand, they take

1    time away from it.  So that's the balance we'll be

2    walking going forward in that regard.

3                    With that, it's probably a good time to

4    talk about some trial logistics.

11:06:38 5                    I have one item I wanted to raise or maybe

6    two related items, and it sounds like you all have some

7    issues as well.

8                    From my perspective, as I've thought about

9    what a multi-defendant trial looks like, I'm going to

11:06:50 10   presume that an objection from one defendant is an

11   objection for all.

12                    That way we avoid, you know, multiplicity

13   of or a cacophony of talking in that regard during the

14   presentation of evidence in front of the jury.

11:07:12 15                    And in terms of the examination,

16   cross-examination or presentation of witnesses, the order

17   of opening statements, closing arguments and so forth,

18   unless defendants agree otherwise, I would just assume

19   we're going to use the order from the second superseding

11:07:37 20   indictment, which is kind of how we've been generally

21   proceeding in the status conferences, by and large.

22                    Now, that said, I think it will probably be

23   fairly clear in a handful of instances that particular

24   witnesses offering testimony primarily against, you know,

11:07:53 25   for example, Mr. Scott or somebody else -- and not to

1    pick on Mr. Scott; just, you know, looking at

2    Mr. DeVillers there -- and in that case I would assume

3    that perhaps he would go first.

4              But I think my default is we would be

11:08:12  5    generally using the indictment order, unless there's some

6    agreement otherwise.

7              Mr. Morrison, I think you had some

8    questions about trial logistics and the like.

9              Happy to address those.

11:08:28 10              MR. MORRISON:  Yeah.  And I think the first

11    one, I'll kind of try and go in order of the proceeding

12    of the trial.

13              So at the start of the voir dire there's

14    usually a statement of the case given, and I guess the

11:08:42 15    question with the trifurcation is how -- how are we to

16    craft that?

17              I'm assuming -- my kind of best reference

18    point to this is your kind of death penalty cases where

19    there's a very clear bifurcation, a strong line drawn,

11:09:02 20    but still there's a death qualification aspect to the

21    voir dire.

22              So I'm assuming there will be a permitted

23    discussion of, A, the fact that there will be multiple

24    phases and, B, what some generalities are of the phases

11:09:20 25    of the trial, but I don't want to assume that and be

1    wrong, and so I wanted to check.

2    So that holds for the statement of the case

3    and then for how we conduct voir dire and, yeah, so in

4    terms of what questions we're allowed to ask, what types

11:09:36  5    of evidence we're allowed to mention, that sort of thing.

6    THE COURT:  So I've given that some

7    thought, and I think that the way I intend, as a general

8    proposition, to conduct the voir dire and the like is not

9    to mention that to the prospective jury panel that the

11:09:56 10    trial will proceed in different phases.

11    I think what I intend to say to them is,

12    once we get to the end of phase one, I'm going to say,

13    "Look, the Court has decided that this would be a good

14    time to take a break and have you do something a little

11:10:13 15    bit different and proceed to deliberate on the first set

16    of charges at this point."

17    So I think when you take that and then move

18    it to the front of the case, I think in voir dire can be

19    talking about, you know, both conspiracies that way.

11:10:37 20    I have a pretty strong view that we should

21    not, in voir dire or up until we get to the third phase

22    of the trial, be talking about obstruction of justice or

23    so forth.

24    I'm not aware of any, to use your analogy,

11:10:55 25    kind of death qualification, if you will, that needs to

1   be done in that regard.

2             I think the general voir dire questions

3   that we normally ask about does anyone have any

4   experiences with or negative feelings about, you know,

5   federal agents and so forth, will help screen those sorts

6   of things out.

7             So I don't think there's any specific

8   questioning in that that would matter in voir dire or

9   that would be relevant in opening statements and so

10  forth.

11            Hopefully that addresses that -- your

12  question on that.

13            MR. MORRISON:  And if I understand you

14  correctly, the jury -- the jury is not going -- I think

15  this is very good to not hide from them the fuller scope

16  of the trial, bracketing the obstruction phase, that --

17            THE COURT:  And if by "fuller scope" you

18  mean the amount of time that they are going to be

19  involved, I'll tell you the jury is being summoned and

20  told to expect a lengthier trial, and we will also

21  address that specifically in voir dire.

22            And again, my intent is to kind of stop

23  halfway through or a third of the way through or

24  two-thirds of the way through, whatever the timing turns

25  out to be, and say, "We told you at the outset this was

1   going to be X amount of time.  You know, it's my decision

2   that this is a good time to stop and do something a

3   little bit different, you know, until we're -- until you

4   tell us you're ready to move to the next stage."

11:12:25  5          MR. MORRISON:  Okay.  And so they'll

6   understand when they're deliberating on phase one that

7   there's going to be a phase two.

8          THE COURT:  Correct.

9          MR. MORRISON:  And in that scenario, and

11:12:34 10   again I think that's good because I know you've probably

11   seen the sort of crestfallen and shocked look on a

12   juror's face when they even just learn about a brief

13   forfeiture phase of a trial or something like that.

14          So to have a whole another trial to be a

11:12:50 15   surprise for them is very good to avoid.

16          THE COURT:  We don't have to have a

17   forfeiture phase, do we?  I haven't been factoring that.

18          MR. MORRISON:  No.  No.

19          I think that that's the most common form of

11:13:00 20   bifurcation is, you know, all right, they think they're

21   done and then, surprise, there's another small trial that

22   comes after, and it's a difficult moment, I think, for

23   every, every jury.

24          THE COURT:  No, I want them to be fully on

11:13:13 25   board with there's more to do after this, but we just

1    want to get through this stage before we move to the next

2    part.

3             MR. MORRISON:  Okay.

4             And I'll bracket, I think this is not the

11:13:25  5    time for it, but that you made reference to really

6    keeping the obstruction phase out of the first two

7    phases.

8             From our view, the obstruction evidence,

9    much of it is classic consciousness of guilt evidence as

11:13:38 10   to, frankly, both the phase one conspiracy and the phase

11   two conspiracy insofar as there's discussion on jail

12   calls about getting rid of computers from the Mallion

13   days, which is phase one, and there's discussion about,

14   you know, the investigation and how to respond to it and

11:13:55 15   witness tampering efforts.

16            So all of that is classic, you know,

17   Pattern Instruction 7.13, consciousness of guilt

18   evidence.  And so we plan to seek the admission of those

19   facts, at least a good chunk of them, as evidence of the

11:14:12 20   state of mind of Mr. Spivak in phases one and two.

21            So I just want to make sure the Court's

22   aware of our intention to do that, and I'm not asking for

23   a ruling on it.

24            But so I think I have a better sense for

11:14:26 25   statement of case in voir dire, and I think our

1    discussion up to this point has -- and especially the

2    Court's order over the weekend -- made clear that it's

3    understood that some of the evidence from later may be

4    relevant to earlier.

5              I take it that, similarly, the jury

6    is -- we are not going to be told "Anything that was

7    testified in phase one, throw it out of your minds, don't

8    consider it when you're in phase two."

9              So that's all still -- it's more just to

10   prevent two -- you know, phase two to bleed into one.

11   They can have phase one in their mind as they're thinking

12   about phase two, so we don't have to reintroduce the

13   whole case.

14              THE COURT:  Right.

15              MR. MORRISON:  Okay.  That helps a lot.

16              And I think that for us, we'll endeavor to

17   identify for the defense, in 404(b) notices and such,

18   what we think are examples of those types of evidence

19   that are going to bleed over from phase two to phase one.

20              The -- for us, I think some of the main

21   concerns, I guess there's not going to be an easy way

22   around this, but there's just a lot of transaction costs

23   and physical, you know, literal costs to having witnesses

24   travel and appear for a particular phase of the case, and

25   then if they're going to be appearing for, say, two

1    phases of the case or potentially three, that can be

2    complex, but I understand that that's what the Court's

3    concluded is necessary for avoiding prejudice in certain

4    ways.

11:15:58    5             So I think we'll have to just handle those

6    logistics as they come up on our end.

7             As to opening statements, kind of be the

8    next stage of the case, would -- I assume that we're

9    going to present opening statements phase by phase,

11:16:17  10    or -- and I see a nodding.

11            THE COURT:  I had been thinking of it as

12    phase by phase.

13            MR. MORRISON:  Okay.  So there will be

14    three rounds of opening statements with, I guess, four or

11:16:27  15    five opening statement parties in each round.

16            Okay.

17            And are we allowed in the first phase, for

18    example, to make reference and say, "In this stage of the

19    case you're going to hear this," insofar as I neither

11:16:46  20    want to say during phase one that they're going to hear

21    something from phase two that they're not going to hear

22    in phase one because then they're deliberating saying,

23    you know, why did Mr. Morrison promise this thing and not

24    show it to us, but nor do I want to leave them with the

11:17:02  25    impression that, you know, this is all there is in the

1    case -- right? -- when we're telling them there's going

2    to be these phases.

3                  THE COURT:  I don't see a problem with

4    saying, "In this stage of the case you will hear."

11:17:15  5                  MR. MORRISON:  Okay.  That's helpful.

6                  And I assume similarly in terms of the

7    accumulation of evidence, that the jurors will be able to

8    keep their notes from phase one into phase two and on

9    into phase three so they are accumulating all that over

11:17:32 10    time?

11                  THE COURT:  Right.

12                  MR. MORRISON:  Okay.  And then I think that

13    would take us, I think the opening statements, same logic

14    applies to closing arguments, right?

11:17:46 15                  THE COURT:  How so?

16                  MR. MORRISON:  Insofar as there would be

17    three rounds of closing arguments?

18                  THE COURT:  Yes.  Yes.

19                  MR. MORRISON:  And I guess I kind of jumped

11:17:55 20    a spot there where there will be defense presentation in

21    phase one, and potentially rebuttal presentation in phase

22    one and so on and so forth for two and three.

23                  THE COURT:  Right.

24                  MR. MORRISON:  And on the final

11:18:08 25    instructions, I don't think we need to have this hammered

1    down exactly, but is it the Court's plan to do a full set

2    of jury instructions, including all the normal

3    instructions, for all three phases to repeat those

4    general instructions?

5                    Just kind of putting out there the

6    questions for our planning purposes.

7                    THE COURT:  For planning purposes,

8    certainly at the end of phase one I'll give a full set of

9    instructions, including "Here's how you go deliberate"

10   and so forth.

11                   Whether I give those in phase two or three

12   or not, I haven't completely worked through.

13                   I'll give that some thought.  There might

14   be a way to shortcut it a little bit.

15                   Certainly if I can avoid reading for an

16   hour-and-a-half to the jury, I think everybody would

17   appreciate that, but, you know, I'll make that decision

18   and do what I think we need to do in that regard.

19                   MR. MORRISON:  Okay.  And I guess the one

20   thing, I guess I should have mentioned this at the

21   outset, my impression is that none of the defendants are

22   objecting to the trifurcated structure of the trial and,

23   indeed, this is kind of the affirmative request of all of

24   the defendants, but I didn't know if any of the

25   defendants had any issues that they were raising about

1   this.

2              MR. AXELROD:  I mean, listen, no, we're not

3   objecting to the trifurcated nature, at least on behalf

4   of Paul Spivak.

11:19:38  5              I do think we need to work through the

6   language of the instructions that will need to instruct

7   the jury about the second phase.

8              I do have concerns that certain language

9   could be used that could be prejudicial, but I think

11:19:47 10   we're not there yet, so I don't want to start arguing

11   about hypotheticals before we have language in place.

12              MR. McCAFFREY:  Same position on behalf of

13   Smirnova.

14              MR. DeVILLERS:  Same on behalf of

11:20:04 15   Mr. Scott.

16              MR. ROSEN:  Judge, as I had mentioned

17   earlier about the voir dire, first, I just want to make

18   sure I am clear about something.  And obviously I'm the

19   odd guy here, right, because I'm the only one standing in

11:20:17 20   the first trial, and so how things are presented to the

21   jury regarding anything other than the first trial is

22   what, after I reviewed the Court's order several times --

23   and, yes, getting a midnight filing from the Court on

24   Saturday night was appreciated.

11:20:38 25              It wasn't quite midnight, I know that.

1          But that said, so, first, let me

2     get -- maybe I'm misunderstanding one thing.

3          In terms of advising the jury at the

4     beginning of this trial, I thought the Court was saying

11:20:53  5     it's going to wait until the end of the first trial to

6     advise them that there is more to come.

7          And then I thought I heard the Government

8     saying that the Court's going to advise them in the

9     beginning.

11:21:04 10          So could you just clarify for me when the

11    Court intends to let the jury know that there

12    are -- there are more than one phase to this trial?

13          THE COURT:  So during voir dire, the jury

14    will know and be told -- and it's something we'll ask

11:21:24 15    about -- "We expect this trial to take X amount of time

16    and that's subject to some variability, subject to the

17    presentation of evidence and how long you deliberate and

18    so forth.  And is that length of time an issue for

19    anyone?  Does it present an undue hardship?"

11:21:46 20          We're already doing some screening in the

21    summonses that are going out, so hopefully that will be

22    somewhat minimized.

23          But we will, at the very least, have that

24    conversation.

11:21:59 25          I don't -- you know, I guess the question

1    is I don't really have a strong feeling one way or the

2    other as to whether on day one during jury selection we

3    say to them, "We're going to take this kind of one step

4    at a time and we're going to focus on a piece of the case

5    right now and there will be more later," or just saying,

6    "Hey, at the outset we told you this was going to be

7    whatever, you know, three, four, seven weeks and here we

8    are two weeks in and it's a good time to take a break and

9    do something else."

10            In that second world, or I guess in the

11   first world where we're saying we're going to proceed in

12   stages or even at -- whether it's at that point or at the

13   start of phase two, you know, my intention would be to

14   say to -- and I think this probably most directly affects

15   Mr. Bongiorno -- would be just to say, "Not all the

16   defendants" -- it's a 50-count indictment.

17            I don't mind saying as a general

18   proposition, you know, by way of orientation during voir

19   dire or during the instructions after voir dire before

20   opening statements, you know, "There's a lot of charges

21   here.  Each count charges different people at different

22   times and so, you know, we've been, you know, working to

23   present that.  And if we're talking about different

24   phases, you shouldn't infer anything from the fact after

25   phase one that Mr. Bongiorno is not here."

1          I mean, I think, frankly, by that point the

2     jury is going to have a chart they have to fill out.  I

3     think they will figure it out on their own, but if we

4     need to give an instruction at that point, we'll give an

11:23:55  5     instruction at that point.

6          MR. ROSEN:  All right.  So that was my

7     understanding, Judge.

8          So here -- here are my thoughts following

9     the Court's order.

11:24:02 10          Obviously for Mr. Bongiorno my goal is to

11     have as pure a trial on phase one, if we'll call it that,

12     as can be so that the jury isn't in any way subjected to

13     any information about phases two or three.

14          And so I think that has been pretty clear

11:24:28 15     about what the Court's intent was.  That's why we're

16     going through this process.

17          So that said, I think as long as there's

18     some clarity to the fact that there's not going to be

19     references to any substance at all, I'm okay with that.

11:24:44 20          My only other -- my only other thought was

21     this, and this is, you know, it is what it is.

22          There are three trials happening here.  The

23     second -- the first trial is a pure securities trial.

24          The second trial is a trial where at least

11:25:00 25     the defense of entrapment has been raised as a

1    possibility.

2                And then the third trial is obstruction of

3    justice.

4                I'm wondering, aside from the issue of how

11:25:14  5    many peremptory challenges the Court's going to give to

6    Mr. Bongiorno, even though there are two other trials to

7    follow, aside from that, I'm wondering the impact of

8    other counsel for the other defendants in this case

9    saying, "Well, listen, if I'm picking a jury for an

11:25:37 10    obstruction case, I sure want to get their attitude about

11    X, or if I'm picking a jury for an entrapment trial, I

12    would like to know how they feel about Y," none of which

13    can really come in in the voir dire part of this case

14    because it has zero to do with Mr. Bongiorno.

11:25:59 15                And, Judge, you know, I'm just going to say

16    it:  While I fully, fully, fully grasp the logistical

17    approach the Court has come to grips with here,

18    fundamentally because of my motion to separate the

19    counts, I really, I really -- I think I'm asking the

11:26:20 20    Court to think about whether or not three juries are the

21    better way to go.

22                I know you've planted your flag in that

23    thing and I get it, I really do, Your Honor, but I'm

24    raising these thoughts having read the Court's opinion

11:26:36 25    and now knowing where we are and wondering whether or not

1    the idea of one jury for three really different kinds of

2    trials becomes a problem as to voir dire.

3            And really, I think I'm just thinking about

4    voir dire because opening is going to be phase one.

11:26:56  5    Closing is going to be phase one.  The evidence is phase

6    one.  So it's really the jury selection and how the other

7    lawyers want to raise the issues that are so irrelevant

8    to Mr. Bongiorno as to, you know, create potential voir

9    dire issues.

11:27:13 10            So I'm putting it out there.  Those are my

11    thoughts.

12            As far as trifurcating it, to Government

13    counsel's question, no, I have no objection to it, but I

14    think there could be problems in the voir dire of one

11:27:29 15    jury.

16            THE COURT:  So my thought on voir dire is

17    you're describing as three separate trials, which is not

18    exactly right.  There's one trial that's phased, so

19    there's one jury.

11:27:45 20            The good news and the bad news is I do a

21    fairly standard federal voir dire, which is more me and

22    less you.

23            So what I anticipate in this scenario is, I

24    mean, I'll tell you typically I haven't really thought

11:28:04 25    through a specific time limit at this point, but

1    typically -- I'm just looking.  I'm not sure any of you

2    have tried a case in front of me.

3                   But the typical criminal case is I leave

4    about ten or maybe 15 minutes, depending on the hour and

11:28:22  5    so forth, for you to ask some questions.

6                   But there's really not that much space in

7    there to do, you know, the kind of, you know,

8    free-wheeling voir dire that you're suggesting or

9    implying might go on with some of the charges.

11:28:39 10                   And what I would intend to do is to divide

11    that time equally.  So if it's, you know, 15 or 20

12    minutes for the United States, it's going to be 20

13    minutes for the defendants, and you can break it up

14    however you want.

11:28:51 15                   So be thinking about that.

16                   I don't know that we need to run this to

17    ground now.  I mean, I, you know, will continue working

18    through and thinking through those issues as well.

19                   But I guess the only other thing I can

11:29:08 20    offer is that if there are specific questions that

21    anybody wants, part of my normal practice, whether it's

22    required by the Rules or not, is if there are specific

23    questions that any of you think you want asked but don't

24    want to ask yourselves, either because of time or it's

11:29:25 25    just better not coming from you and better coming from

1    me, I'm happy to ask those questions.

2                    So those, I would just need sooner rather

3    than later to prepare to do that.

4                    But I don't -- I don't need the laundry

11:29:40  5    list of questions either.  I have a fairly standard set

6    of questions that you've all seen and used in fairly

7    typical criminal cases.

8                    All right.  I suspect we'll revisit that

9    issue again as we move forward.

11:29:58  10                    Any other logistical issues, Mr. Morrison?

11    I'm not sure we were through your list.

12                    MR. MORRISON:  No.  Yeah, I think we were

13    at the end.

14                    THE COURT:  Okay.

11:30:07  15                    MR. MORRISON:  For the record, the only

16    person whose position I didn't think I needed on the

17    trifurcation was Mr. Rosen, since it was his original

18    motion and then he filed a clarifying thing saying

19    specifically he didn't want what we thought he wanted and

11:30:19  20    actually wanted this.

21                    So but I'm glad to understand he has

22    concerns about the voir dire; not about the structure.

23                    And I don't think there's -- I think it

24    will be easy to address those as you've indicated, Your

11:30:32  25    Honor.

1       MR. McCAFFREY:  Judge, I had one issue on

2    the voir dire before we leave that topic.

3              THE COURT:  Yes.

4              MR. McCAFFREY:  And under the current case

11:30:42  5    schedule, when the Court set the trial date, it did state

6    that the Court reserves the right to begin jury selection

7    that week before.  And I know it's the practice of some

8    Judges in this district to start the -- to do the voir

9    dire, select the jury on the Friday so that we jump right

11:30:55 10    into the trial on Monday morning.

11              I don't know if the Court has made a

12    decision on that issue yet, but I know we have some

13    out-of-town people.

14              THE COURT:  Well, so -- so I'll tell you

11:31:09 15    I'm one of those folks who was doing it the Friday before

16    for exactly that reason, but because there are folks

17    coming in from out of town my thought was to do jury

18    selection on the Monday, unless anyone has a strong

19    preference in a different direction.

11:31:26 20              MR. AXELROD:  Having -- having picked

21    juries in lots of different districts, Your Honor, I

22    actually think picking the Friday before is my

23    preference, if you were so inclined to do it.

24              I think it's good for lawyers because they

11:31:39 25    can hit the ground running on the Monday, but that's just

1    my -- my opinion, and I'd be happy to do that, if the

2    rest of the defense decided that that was the preferred

3    course.

4                    MR. ROSEN:  Judge, I have no objection.

11:31:53  5    I'm coming the furthest I think.  I have no objection to

6    doing it that way.  That's -- if everybody would like to

7    do that, I'm fine with it.

8                    MR. DeVILLERS:  I don't have a preference,

9    Your Honor.  I would defer to the Court.

11:32:06 10                    MR. MORRISON:  Your Honor, for what it's

11    worth, the Government would submit that the Monday is the

12    better course for a trial this size, given the time and

13    concerns.

14                    And my experience has been the jurors, the

11:32:17 15    idea of coming in on a Friday, I've found the jurors are

16    usually happier, especially when you're talking about a

17    lengthy proceeding like this, that starting it extra

18    before the weekend just hangs over them that much longer.

19                    THE COURT:  Why don't we plan on the 19th

11:32:32 20    and we'll start with jury selection that day?

21                    Other logistical issues?

22                    MR. AXELROD:  Your Honor, nothing from

23    Mr. Spivak besides the fact that, as I said, the

24    Government's exhibit list will be -- is a bit of a

11:32:48 25    mystery and, you know, every day that goes by we're a

1    little bit more prejudiced in preparing for trial.

2              So hoping that that will get rectified.  I

3    don't know what else to do at this point.

4              MR. MORRISON:  Your Honor, we are working

11:33:02  5    on that.

6              As I said, I gave you my travel schedule.

7    I told you what we've been up to.  I intend to provide

8    them expanded and more detailed exhibit lists.  And I can

9    say, for example, on Mr. Spivak's phone I understand the

11:33:14 10    concern.  There's basically three text message strings

11    that we intend to focus on from the phone.  Those will be

12    identified.

13              I understand the concerns they have, and I

14    do intend to address them.

11:33:26 15              I think for us, I just, if I could return

16    to something that was said on the opening

17    statements/closing statement section, I understand that

18    we would be -- it would be acceptable to make reference

19    to the "At this stage" and say, you know, we're going to

11:33:45 20    be focusing on Counts 1 and 3, 4, 5 -- you know, the sort

21    of substantive counts from phase one and so that they

22    know what we're talking about when we are giving the

23    opening statement what the charges are and what we intend

24    to prove as to those specific charges, and they know that

11:33:59 25    we're not intending to prove up any other charges during

1    the opening statement.

2                THE COURT:  All right.  You know, as I

3    think it through a bit, during -- during voir dire there,

4    hopefully, will be a joint statement about this case will

11:34:19   5    involve charges that, you know, relate to or arise out of

6    or circle around, however you want to say it, two

7    conspiracies in which the Government charges securities

8    fraud, something to that effect.

9                So I think, as soon as you say that, I

11:34:42  10    think you have to say things like "Not all defendants are

11    charged in both of those," and it's probably inevitable

12    to be setting up two different phases, you know, roughly

13    tracking those conspiracies early on.

14                So --

11:35:00  15                MR. MORRISON:  Okay.  And then in terms of

16    the only other thing I wanted to address was dates going

17    forward for conferences and exchange of documents and

18    such in terms of, like, the August 2nd deadline for trial

19    briefs.

11:35:13  20                Are we assuming everything is just kind of

21    pushed back the one week that the trial is pushed back?

22                THE COURT:  I would say that that's right

23    for the August deadlines, although, you know, we should

24    talk about dates for a final pretrial conference and

11:35:44  25    other status conferences or the like.

1           But I think the other dates have largely

2   come and gone, so I think we only really need to set the

3   deadline for the trial documents, trial briefs and so

4   forth.

11:35:58   5           But I think those can generally just move

6   back one week, and we can amend that order to do that.

7           I suppose what I would prefer to do, again

8   going back to the balance I spoke to early on in the

9   case -- conference today, I should say, is I'm happy to

11:36:24  10   talk to you, you know, daily if that's what we need to do

11   to get things together.

12           I also recognize that that probably is not

13   the ideal thing for any of you in terms of actually

14   getting things moving and prepared and so forth.

11:36:44  15           What I would suggest from where we sit is

16   two things.

17           First, to Mr. Axelrod's last point -- and I

18   appreciated, Mr. Morrison, your response to him.  I trust

19   that's all forthcoming and is going to happen, and I

11:37:01  20   think it just involves some work and conversations

21   between each side.

22           In one case I think the parties have had

23   T-shirts made up with my thoughts on this already which

24   is I just don't think people can talk too much to each

11:37:15  25   other.  Again I think there's obviously an exaggeration

1   element to that, because the more you're talking, the

2   less you're doing, but I do think you need to be in

3   fairly regular contact to get things together and moving

4   in the right direction.

11:37:30  5           That said, probably makes sense to

6   reconvene -- what I would propose is August 7th or August

7   9th.  Those would work on my calendar, and I think August

8   7th is the earlier of them, so I would start there.

9           Perhaps August 7th at noon.

11:38:02 10          MR. MORRISON:  I'm looking around at my

11   co-counsel, Your Honor.  It's not a problem for me, but I

12   don't want to speak for Ms. Miller or Ms. Wojtasik.

13          I know it's not okay for Mr. Abreu, but

14   that's just a fact of life for us.

11:38:18 15         MS. MILLER:  Either of those dates or times

16   works for me, Your Honor.

17          Thank you.

18          MR. AXELROD:  Your Honor, August 7th would

19   be my -- I'm sorry.

11:38:27 20         THE COURT:  Okay.  August 7th is your

21   preference?

22          MR. AXELROD:  Correct.

23          And if at all possible, given that, you

24   know, we're going to spend a lot of time in Cleveland, if

11:38:36 25   we could do that virtually, that would be all the better

1    for me, but I'll be there in Cleveland, if needed.

2                    MR. McCAFFREY:  August 7th works for me,

3    Your Honor.

4                    John McCaffrey.

11:38:47  5                    MR. DeVILLERS:  It works for Mr. Scott's

6    attorneys as well.

7                    MR. ROSEN:  Yes, sir, Your Honor.

8                    THE COURT:  All right.  August 7th, we'll

9    do that at noon by Zoom and make sure things are moving

11:39:03 10    forward.

11                    As far as the final pretrial conference

12    itself, all of a sudden the week of August 7th is wide

13    open.

14                    I guess the question I would have is

11:39:15 15    whether we should plan to have any individual defendant

16    present.  Again, certainly they're welcome to attend.

17                    You know, I think there's a lot of

18    different things going on at that point.  I'm not sure

19    how interested in those proceedings any of them will be,

11:39:37 20    so I'm open to adjusting that requirement or holding it.

21                    So give that some thought.  We can just

22    make that decision when we're together next.  But as for

23    specific days that week, you tell me.  Happy to do it any

24    day the week of the 12th, which really is pretty open on

11:40:01 25    my calendar at this point.

1          MR. MORRISON:  I'm wide open that week,

2    Your Honor.

3          I think meeting a little earlier would be

4    good.

11:40:14  5          One other thing I want to just put on the

6    Court's radar, I don't think we've -- there's been a *Frye*

7    hearing in this matter for the Government to put on plea

8    discussions or any offers.

9          And so for that reason, I take it the

11:40:27 10   Court's considering whether or not it makes sense to have

11   the defendants present, I do think we should have at

12   least one hearing between now and the trial where they

13   are present so we can do that and so there won't be any

14   confusion about whether they have been informed of plea

11:40:43 15   negotiations.

16          THE COURT:  How about Wednesday, August

17   14th?  Does that work for folks?

18          For those coming from out of town, do you

19   want to do it in the morning or the afternoon?  It's six

11:40:58 20   of one to me.

21          MR. AXELROD:  Well, Your Honor, if we're

22   going to do it in person, if possible I would push it to

23   the 15th, if that's -- if that's okay.

24          I mean, I don't know that there's a need

11:41:14 25   for an in-person -- sorry -- with clients there.  I mean,

1      that's just from my perspective.

2                  There have been no plea negotiations so

3      there's nothing to state on the record, but be that as

4      the case may be I think August 15th is just easier for

11:41:29  5      those of us coming in from out of town because we'll just

6      ride the storm after that.

7                  MR. MORRISON:  I guess one countervailing

8      consideration, Your Honor, on pushing it back that far is

9      just to the extent that the final pretrial conference is

11:41:44  10     clarifying on exhibits and things of that nature and

11     what's going to be admitted or not admitted, I think it

12     really changes the character, it could significantly

13     change the character of trial preparation and names of

14     witnesses and change, frankly, the witness list.

11:41:59  15                 And so I think I would advocate for having

16     that a little sooner that week so that we all can have in

17     mind what the tenor of the discussion is coming out of

18     there, or rulings as the case may be, when we're going

19     forward.

11:42:16  20                 THE COURT:  I suppose one option might be

21     to do it earlier in the week, do it remotely, have

22     clients present for a part of it to address, you know,

23     offers and so forth.  They can, again, certainly stay on

24     after that.

11:42:33  25                 I'm not sure how you would feel about that.

1          MR. MORRISON:  That would be fine with me.

2          MR. AXELROD:  That's fine with us.

3          MR. ROSEN:  That would be certainly a

4   preference for Mr. Bongiorno, if he can appear remotely.

11:42:46  5          MR. DeVILLERS:  Same, Your Honor.

6          THE COURT:  Should we maybe aim for doing

7   that on the morning of the 13th, Tuesday, the 13th?

8          MR. ROSEN:  That's fine, Your Honor.

9          MR. MORRISON:  The only issue I see, as

11:43:05  10  currently stands the objections to witnesses and exhibits

11  would be due that day, if that's right, because it's

12  August 6th currently and pushed back seven days.

13          I don't know, it might -- I don't know if

14  we want to push that deadline up a day or two or so that

11:43:22  15  we then can kind of process what's in there and be able

16  to discuss those at the final pretrial?

17          THE COURT:  Yeah, I'll adjust that deadline

18  accordingly and try -- it puts a little bit more burden

19  on you, but what's one more burden at this point?

11:43:41  20          MR. MORRISON:  There you go.

21          THE COURT:  Any other issues we should

22  address or anything else we should try to accomplish

23  today?

24          MR. DeVILLERS:  Your Honor, I suppose do we

11:43:51  25  have an ETA on when we're going to get the *Jencks*

1    material in light of knowing now that the trial is on the

2    19th?

3                    MR. MORRISON:  Well, as I said, we fully

4    intend to turn it over before, you know, when it's

11:44:06  5    legally -- before when it's legally required.

6                    I've never turned it over, you know, this

7    far in advance of a trial, and I don't think that's

8    warranted.

9                    At the same time, I do intend to provide

11:44:16 10    additional detail on what each of the witnesses is

11    testifying to so that, you know, to give you a sense of

12    what's coming.

13                    At the same time, as I do intend to provide

14    it well in advance of when it's legally required, it's

11:44:28 15    just not -- it's not happening immediately is, I guess,

16    the short answer.

17                    And I think we could certainly plan to

18    provide, by the start of the trial, the *Jencks* material

19    substantially.  Again there's always a review of, like,

11:44:42 20    have we missed anything, that sort of thing, but the bulk

21    of the *Jencks* material at the opening of the trial.

22                    And for some, if there's particular

23    concerns, we're happy to talk about if there's particular

24    witnesses where they would like to have it earlier, we're

11:44:56 25    happy to talk with them about what concerns they have and

1    why they need it earlier.

2              But I'm not prepared at this time to commit

3    to turning it over, you know, weeks before trial, given

4    the deadline of the end of the direct.

11:45:07    5              MR. DeVILLERS:  I suppose we'd just like to

6    know when.  If it's the Friday before opening statement,

7    whatever, we just -- we try to -- I like to be able to

8    kind of get my idea of when I have to schedule if it's

9    going to be significant, it's going to be a lot of *Jencks*

11:45:25   10    to go through.

11              And, you know, to the extent you could let

12    us know kind of when that will be would be appreciated.

13              MR. MORRISON:  And I'll try and do that,

14    absolutely.

11:45:34   15              And I understand exactly the concern, you

16    don't want to have planned something with your family and

17    then have a pile of *Jencks* dumped on you.  That's not my

18    intention either, so we can be in touch and discuss the

19    timing.

11:45:46   20              MR. McCAFFREY:  On that issue, does the

21    Government also intend to produce statements of

22    individuals that have been interviewed but are not going

23    to be called?

24              It's been my experience that that's what

11:45:58   25    the office will do --

1          MR. MORRISON:  Yes.

2          MR. McCAFFREY:  -- on the eve of the trial

3     also, and *Brady* issues.

4          MR. MORRISON:  And, frankly, I would intend

11:46:06  5     to do that actually earlier as we are -- if we're

6     relatively certain somebody's not going to be a witness,

7     then I would intend to turn that over earlier.

8          The concerns around *Jencks* would then at

9     that point fall by the wayside.

11:46:20 10          MR. ROSEN:  Your Honor --

11          MR. AXELROD:  And what about, like, *Giglio*

12     materials in the form of plea agreements, immunity

13     agreements, whatever else similar that might be out

14     there?

11:46:32 15          MR. ROSEN:  Yes.

16          MR. MORRISON:  Yes, that would come with

17     *Jencks*.

18          MR. AXELROD:  And, Your Honor, I hate

19     to -- I hate to make a record, but it seems like our

11:46:42 20     discussion on this call, I recall last week where we've

21     all been talking about a complicated, big trial that

22     lasts weeks, I'll just say for the record that I think

23     providing *Jencks* before -- the Friday before the start of

24     trial is not in -- is not what due process contemplates

11:47:04 25     with a scope of a trial like this.

1          And I would ask the Court to order *Jencks*

2    to be produced at least two weeks before the start of

3    trial so that we don't need to ask for breaks; we as

4    defense counsel have sufficient time to track down

11:47:17  5    inconsistent statements in the *Jencks*.  Because providing

6    *Jencks*, a dump of *Jencks* on the Friday before the start

7    of a trial like this, it simply does not provide enough

8    time for a defense attorney or a defendant to understand

9    what's in there.

11:47:30  10          So that's for the record.

11          MR. MORRISON:  Your Honor, I'll just note

12    that the overwhelming complexity of this trial is

13    certainly part of why we've asked for a continuance,

14    which the defense has opposed vociferously and then

15    ultimately coordinated around the only time that will

16    work is a continuance of one week for AUSAs who just

17    joined this case.

18          So I take the point it's complex.  I'm

19    feeling that acutely myself, and we're working through

11:47:57  20    that the best we can.

21          We do, as I said, intend to discuss with

22    them the timing and we are willing to hear particular

23    concerns about particular witnesses, why they should be

24    turned over earlier, and we're happy to talk to them

11:48:08  25    about that.

1          THE COURT:  So -- go ahead, I'm sorry.

2          MR. ROSEN:  I mean, there's always a

3   compromise here, and that could be the Government can

4   provide at least a week before the first week's

11:48:24  5   witnesses.  Gives us all an opportunity to have that

6   extra week to handle the first week of witnesses.

7          And there are ways to do these workarounds,

8   so I don't know that the Court would issue an order or

9   the Government would give some consideration to it.

11:48:36 10          But that way maybe we're at least a week in

11   advance of receiving all of these things or ten days, as

12   a way to ameliorate turning over a month's worth of

13   witnesses versus, let's say, the first ten days' worth of

14   witnesses.

11:48:52 15          So that's always a possibility as well.

16          THE COURT:  Well, at this point we're still

17   out a bit from trial, almost a month, so I don't intend

18   to put on any order at this point, but I'm sure this is

19   an issue we'll discuss again and we'll do so at our next

11:49:12 20   status conference on the 7th, I'm sure.

21          No need to feel, you know, awkward or

22   anything like that about making a record.  You're

23   certainly entitled to make a record, so I don't have any

24   problem with that.

11:49:26 25          I think things are moving forward

1    reasonably well under all the circumstances, and there's

2    a lot to do, but we're all making progress on it.

3              Anything else we should do today?

4              MR. MORRISON:  Your Honor, just one last

11:49:42  5    question which is -- and I don't know if it needs to be

6    done right now, but just curious if you have a sense of

7    the timing of the decision on the motion to reconsider

8    the dismissal of those two counts.

9              THE COURT:  So I still have not gotten to

11:49:55 10    that motion.  That is on my list to do.

11             I will make that decision as promptly as I

12    can.

13             You know, I opted to prioritize the

14    structure or sequencing question first on the theory that

11:50:16 15    I think we needed to know that, and at some level -- and

16    I don't mean to be unduly -- you know, I don't intend to

17    defer ruling on that or anything like that, but after

18    working through the issues a second time on the structure

19    and sequencing and putting that ruling out, it's not that

11:50:42 20    I don't feel a need to get that motion resolved.

21             I feel like if I can get it to you before

22    we're next together, then that's probably enough time for

23    everyone.

24             I'm doing my -- if I can get it out

11:50:53 25    tomorrow, I'll get it out tomorrow, but juggling a few

1    things on my plate, so I'll get to it as promptly as I

2    can, which is the best unsatisfying answer I can give

3    you.

4              MR. MORRISON:  Believe me, I understand,

5    and I know, as you mentioned, you've been busy with other

6    things.

7              This isn't the only case on your docket nor

8    on the rest of ours, and I appreciate your consideration

9    on our end, and you're not going to hear any complaints

10   from me on that.

11             THE COURT:  All right.  If there's nothing

12   further, then I'll see you all on the 7th and we'll keep

13   working on getting ready.

14             Thanks.

15             (Proceedings concluded at 11:51 a.m.)

16                  -  -  -  -

17              C E R T I F I C A T E

18              I certify that the foregoing is a correct

19   transcript from the record of proceedings in the

20   above-entitled matter.

21

22   **/s/Susan Trischan**
     /S/ Susan Trischan, Official Court Reporter
23   Certified Realtime Reporter

24   7-189 U.S. Court House
     801 West Superior Avenue
25   Cleveland, Ohio 44113
     (216) 357-7087