IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:21-CR-00491 |
| Plaintiff, | JUDGE J. PHILIP CALABRESE |
| v. | |
| PAUL SPIVAK, et al., | |
| Defendants. | |

**TRIAL MEMORANDUM OF DEFENDANTS PAUL SPIVAK AND OLGA SMIRNOVA**

I.   **BACKGROUND**

   A.   **Paul Spivak and USLG**

Defendant Paul Spivak is a self-made entrepreneur and design engineer with over forty years of experience and no criminal record. He graduated from the Penn Technical Institute with an Associate's Degree in Electronics Technology. Through his hard work and dedication, Spivak has founded four companies in the electronics industry, and he owns twenty-seven design and utility patents.

Spivak's passion for innovation and expertise in engineering led him to start U.S. Lighting Group, Inc. ("USLG") in 2012, which initially manufactured light bulbs in the United States. In July 2016, through a reverse merger with Luxurious Travel Group, USLG became a publicly-traded company. The transaction had two parts: (i) shareholders of USLG acquired restricted shares of LXRT and (ii) non-affiliated third parties acquired unrestricted shares of LXRT.

Following the reverse merger, Spivak continued to grow and expand USLG. The Company acquired Intellitronix Corp., an automotive electronics manufacturer, in December 2016. Through this collaboration, USLG was introduced to the RV industry. In 2020, USLG had its best year financially with over $4 million in revenue. In January 2021, USLG formed Cortes Campers, LLC, a wholly-owned subsidiary of USLG that develops and supplies campers. In April 2021, USLG formed Fusion X Marine to develop speed boats. In January 2022, it formed Futuro Houses LLC, to build fiberglass houses. And finally, in August 2022, USLG acquired MIGMarine Corporation, a fiberglass manufacturing company.

Trial will show that USLG was not a "sham" company, emblematic of a typical pump-and-dump scheme, but a real, successful company that supplies products to many large corporations such as Home Depot, O'Reilly Auto Parts, Kawasaki, Summit Racing, and RV dealers across US and Canada. USLG had an average increase in sales of 53.9% in each of 2020 and 2021, profits in 2020 and 2021, and reported record quarterly revenue of $1.3 million in Q2 2023. In 2023, its first year in production, Cortes Campers won the Lightweight Camper of the Year award.

Trial will also show that, since its founding, Spivak has poured his own resources into the success of USLG. Indeed, Spivak personally loaned $3.8 million to USLG to purchase Intellitronix in December 2016. In April 2020, Spivak loaned $408,000 to Intellitronix to advance the company's operations. He has also personally guaranteed numerous other loans to the company for, among other things, the purchase of USLG's headquarters, the purchase of supplies, and loans for working capital. Further, evidence at trial will show that Spivak never "dumped" his stock.

Olga Smirnova was born in Leningrad (a city in the former Soviet Union now known as St. Petersburg, Russia) in 1982. She is the child of a family of scientists and engineers. In 2000 her grandmother, along with her electrical engineer grandfather, developed a medical device for

diabetes management that offered them an opportunity to work in the United States. During their six months employment in America, they worked with an electrical engineer from Cleveland, who introduced them to Paul Spivak.  In late 2003, while traveling to St. Petersburg, Spivak visited the family and met Olga.  In the spring of 2005, Spivak and Smirnova married in St. Petersburg, and in August 2005 Smirnova moved to the United States.  She became a United States citizen in 2009.

During the years 2012 through 2019, Smirnova worked for USLG assisting the start-up company in its back-office functions, namely purchasing, processing the accounts payable, and handling execution of wire transfer payments. Smirnova had no signature authority over any of the USLG accounts during this time frame. Smirnova worked with other full-time administrative personnel in the 2016-2019 time frame including the Vice-President of Finance Laura Loesch, and Chief Financial Officer Susan Tubbs. In January 2018, Smirnova gave birth to a first and only daughter for her and Spivak. For much of the 2018 year, Smirnova was on maternity leave. Like her husband, Smirnova has no criminal record.

      **B.**      **The SEC Investigation**

In 2018-2019, the Securities and Exchange Commission ("SEC") began investigating USLG, along with a number of companies connected to Richard Mallion. In July 2019, Spivak sat for an SEC deposition and answered questions for approximately eight hours. On August 5, 2019, the SEC sent Spivak a letter informing him that the SEC was declining to bring an enforcement action against him or USLG.[1]

Though the SEC chose not to pursue an action against Spivak, it still brought three separate actions against individuals charged in this case. In *SEC v. Mallion*, the SEC charged defendant

---

[1] Olga Smirnova was not a subject of the SEC enforcement action and was never subpoenaed to give testimony to the SEC.  USLG's prior V.P of Finance Laura Loesch, and CFO Susan Tubbs, both provided testimony to the SEC in connection with the SEC's 2019 investigation.

3

Richard Mallion with acting as an unlicensed broker and committing securities fraud in connection with USLG and another company. *See* Compl. at 1-2, *SEC v. Mallion*, No. 19-cv-62532 (S.D. Fla. Oc. 10, 2019) (ECF 1). In *SEC v. Bongiorno*, the SEC charged defendants Christopher Bongiorno and Jason Arthur with acting as unlicensed brokers and committing securities fraud. *See* Am. Compl. at 1-3, *SEC v. Bongiorno*, No. 20-cv-00469 (N.D. Ohio Oct. 28, 2020) (ECF 24). And finally, in *SEC v. Graham*, the SEC charged defendant Larry Matyas and others with acting as an unlicensed broker. *See* First Am. Compl. at 1-2, *SEC v. Graham*, No. 20-cv-2505 (N.D. Ohio Apr. 13, 2021) (ECF 16).

## II.  PROCEDURAL BACKGROUND

In November 2020, more than a year after the SEC declined to bring a case against Spivak and USLG, the government initiated a sting in an attempt to entrap Spivak and Smirnova.[2] Following the conclusion of that sting, on June 8, 2021, the government arrested Spivak pursuant to a complaint, and charged him for his involvement in the conspiracy ultimately alleged in Count Two of the Second Superseding Indictment ("SSI") (ECF 206).

On June 23, 2021, the grand jury returned an Indictment charging Spivak with one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371. Again, Spivak was only charged with a conspiracy related to his involvement in the FBI-generated sting for the 3-1/2 month time frame of February 15, 2021 through June 7, 2021. When Spivak refused to plead guilty, the government sought a Superseding Indictment, which added a conspiracy count for the scheme alleged in Count One and added several defendants, including Smirnova. ECF 33, PageID 282-83,

---

[2] This trial brief focuses on the first phase of the trial on Count One, and does not go into detail on Count Two.

293. Again Spivak refused to plead guilty, and almost two years later, the government sought a Second Superseding Indictment.

The SSI includes two counts of conspiracy to commit securities fraud, allegations of substantive securities and wire fraud connected to the charged conspiracies, and obstruction charges. Specifically, Count 1 charges Defendants with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, from in or around 2016 to in or around 2019. The SSI also charges Spivak with securities fraud associated with Count One in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 24010b-5 (*see* Counts 6-12 and 18-19), and wire fraud in violation of 18 U.S.C. § 1343 (*see* Counts 24, 25, 29-34, and 36-39).

Count 2 of the SSI charges Defendants with conspiracy to commit securities fraud from in or around February 15, 2021 through June 2021. The SSI also charges Spivak with securities fraud associated with Count 2 (*see* Counts 5, and 20-22) and wire fraud (*see* Counts 23, 26-28, 35, 49043, and 44-47).

Count 48 of the SSI charges Spivak with conspiracy to obstruct justice in violation of 18 U.S.C § 1512(k). Count 49 charges Spivak with making false declarations before the Court in violation of 18 U.S.C. § 1623(a). And finally, Count 50 charges Spivak with obstruction of a federal investigation in violation of 18 U.S.C. § 1519.

On May 31, 2024, the Court dismissed Counts 48 and 50. For the remaining Counts, the Court ordered that, "to prevent unfair prejudice" the trial "will proceed in three stages—*first*, Count 1 and its related fraud charges; *second*, Count 2 and its related fraud charges; and *third*, Count 49 (since Count 48 and 50 are not proceeding)." *See* Omnibus Op. & Order, ECF 327, PageID 3252.

5

### III. LEGAL AND EVIDENTIARY ISSUES

#### A. Failing to Disclose Commissions Does not Violate the Securities Fraud or Wire Fraud Statutes

The SSI evidences a failure to understand the securities fraud statutes.[3] It appears that with respect to Count One and the related substantive Counts, the government will attempt to prove the securities laws were violated in three ways. *First*, the SSI alleges it was somehow fraudulent for Mallion, Forrest, Church, and Charles Scott to acquire unrestricted shares of USLG stock, sell those shares, and then use some of the proceeds from those sales to purchase restricted shares of USLG directly from the company. Defendants are unaware of any case where the government has alleged a similar fraud. *Second*, the SSI alleges that marketing and promoting a company is *per se* securities fraud. Again, the government attempts to criminalize conduct that is not illegal. It is not illegal for an individual to market a company's stock. If that were the case, CNBC and Fox Business would be instruments of criminal securities fraud. Rather, it *is* unlawful to make materially false statements in connection with the sale of securities. There is no evidence that Defendants ever made materially false statements to USLG investors. *Finally*, SSI alleges that Defendants committed securities fraud by paying unregistered brokers undisclosed commissions. As Defendants described in their motion to dismiss, this is not a violation of the securities laws.

#### B. The Government Should be Precluded From Asking Witness for Their Subjective Opinions

Regarding undisclosed commissions, Defendants expect the government to ask investor witnesses hypothetical questions such as, "if you knew that Tom Smith was receiving a 40%

---

[3] And as noted in Spivak's Motion to Dismiss Count One, it also suggests that the government failed to instruct the grand jury properly on the law.

6

commission would you have invested." Such questions are improper as a matter of law and the government should not be permitted to ask such questions.

"The Sixth Circuit has well-settled law that the Court applies an objective standard to determine the materiality element in fraud cases." *United States v. Nicoletti*, 2017 U.S. Dist. LEXIS 22630, at *2 (E.D. Mich. Feb. 17, 2017). *See also United States v. Benchick*, 2015 U.S. Dist. LEXIS 70257, at *4-5 (E.D. Mich. June 1, 2015) (holding that materiality for bank fraud is judged by an "objective standard" and excluding evidence related to individual bank victim's actions).

Asking individual investors what they would have done if they had known a specific fact seeks a subjective opinion from that witness.[4] Accordingly, such testimony is improper as a matter of law. Moreover, such questions should be excluded under Federal Rule of Evidence 403. Because the materiality standard is "objective" rather than "subjective," such questions have no probative value. And because a jury could easily conflate subjective and objective analysis, there is a significant danger of undue prejudice.

    **C.**    **The Court Should Exclude Other Conspiracy Evidence**

Defendants have filed a motion to prohibit the government from offering evidence about one conspiracy at trial of the other conspiracy (ECF 382). For the reasons explained in that motion, the government should not be permitted to confuse the jury and prejudice Defendants by (a) introducing evidence from Phase 2 or 3 in the trial of Count One; and (b) introducing evidence of other alleged crimes and bad acts for which Defendants have yet to receive formal notice as required.

---

[4] The investor witnesses have already been contacted by representatives of the U.S. Attorney's Office identifying them as victims of a crime and seeking information and documents for the victim-witness coordinator in that office.

### D. The Court Should Prohibit the Government's Use of the Term "Kickback"

The government contends that Defendants committed securities fraud by failing to disclose to investors that marketers received commissions. SSI ¶ 44. But in addition to describing payments that USLG made to marketers as commissions, the government also uses the phrase "kickbacks." *See e.g.*, SSI ¶¶ 10-11; Opp. to Mot. to Exclude Melley, ECF 378, at PageID 3697. The term "kickback(s)" has no applicability to the case charged and the government should be precluded from using that specific phrase because the danger of undue prejudice greatly outweighs any potential relevance.

"[S]imply calling a commission a kickback doesn't make it one. The defining characteristic of a kickback is divided loyalties." *Feaz v. Wells Fargo Bank*, 745 F.3d 1098, 1111 (11th Cir. 2014) (quoting *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 611 (7th Cir. 2013)). Indeed, in criminal law, the term kickback typically appears in one of two situations. First, it is commonly used in the context of honest services fraud where a politician (or some other public figure) who owes a duty of honest services to his constituents takes some public action without disclosing to the public that he is receiving some secret remuneration for that action. *See, e.g.*, *United States v. Thompson*, 366 F.2d 167, 168-69 (6th Cir. 1966) (county councilmember defendants received kickback from architect the county selected to design hospital); *United States v. Terry*, 707 F.3d 607, 610 (6th Cir. 2013) (state court judge received remuneration for official actions). Indeed, in the public corruption context, a kickback is typically a covert payment from a company that obtained a government contract to the decision-maker who awarded the contract. Thus, it is a kickback, or a percentage of the payment the contractor received.

Second, it is typically used in the healthcare fraud context to create liability for anyone who receives remuneration for a referral for the provision of services that are reimbursable under

8

a federal healthcare program. *See, e.g.*, *United States ex rel. Martin v. Hathaway*, 63 F.4th 1043, 1048 (6th Cir. 2023), *cert. denied,* 144 S. Ct. 224 (2023). It is often used to describe prosecutions of doctors and others who receive covert payments in violation of a duty they owe patients. *See, e.g.*, *United States v. Hills*, 27 F.4th 1155, 1170-71 (6th Cir. 2022), *cert. denied sub nom. Al-Madani v. United States*, 143 S. Ct. 606 (2023).

Conversely, the term "kickback" has no applicability in the context of the sale of securities, in this case or in any case. The evidence will show that the marketers who contacted members of the public to solicit investments in USLG used leads to contact people they did not know and had no relationship with. These marketers were neither public officials who had a duty to provide honest services nor medical professionals who owed a duty to their patients.

These marketers also did not receive a kickback as the term is commonly understood. Kickback is defined as "a return of a part of a sum received often because of confidential agreement or coercion." *See* https://www.merriam-webster.com/dictionary/kickback. The government contends the marketers received a percentage of the amount the investor sent to USLG. This is not a kickback. It is a commission. Accordingly, using the term "kickback" in the context of the government's theory is nonsensical.

Nonetheless, the term "kickback" is a pejorative term that carries significant negative connotation to a lay person. The government's invocation of the term "kickback" in the context of this case will signal to the jury that the alleged commissions paid by USLG to various marketers were *per se* securities fraud. But that is not the law, and as discussed below in Section G, the government already represented that its conspiracy theory in Count One was not based on the payment of undisclosed commissions, or "kickbacks." For this reason, neither the government nor

any witness offered by the government at trial should be permitted to use the term "kickback" in the context of this trial.

### E. The Court Should Exclude Evidence of the Marketers' Use of Aliases

The government alleges that four individuals charged in this matter worked as unregistered brokers and used aliases to solicit potential investors. According to the SSI:

- Defendant Christopher Bongiorno used the alias "John Powers;"

- Richard Mallion, charged in the superseding indictment, used the alias "Richard Burnstein;"

- Jason Arthur, charged in the superseding indictment, used the alias "Jim Gates;" and

- Robert Carver, charged separately, used the alias "Donald Howard."

SSI ¶¶ 13-19. Defendants Spivak and Smirnova do not dispute these facts. Indeed, the SEC pursued actions against these individuals based on these allegations. *See SEC v. Mallion*; *SEC v. Bongiorno*; and *SEC v. Graham, supra*.

But the marketers' use of aliases is wholly irrelevant to the charges of securities fraud and wire fraud against Spivak and Smirnova. Accordingly, the government should be prohibited from offering evidence, testimony, or argument at trial about the marketers' use of aliases because the evidence is irrelevant and thus inadmissible under Federal Rules of Evidence 401 and 402. *See Kinzel v. Bank of Am.*, 2014 U.S. Dist. LEXIS 97182, at *3-4 (N.D. Ohio July 17, 2014) (If the moving party can demonstrate that the evidence at issue is inadmissible, courts may grant a motion *in limine* and exclude the evidence from trial.); *United States v. Mack*, 298 F.R.D. 349, 351 (N.D. Ohio 2014), *aff'd*, 808 F.3d 10784 (6th Cir. 2015); *see also United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).

First, to be guilty of securities fraud, a defendant must have "knowingly ma[de] a ***material***

misrepresentation or knowingly omit[ted] a **material** fact." *United States v. Desantis*, 134 F.3d 760, 764 (6th Cir. 1998) (emphasis added). A misrepresentation or fact is material "if a reasonable investor would have viewed the misrepresentation or omission as 'having significantly altered the total mix of information made available.'" *In re Sofamor Danek Grp.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 232 (1988)).

The marketers' use of aliases is irrelevant to a finding of securities or wire fraud because there is no evidence that the name of the marketer was material, or even mattered, to the potential investor's decision to purchase USLG stock. *See e.g.*, *United States v. Johnson*, 945 F.3d 606, 612-13 (2d Cir. 2019) (assessing whether the defendant deprived the victim of "information that could impact [his] economic decisions") (cleaned up).

Second, and relatedly, evidence of the marketers' aliases is also irrelevant to a charge of wire fraud because a broker's identity is not "an essential element of the bargain between the parties." *United States v. Schwartz*, 924 F.2d 410, 421 (2d Cir. 1991). In *United States v. Regent Office Supply Co.*, the defendants, charged with mail fraud, instructed their sales personnel to misrepresent their identities to prospective customers in an attempt to make them more interested in their offers. 421 F.2d 1174, 1175-76 (2d. Cir. 1970). The court found that there is no violation of the mail fraud statute when the misrepresentation is "not directed to the quality, adequacy or price of the goods to be sold, or otherwise to the nature of the bargain." *Id*. at 1179. Similarly, in *United States v. Shellef*, the Second Circuit rejected a claim for wire fraud where the misrepresentation "induced Allied to enter into a transaction it would have otherwise avoided," but "does not assert that Shellef's misrepresentation had relevance to the object of the contract." 507 F.3d 82, 109 (2d Cir. 2007) (cleaned up).

Here, the marketers' use of fake names merely misled investors about their real names; it

11

did not deceive investors about their investments in USLG or result in "'a discrepancy between benefits reasonably anticipated' and actual benefits received." *Id*. For this reason, any evidence or testimony about the use of aliases is irrelevant to the offenses charged in the SSI.

Even if the use of fake names was relevant to a charge of securities fraud or wire fraud (it is not), the evidence should still be excluded because the danger of undue prejudice greatly outweighs any potential relevance. *See* Fed. R. Evid. 403; *United States v. Newsome*, 452 F.3d 593, 603 (6th Cir. 2006). There is a substantial risk that evidence of aliases could signal to the jury that the marketers used fake names to try to cover up a prior criminal history or other bad acts, but this is not the government's theory. This risk of prejudice and confusing the jury requires that evidence of the marketers' use of fake names be excluded.

### F. The Government is Estopped from Arguing that Spivak Unlawfully Paid Undisclosed Commissions

Count One of the Second Superseding Indictment charges Defendants with conspiracy to commit securities fraud. However, the breadth of the language describing the alleged conspiracy and what the Defendants allegedly agreed to is so broad and vague, that it is difficult to ascertain exactly the government's theory of liability.

On January 10, 2024, Defendants Paul Spivak and Olga Smirnova moved to dismiss Count One on the basis, among others, that failing to disclose commission payments does not violate the securities laws, so that could not form the basis of the crime of conspiracy to commit securities fraud. Mot. to Dismiss Count One, ECF 284, at PageID 2283-87.

On March 16, 2024, the government filed an opposition to this motion to dismiss. As part of its opposition to Defendants' motion, the government sought to diffuse this issue by stating that its theory underlying Count One was not based on the undisclosed payments of commissions. In no uncertain terms, the government stated:

12

> In hopes of defeating the charges before trial Defendants argue that they cannot be charged with committing a legal act—paying undisclosed commissions or kickbacks to brokers. ***Even if that were a legal act, no matter the facts alleged, that is not the crime they are charged with in the conspiracy counts***.

Opp. to Mot. to Dismiss, ECF 303, at PageID 2826 (emphasis added). The government's assertion could not be clearer. The government's conspiracy theory in Count One was not based on the payment of undisclosed commissions.

Given this statement and the Defendant's subsequent reliance upon this representation, the government should be estopped from changing its position and arguing the opposite at trial. "[T]the doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Shufeldt v. Baker, Donelson, Bearman, Caldwell & Berkowitz*, 855 F. App'x. 239, 243 (6th Cir. 2021); *see also Short v. Simon*, 2021 U.S. App. LEXIS 27301, at *20 (6th Cir. Sept. 8, 2021) ("Indeed, 'judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding,' or in a different phase of the same case.") (cleaned up).

There is no question that judicial estoppel should bar the government at trial from seeking a conviction on Count One based on an undisclosed commissions theory. The government's opposition to the motion to dismiss clearly stated that Count One was not based on an undisclosed commissions theory. Indeed, this Court relied on and accepted that position in denying Defendants' motion to dismiss Count One.

It would be patently unfair to allow the government to take one position to prevail on a litigated motion to dismiss and then take a completely contradictory position to prevail at trial in front of the jury. For that reason, the government should be precluded from presenting evidence

that shows, or arguing, that Count One involved a conspiracy to commit securities fraud based on an undisclosed commissions theory.

### G. The Court Should Preclude the Government From Referring to USLG and Defendant Spivak Interchangeably

The SSI demonstrates that the government impermissibly conflates USLG and Defendant Spivak, and the government should be precluded from referring to the Company and Defendant Spivak interchangeably at trial. For example, the government alleges that the Defendants engaged in fraudulent schemes to "enrich themselves," SSI ¶ 1, and "for the benefit of SPIVAK and his co-conspirators." SSI ¶ 56. But at other times the government alleges that Defendants solicited potential investors to "purchase stock from Spivak and USLG to sell for Spivak's and USLG's benefit." SSI ¶ 46(a). Spivak is not the company, and no investor purchased stock directly from Spivak. This improper conflating of Spivak and USLG will confuse the jury, seriously prejudice Spivak, and should not be permitted.

This is especially true given that there is no evidence that Spivak ever personally received funds from the sale of USLG securities. Although the government alleges that the scheme was designed to "enrich" or "benefit" Spivak, the evidence at trial will show that money from the sale of USLG securities went directly to the company, not Spivak. Indeed, there is no evidence that any funds any of the alleged co-conspirators received were transferred directly to Spivak.

The government must prove its case beyond a reasonable doubt, and the prejudice that would result from conflating USLG and Spivak is obvious.

### H. The Court Should Exclude Evidence From Dates Outside the Dates of the Charged Conspiracy

The government charges Defendants with a conspiracy to commit securities fraud in Count One, and acts of securities and wire fraud, between 2016 and 2019. *See* SSI ¶¶ 38; 47-54. Yet, on

July 27, 2024, the government provided Defendants with a new exhibit list that includes exhibits and demonstratives from 2020. *See e.g.*, 7/27/2024 Exhibit List ("Chart-US Lighting Group Investor Fraud – Spivak July 29, 2020 to August 4, 2020"; "Deleted Text from Forrest Church to Scott, Spivak, et al – February 10, 2020"). Evidence from dates outside the scope of the conspiracy are plainly irrelevant and should be excluded. To the extent the government intends to use evidence from later dates under Rule 404(b), it has failed to provide a notice as required by law. Absent that notice, Defendants are not able to address whether the evidence will survive scrutiny under Rule 404(b).

Dated: August 9, 2024                     Respectfully submitted,

/s/ *David L. Axelrod*
David L. Axelrod (Admitted Pro Hac Vice)
Lauren W. Engelmyer (Admitted Pro Hac Vice)
BALLARD SPAHR LLP
1735 Market Street
Philadelphia, PA 19103
Telephone:    215.864.8639
Facsimile:    215.864.8999
Email:        axelrodd@ballardspahr.com
              engelmyerl@ballardspahr.com

*Attorneys for Defendant Paul Spivak*


/s/ *John F. McCaffrey*
John F. McCaffrey (0039486)
Izaak Horstemeier-Zrnich (0101085)
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
Telephone:    216.696.3486
Facsimile:    216.592.5009
Email:        john.mccaffrey@tuckerellis.com
              melissa.kelly@tuckerellis.com
              izaak.horstemeier-
              zrnich@tuckerellis.com

*Attorneys for Defendant Olga Smirnova*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2024, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

<u>/s/  David L. Axelrod</u>
David L. Axelrod (Admitted *Pro Hac Vice*)
Lauren Engelmyer (Admitted *Pro Hac Vice)*

*Attorneys for Defendant Paul Spivak*