IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21CR491 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL SPIVAK, ET AL., | ) | UNITED STATES'S RESPONSE TO THE |
| | ) | TRIAL MEMORANDUM OF |
| Defendants. | ) | DEFENDANT PAUL SPIVAK |
| | ) | |
| | ) | |
| | ) | |

The United States of America, by and through undersigned counsel, hereby submits this Response to the Trial Memorandum of Defendant Paul Spivak (R. 387).

**A.    A broker commits securities fraud when he fails to disclose exorbitant commissions.**

Even absent a duty to disclose, a broker cannot peddle half-truths. *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263-65 (2024) (explaining that "[p]ure omissions are not actionable under Rule10-5(b)," but "half-truths" are). That is because Section 10b-5 prohibits brokers from "omit[ting] to state a material fact in order to make the statement made … not misleading" "in the light of the circumstances under which [the omission] was made." 17 C.F.R. § 240.10b-5(b). The federal securities laws, therefore, prohibit brokers from using half-truths to "omit" a "material fact" that makes their statements "not misleading."

Failing to disclose excessive commissions constitutes such a half-truth. As the Second Circuit explained, "forty-five- or fifty-percent commissions" constitute information that is "clearly significant and must be disclosed accurately." *United States v. Szur*, 289 F.3d 200, 212 (2d Cir. 2002). That is because excessive commissions "plainly ha[ve] no relationship to the commissions that would be charged in a competitive market [because] the broker was receiving

up to half of the proceeds from the sale of the stock." *Id.* This information "would have been relevant to a customer's decision to purchase the stock," and therefore must be disclosed. *Id.*; *see also United States v. Santoro*, 302 F.3d 76, 80-81 (2d Cir. 2002) (explaining that a "customer relying on a broker's recommendation would want to know information about the broker's receipt of extraordinary commissions in exchange for his recommendation of the stock because ... it would raise a 'red flag' that the broker had reason to misrepresent the quality of the investment").

Here, the unregistered brokers sold investors on half-truths. By failing to tell the investors about receiving fifty percent commissions, the unregistered brokers necessarily misled them. It would only be half-true, for example, to tell the investors that their money would be going towards building better products for the company; that is because half of it went towards lining the unregistered brokers' pockets. That sort of half-truth conceals information "relevant to a customer's decision to purchase the stock," *Szur*, 289 F.3d at 212, and would "raise a 'red flag' about the quality of the investment." *Santoro*, 302 F.3d at 80-81.

Thus, even without a duty to disclose, Spivak and his co-conspirators committed securities fraud by telling half-truths to hide the unregistered brokers' exorbitant commissions.

**B.     The materiality of undisclosed excessive commissions is a question for the jury.**

The federal securities laws criminalize affirmative misrepresentations or omissions of "material" facts. *See* 17 C.F.R. § 240.10b-5(b). For omitted facts to be material, there must be "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *United States v. Litvak*, 889 F.3d 56, 64 (2d Cir. 2018); *see also In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 472 (6th Cir. 2014).

2

This "reasonable investor" standard is objective, *Litvak*, 889 F.3d at 64, and a mixed question of law and facts. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). The underlying objective facts "are merely the starting point for the ultimate determination of materiality," which "requires [a] delicate assessment of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him." *Id.* "[T]hese assessments are peculiarly ones for the trier of fact." *Id.*

The jury is therefore best suited to determine what would be "material" to a "reasonable investor." To aid the jury in making that determination, an investor's assessment of the undisclosed fifty-percent commission payment would be probative of how that investor viewed his or her decision to buy USLG stock. *See* Fed. R. Evid. 401. As a result, questions such as the hypothetical Spivak raised would elicit relevant evidence that would help the jury answer the key factual question—i.e., would a reasonable investor find a fifty-percent commission material.

**C.** **There is no basis to exclude other conspiracy evidence and evidence outside the dates of the charged conspiracy.**

In its Trial Brief, the government explained the basis for admitting evidence that post-dates the Count 1 and 2 conspiracies or is otherwise outside the dates of the charged conspiracies. That included a discussion of Federal Rule of Evidence 404(b). The government refers the Court to Section IV of its Trial Brief for a more fulsome discussion of this issue. (*See* R. 392: U.S. Trial Br., PageID 4045-62).

**D.** **The Court should not prohibit witnesses or the government from using the term "kickback."**

Use of the term "kickback" is proper here for several reasons.

For starters, there is nothing "inherently prejudicial" about the term "kickback." *Okland Oil Co. v. Knight*, 92 F. App'x 589, 600 (10th Cir. 2003); *United States v. Oxendine*, No.

3

122-CR-00183, 2023 WL 10411893, at *11 (N.D. Ga. Aug. 28, 2023), *report and recommendation adopted*, No. 1:22-CR-00183, 2024 WL 1008571 (N.D. Ga. Mar. 8, 2024) (finding the word "kickback" not unduly prejudicial because "it simply describes the types of financial transactions that allegedly occurred in furtherance of the conspiracy"). Paying a "kickback" is not an element of the conspiracy or securities fraud charge against Spivak; it is therefore even less likely the jury confuses a discussion about "kickbacks" with an ultimate issue.

And the term "kickback" is relevant to what the government must prove. This is not a situation where the disputed term is entirely divorced from what the government must show at trial. *See, e.g.*, *United States v. Dimora*, 843 F. Supp. 2d 799, 848 (N.D. Ohio 2012) (prohibiting the government from calling a defendant charged with public corruption and conspiracy the "godfather"). Rather, the government's use of the term "kickback" here fits even Spivak's definition of the term. (*See* R. 387: Trial Mem. Of Defs. Paul Spivak, PageID 3850 (defining "kickback" as "a return of a part of a sum received often because of confidential agreement or coercion")). The evidence at trial will show Spivak agreed to pay the unregistered brokers exorbitant, undisclosed commissions. "The Government is entitled to present its theory of the case, just like [Spivak] is entitled to present [his.]" *United States v. Auzenne*, No. 2:19-CR-53-KS-MTP, 2020 WL 6276173, at *2 (S.D. Miss. Oct. 26, 2020). The Court should therefore not prohibit the government from using "kickbacks" to describe the Defendants' relevant payment scheme.

Courts often use the term "kickbacks" in referring to certain payments received in securities fraud schemes. *See, e.g.*, *S.E.C. v. Sirianni*, 334 F. App'x 386, 388 (2d Cir. 2009) (describing the payment a stockbroker failed to disclose as a "kickback"); *S.E.C. v. Feminella*,

4

947 F. Supp. 722, 724 (S.D.N.Y. 1996) (using the term "kickback" to describe illegal payments made from a stockbroker to a CFO). Describing the payments here—or receipt thereof—as "kickbacks" would be the proper terminology, anyway.

Lastly, a witness may refer to a "kickback" not in the legal sense, but merely as "a factual shorthand that money is coming back to him." *United States v. Reda*, 787 F.3d 625, 629 (1st Cir. 2015). As the First Circuit found in *Reda*, this "pithy colloquialism [could be] suited to the task of helping the jury on an issue of fact[.]" *Id.*; *see also United States v. Auzenne*, No. 2:19-CR-53-KS-MTP, 2020 WL 6276173, at *2 (S.D. Miss. Oct. 26, 2020) (denying the defendant's motion to preclude the term "kickback" because the colloquial term "will help the jurors understand the charges"). A lay witness should be able to explain this concept in their own words, even if that means they describe their payment as a "kickback."

For any or all of these reasons, the Court should not prohibit a witness or the government from using the term "kickback."

E.   **The court should allow the government to admit evidence of the unregistered brokers' use of aliases.**

The unregistered brokers' use of aliases is relevant, admissible evidence against Spivak—it is part and parcel of his scheme to defraud. The unregistered brokers hid behind aliases to conceal their true identities and, in some instances, their past frauds. Doing so helped lure unwary investors into purchasing USLG stock. Because this evidence is probative of whether Spivak intended to engage in the fraud scheme and intrinsic to the conspiracy, it is admissible under Rule 401. *See* Fed. R. Evid. 401. For that same reason, i.e., the evidence is "intrinsic" to or "inextricably intertwined" with evidence of the conspiracy, Rule 404(b) is inapplicable. *See e.g.*, *United States v. Nicholson*, 716 F. App'x 400, 420 (6th Cir. 2017) (admitting evidence "intrinsic" to the charge because, in that circumstance, Rule 404(b) is not applicable); *United*

5

*States v. Henderson*, 626 F.3d 326, 338 (6th Cir. 2010) ("Where the challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with evidence of, the crime charged, Rule 404(b) is not applicable.").

Nevertheless, that evidence is still admissible under Rule 404(b). Federal Rule of Evidence 404(b)(2) allows a court to admit otherwise inadmissible evidence if it shows "intent" or "knowledge." As Spivak states in his trial brief, the unregistered brokers' use of fake names "misled investors," and the SEC pursued actions against these individuals based on these allegations. Evidence about the unregistered brokers using aliases, and Spivak's knowledge of that, is relevant to show Spivak knew the unregistered brokers were not acting lawfully. The fact that Spivak never questioned why the unregistered brokers used an alias shows his knowledge of the criminal scheme. That makes the evidence admissible under Federal Rule of Evidence 404(b)(2).

**F.     Spivak failed to satisfy the requirements of judicial estoppel.**

Judicial estoppel aims to prevent gamesmanship. "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (alternation omitted). The purpose of this doctrine is to "protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment[.]" *Id.* at 749-50. Because this rule is intended to prevent "improper use of judicial machinery," it is "an equitable doctrine invoked by a court at its discretion[.]" *Id.* at 750.

6

The Supreme Court enumerated three factors to guide the Court's inquiry. First, a party's later position must be "clearly inconsistent" with its earlier one. *Id.* Second, the party must have succeeded in persuading a court to accept the party's earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.]" *Id.* (quotation omitted). Third, the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 751. These factors are not "inflexible prerequisites," nor do they encompass "an exhaustive formula." *Id.* Rather, additional considerations may inform the doctrine's application in specific factual contexts. *Id.*

Spivak faces an even steeper battle by attempting to estop the government. That is because the government "may not be estopped on the same terms as any other litigant." *Michigan Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004). Instead, a party attempting to estop the government, at a minimum, must demonstrate some "affirmative misconduct" by the government in addition to the other three estoppel elements. *Id.* (quotation omitted); *see also United States v. Walker*, 450 F. App'x 464, 468 (6th Cir. 2011).

Spivak does not even attempt to explain how he meets any of the three judicial estoppel factors, nor does he assert how the government committed "affirmative misconduct."

Instead, he spends much of his time focusing on two sentences of the government's brief. In doing so, he fails to provide the Court with a complete picture. He excerpts a few sentences from the government's brief without the surrounding context. But that context is key to understanding the government's statement. Under the heading "Non-disclosure of Commission Payments can be a Criminal Act," the government stated:

> In hopes of defeating the charges before trial Defendants argue that they cannot be charged with committing a legal act—paying undisclosed commissions or

> kickbacks to brokers. Even if that were a legal act, no matter the facts alleged, that is not the crime they are charged with in the conspiracy counts. The Defendants are charged with conspiring to commit securities fraud in Counts One and Two, crimes independent of the underlying substantive offenses. "It is a basic tenet of conspiracy law that an overt act in furtherance of a conspiracy need not be illegal itself." *United States v. Jerkins*, 871 F.2d 598, 602–03 (6th Cir. 1989) (citing *Braverman*, 317 U.S. at 53; *United States v. Reifsteck*, 841 F.2d 701, 704 (6th Cir. 1988)).

(R. 303: Redacted Omnibus Resp. in Opp'n to Defs.' Multiple Pretrial Mots., PageID 2826). Pivoting to discussing the substantive offense of securities fraud, the government went on to argue that undisclosed commissions can violate federal securities laws. The government compared the undisclosed commissions here with an analogous Ninth Circuit case, explaining how half-truths about undisclosed commissions constitute an actionable offense.

Thus, when read in context, the government's statement has a different meaning than the one Spivak assigned to it. The government merely stated the obvious fact that "even if" paying undisclosed commissions was legal, "[i]t is a basic tenet of conspiracy law that an overt act in furtherance of a conspiracy need not be illegal itself." (*Id.*). The government intended to highlight that the defendants were charged with conspiracy to commit securities fraud, not a substantive securities fraud offense, which has different elements and requirements to prove. The government then delves into discussing the substantive securities fraud offenses for which Spivak and Scott were charged, arguing that undisclosed commissions violate federal securities laws.

Spivak therefore cannot meet any of the three judicial estoppel factors. First, the government is not taking a "clearly inconsistent" position because it never took the asserted position in the first place. The government merely stated the uncontroversial fact that overt acts in furtherance of a conspiracy do not need to be illegal. As a result,

8

the court never accepted the position Spivak now claims the government took. And there is likewise no unfair advantage to be gained.

Even putting the three elements aside, Spivak cannot meet the heightened requirement of proving affirmative misconduct. At best, "[i]t is true that the government could have worded [its response] better, explaining in clearer terms that" it was in fact pursuing securities fraud charges against defendants because of their payment of excessive undisclosed commissions. *Michigan Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004). "But, the failure to explain is at best a negligent error, not a reckless one." *Id.*

Because Spivak failed to establish any of the three elements of judicial estoppel, let alone meet the heightened affirmative misconduct requirement, this Court should deny his request for judicial estoppel.

G. **The Court should not preclude the government or any witness from referring to USLG and Spivak interchangeably.**

It would be proper to refer to USLG and Spivak interchangeably. At all relevant times, Spivak was the CEO of USLG and therefore controlled the company's operations. Likewise, he personally—or others over which he had control—owned a substantial number of USLG's outstanding, restricted, and free-trading shares. Spivak therefore both directed USLG's actions as CEO and as the owner of a substantial number of USLG shares. Because Spivak controlled USLG, it is fair to refer to them interchangeably.

Doing so would follow Spivak's cue. He often refers to himself in tandem with USLG. For example, in his motion to dismiss, Spivak claims privilege over communications with "lawyers who did corporate work for USLG and advised USLG in connection with the reverse merger with LXRT" and "lawyers who wrote Rule 144

9

opinions for USLG," among other things. (*See* R. 381: Def. Spivak's Mot. to Dismiss, PageID 3757). And Spivak included these communications on the document he dubbed "Defendants' Non-Exhaustive List of Privileged Communications Produced in Discovery." (*Id.* at PageID 3758; *see also id.* at PageID 3770-76).

Spivak cannot hide behind USLG when it is convenient for him, using USLG as a shield to prohibit the government from obtaining privileged information from USLG, and now as a sword to somehow separate his actions from those of USLG.

The Court should therefore allow the government and witnesses to refer to USLG and Spivak interchangeably.

        Respectfully submitted,

        REBECCA C. LUTZKO
        United States Attorney

By:   */s/ Stephanie A. Wojtasik*
        Elliot Morrison (OH: 0091740)
        Megan R. Miller (OH: 0085522)
        Stephanie A. Wojtasik (OH: 0097858)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3856
        Elliot.Morrison@usdoj.gov
        Megan.R.Miller@usdoj.gov
        Stephanie.Wojtasik@usdoj.gov