UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:21-cr-00491 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| PAUL SPIVAK, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHARLES SCOTT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

On August 5, 2024, Defendant Paul Spivak moved to dismiss the indictment based on alleged prosecutorial misconduct. (ECF No. 381.) At the final pretrial conference on August 13, 2024, based on its review of the record supporting the motion, the recitation of the events at issue by the United States, and its research, the Court expressed its inclination to deny the motion pending further review of certain materials that it requested—and the United States has since provided. The Court has now reviewed those materials and reviewed the record again. The Court **DENIES** Defendant's motion to dismiss and provides this necessarily brief explanation of its reasoning for doing so.

By way of background, before Mr. Spivak's current counsel appeared, his prior counsel worked with the United States to secure production of data seized from various devices seized in a search at the offices of USLG in 2021. Those efforts

required the involvement of the Court due to certain technological issues and questions about the extent of the government's obligations with respect to the data from those devices. (*See, e.g.*, ECF No. 169 and the Minutes and Orders leading up to the Court's Order dated November 3, 2022.) When addressing these issues between June and October 2022, counsel for Mr. Spivak expressed and raised no concern about privileged information on any of the devices at issue. As Defendant correctly point out, however, the United States has an independent obligation to take steps to protect a defendant's Sixth Amendment right to counsel, which includes his right to communicate with his attorney.

Although the issues regarding production of the data on the devices seized were resolved by the end of 2022 (*see* Minutes, Nov. 29, 2022), Defendant's review of these materials did not identify any documents subject to a claim of attorney-client or other privilege or protection until after the United States began identifying exhibits for trial. It does not appear that the United States listed such documents as exhibits. Rather, Defendant's preparations for trial in recent weeks led to their discovery in the data previously provided in discovery.

Additionally, the United States concedes that its use of a filter team could have been structured or handled better. But the question is not whether the process used was perfect or best—just whether it invaded the attorney-client privilege to such a degree, or otherwise engaged in conduct so far out of bounds or violative of Mr. Spivak's constitutional rights, as to mandate dismissal of the indictment against him. The record falls far short of such a high standard for several reasons.

First, it is not clear that Mr. Spivak had a privilege to invade. At the Securities and Exchange Commission, company counsel represented him. That counsel represented USLG, not Mr. Spivak in his individual or personal capacity. Setting aside that complication, before the SEC Mr. Spivak invoked advice of counsel as a defense both on the record in his deposition and in written communication. He did so, the record makes clear, against the advice of counsel: he "produced all the e-mails with USLG legal counsel pertaining to the [SEC] subpoena," even though his attorneys wanted to withhold this information, because he knew "for fact that the information would be beneficial for [the SEC] to see that all actions taken by USLG were under the PAID guidance of a SEC attorney."

Second, regarding the documents that prompted this motion, Mr. Spivak specifically alleges that they include communications between "(i) lawyers who represented Mr. Spivak and USLG in the context of the SEC investigation; (ii) lawyers who did corporate work for USLG and advised USLG in connection with the reverse merger with LXRT; and (iii) lawyers who wrote Rule 144 opinions for USLG." (ECF No. 381, PageID #3757.) Based on the SEC transcript, the first category involves an attorney who represented USLG, not Mr. Spivak in his individual or personal capacity. Regarding the second and third categories, even as alleged, the lawyers at issue only worked for USLG, not Mr. Spivak individually. Again, Mr. Spivak's invocation of advice of counsel as a defense places those communications in issue.

At bottom, Mr. Spivak claims prejudice because the United States used privileged information to obtain an indictment. He points to Paragraph 30 of the second superseding indictment, returned on June 29, 2023. (ECF No. 206.) That paragraph specifically charges giving false information to attorneys to obtain legal opinions to satisfy SEC regulatory requirements:

> SPIVAK, and others, arranged for the shares he and the company controlled to be held in the names of co-conspirators, including SCOTT and Church, and others to avoid restrictions on SPIVAK's ability to sell the shares in the market. In doing so, SPIVAK, SCOTT, and others provided false, incomplete, and fraudulent information to attorneys to obtain legal opinions under Title 17, Code of Federal Regulations, Section 230.144, et al., often referred to as Rule 144, that stated the shares met legal requirements for deposit and sale on the open market. These Rule 144 legal opinions contained misrepresentations concerning the relationship between the customer and the issuer, the customer and an affiliate of the issuer, the consideration paid (if any), and other material misrepresentations. SPIVAK, SCOTT, and others, provided these Rule 144 legal opinions to brokerage houses and transfer agents to satisfy legal requirements for depositing the stock and lifting share restrictions.

(*Id.*, PageID #1415–16.) Defendant contends that "the only place the government could have obtained evidence to support this critical contention is from privilege materials seized from USLG." (ECF No. 381, PageID #3764.) But the charge itself states that the Rule 144 opinions contained misrepresentations, supporting an inference that other extrinsic (that is, non-privileged) information reveals the misrepresentations alleged.

But further information in the record undermines Defendant's claim. The first superseding indictment, returned on September 16, 2021, contains materially similar allegations. Paragraph 28 charges:

4

> The Defendants and others provided attorneys with fraudulent information to obtain legal opinions under Title 17, Code of Federal Regulations, Section 230.44, et al., often referred to as Rule 144. These Rule 144 legal opinions contained misrepresentations concerning the relationship between the customer and the issuer, the customer and an affiliate of the issuer, the consideration paid (if any), and other material misrepresentations. The Defendants and others provided these Rule 144 legal opinions to brokerage houses and transfer agent to satisfy legal requirements for depositing the stock and lifting share restrictions.

(ECF No. 33, PageID #288.) Because the first superseding indictment brings the substantially similar charge, the inquiry focuses on the information on which the United States based the charge at that time.

For three reasons, the record demonstrates that privileged information does not support this charge. First, the grand jury transcripts show that no such information was used. Second, the investigators' logs (the BIDMAS activity logs), which the Court reviewed *in camera*, show that the USLG data was not accessed until *after* the grand jury returned the first superseding indictment. Further, the statement of the former prosecutor (attached as Exhibit A) establishes that, after he realized there was potentially privileged communications within the case documents, he "began by ensuring that [he] and the case team would not encounter privileged material on the Item, and notified the case agents of the issue. [He] knew that they were not reviewing, and would not review, any of the USLG extracted computer data." Third, even long after September 16, 2021, the record demonstrates that counsel for the United States did not have access to the data seized in the USLG search due to the technological issues that ultimately resulted in the Court's Order in November 2022 (ECF No. 169).

5

Additionally, the Court reviewed *in camera* the document the prosecutor identified as potentially privileged and finds that it is not. The prosecutor did not review this document until after the grand jury returned the first superseding indictment. Of course, the United States now has a new trial team in any event. Those lawyers represent (ECF No. 393, PageID #4112 & #4113), and there is no reason to question, that each has not reviewed any privileged information.

Assuming there has been no waiver of the privilege, and even assuming the United States has invaded it, the law does not require the remedy Mr. Spivak seeks based on the record in this case. He relies on *United States v. Valencia*, 541 F.2d 618, 620 (6th Cir. 1976). There, a paid informant worked as a secretary for the lawyer who represented a drug conspirator charged in the case. The court recognized that a Sixth Amendment violation of the sort Mr. Spivak claims required a remand to determine if "any prejudice is shown as a result of the intrusion" and, if so, for "a new trial or dismissal of the indictments, as circumstances dictate." *Id.* at 620, 622. In other words, the more direct and extensive use of privileged information required either a new trial without the tainted evidence or dismissal of the charges if sufficient untainted evidence would not support a conviction. *Id.* at 624. Any taint here comes nowhere close to the misconduct that permeated the prosecution in *Valencia*.

Defendant also cites *United States v. Pelullo*, 917 F. Supp. 1065 (D.N.J. 1995). In turn, that case cites *United States v. Morrison*, 449 U.S. 361, 365 (1981), in which the Supreme Court "held that where a Sixth Amendment violation has occurred, absent demonstrable prejudice or substantial threat thereof, dismissal of the

6

indictment is plainly inappropriate, even though the violation may have been intentional." 917 F. Supp. at 1078. "Applying *Morrison,* a defendant must first show that the government has made use of privileged information." *Id.* In *Pelullo,* the court found that the defendant had "failed to establish that the government has made use of or even had access to any privileged documents relevant to the charges contained in the indictment." *Id.* The same is true here.

Further, the two cases out of this District referenced in Defendant's motion and reply lead to the same conclusion. In *United States v. Pearl*, No. 5:17-cr-240 (N.D. Ohio), the court required a new team of agents. It only dismissed the indictment on motion of the United States. In *United States v. Mox*, No. 2:21-cr-406 (N.D. Ohio), the defendant moved to suppress evidence and disqualify counsel and asked for an evidentiary hearing. Based on the government's investigation in response to that motion, the United States sought dismissal. Here, in contrast, the investigation of the United States—to say nothing of the Court's independent review—has not led to any suggestion that dismissal presents an appropriate remedy.

At bottom, some of the representations or developments with which defense counsel takes issue result from proceedings in 2022 that pre-date his involvement in the case. That broader context diminishes the concerns expressed but does not eliminate them, which is why the Court undertook its own evaluation of the issues and arguments to assure itself that the motion does not require further intervention. Given this Court's familiarity with the case and the discovery, and after reviewing all the documents it directed the United States to provide *in camara*, the Court finds

7

that further proceedings—evidentiary or otherwise—are unnecessary. For all these reasons, as well as those previously stated on the record, the Court adheres to its view expressed at the final pretrial conference and **DENIES** Defendant's motion to dismiss.

    **SO ORDERED.**

Dated: August 17, 2024

                                               J. Philip Calabrese
                                               United States District Judge
                                               Northern District of Ohio