IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21-CR-00491 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL SPIVAK, et al., | ) | <u>MEMORANDUM OF LAW IN SUPPORT</u> |
| | ) | <u>OF PAUL SPIVAK'S MOTION FOR</u> |
| Defendants. | ) | <u>JUDGMENT OF ACQUITTAL UNDER</u> |
| | ) | <u>FED. R. CRIM. P. 29 OR, IN THE</u> |
| | ) | <u>ALTERNATIVE, MOTION FOR A NEW</u> |
| | ) | <u>TRIAL UNDER FED R. CRIM. P. 33</u> |

Defendant Paul Spivak, by and through his undersigned counsel, respectfully moves for a

judgment of acquittal under Fed. R. Crim. P. 29 or, in the alternative, for a new trial under Fed. R.

Crim. P. 33.

Dated: November 4, 2024            Respectfully submitted,

                                      */s/ David L. Axelrod*
                                      David L. Axelrod (Admitted Pro Hac Vice)
                                      Lauren W. Engelmyer (Admitted Pro Hac Vice)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone:    215.864.8639
Facsimile:    215.864.8999
Email:        axelrodd@ballardspahr.com
                engelmyerl@ballardspahr.com

*Attorneys for Defendant Paul Spivak*

## Table of Contents

                                                              **Page**

I.      INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

III.   APPLICABLE LEGAL STANDARDS....................................................................6

      A.     Federal Rule of Criminal Procedure 29 ......................................................6

      B.     Federal Rule of Criminal Procedure 33 ......................................................7

IV.   ANALYSIS ...........................................................................................................7

      A.     The Court Should Grant Spivak's Motion for Acquittal on the
                 Conspiracy Count Because the Acquittals on the Securities and Wire
                 Fraud Counts Demonstrate that There Was Insufficient Evidence to
                 Support a Conviction .................................................................................8

            1.     The substantive acquittals gut the charged conspiracy. ...........................8

            2.     The substantive acquittals undermine the weight of evidence
                    on the Government's remaining theories of conspiracy and
                    that the overt acts were in furtherance of a conspiracy................................9

      B.     The Jury Was Permitted to Convict Defendant Spivak of Two
                 Counts of Wire Fraud Based on an Illegal Ground.................................13

            1.     The Court must vacate a verdict when, as here, it cannot be
                    certain whether the jury considered a legally invalid theory. ...................13

             2.     The Supreme Court clarified in *Ciminelli* that the Federal
                  Fraud Statutes do not criminalize deprivation of an
                  investor's right to valuable economic information. ...................................14

             3.     The wire fraud convictions were based on the Government's
                    invalid theory of wire fraud. .....................................................................15

V.    CONCLUSION....................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                  **Page(s)**

*Ciminelli v. United States*,
    598 U.S. 306 (2023)................................................................................................... *passim*

*Griffin v. United States*,
    502 U.S. 46 (1991)...............................................................................................13, 17

*Iannelli v. United States*,
    420 U.S. 770 (1975)...........................................................................................................9

*SEC v. Govil*,
    86 F.4th 89 (2d. Cir. 2023) ........................................................................................16, 17

*SEC v. Govil*,
    No. 21-CV-6150 (JPO), 2022 U.S. Dist. LEXIS 933834 (S.D.N.Y. May 24,
    2022) ....................................................................................................................................16

*United States v. Bradfield*,
    No. 98-2407, 2000 U.S. App. LEXIS 17556 (6th Cir. July 18, 2000) .............................6, 7, 9

*United States v. Brooks*,
    703 F.2d 1273 (11th Cir. 1983) ...........................................................................................9

*United States v. Glenn*,
    312 F.3d 58 (2d Cir. 2002)...................................................................................................6

*United States v. Hughes*,
    505 F. 3d 578 (6th Cir. 2007) .............................................................................................7

*United States v. Lebedev*,
    932 F.3d 40 (2d Cir. 2019)................................................................................................14

*United States v. Lorenzo*,
    534 F.3d 153 (2d Cir. 2008)...............................................................................................6

*United States v. Lutz*,
    154 F.3d 581 (6th Cir. 1998) .............................................................................................7

*United States v. Medeiros*,
    No. 23-2019, 2023 U.S. App. LEXIS 33535 (10th Cir. Dec. 19, 2023).................9, 10, 11, 12

*United States v. Milheiser*,
    98 F.4th 935, 938-942 (9th Cir. 2024) ...............................................................................17

*United States v. Nall*,
    949 F.2d 301 (10th Cir. 1991) ...........................................................................................11

*United States v. Nordlicht,*
No. 16-cr-00640 (BMC), 2023 U.S. Dist. LEXIS 119965 (E.D.N.Y. July 12,
2023) ...............................................................................................................13

*United States v. Percoco et al.,*
13 F.4th 158 (2d Cir. 2021) ..........................................................................14

*United States v. Wheat,*
988 F.3d 299 (6th Cir. 2021) ...........................................................................9

**Statutes**

15 U.S.C. § 78ff(a).................................................................................................2

15 U.S.C. § 78j(b) ..................................................................................................2

18 U.S.C. 1343........................................................................................................2

18 U.S.C. § 371........................................................................................................2

**Other Authorities**

17 C.F.R. § 240.10b-510..........................................................................................2

Fed. R. Crim. P. 29 ......................................................................................... *passim*

Fed. R. Crim. P. 33 ......................................................................................... *passim*

## I.     INTRODUCTION

After more than three weeks of trial, the jury returned a resounding rejection of the Government's case, rebuffing the Government's primary theory of the crime. The jury acquitted Defendant Paul Spivak of all ten counts of securities fraud and nineteen counts of wire fraud, and yet convicted Spivak of conspiracy to commit securities fraud and two counts of wire fraud. However, the few counts on which the jury returned guilty verdicts cannot stand under Rules 29 and 33 of the Federal Rules of Criminal Procedure—critical safeguards in our system of justice. Courts do not simply rubber-stamp decisions during trial. Rather, free from the pressure and passion of trial, courts must confirm that the Government *fairly* obtained convictions. The answer here is that it did not.

First, Spivak respectfully asks the Court to acquit him of the conspiracy count because the jury's acquittals on the substantive securities and wire fraud counts gut the conspiracy. The crux of the Government's case was Spivak's agreement to pay unregistered brokers up to a 50% commission to sell restricted stock, which Spivak and his co-conspirators concealed from investors (among other alleged lies) in order to induce them to invest in USLG. The undisputed evidence at trial showed that the Government's factual allegations were correct—unregistered brokers sold restricted stock to investors and failed to disclose that USLG paid them a 50% commission on the sale. But the jury determined that this conduct was not illegal; it acquitted Spivak of every sale of restricted stock and every commission payment.

When you strip away all of the conduct for which the jury acquitted Spivak, the remnants of the conspiracy case are insufficient to sustain a conviction and require a judgment of acquittal under Rule 29. In the alternative, the Court should grant a new trial under Rule 33 to prevent manifest injustice.

Second, Defendant Spivak requests that the Court vacate the two wire fraud convictions under Rule 29, or in the alternative, grant a new trial under Rule 33. The Government's theory of liability on these two counts was entirely vague and the jury likely convicted Spivak on these counts based on an informational fraud theory—which the Supreme Court squarely rejected in *Ciminelli v. United States*, 598 U.S. 306 (2023). Because the Government argued these counts to the jury in a way that allowed the jury to convict based on conduct that is not actually criminalized by statute, the resulting verdict on these counts must be overturned.

## II.     BACKGROUND

On June 29, 2023, the grand jury returned a second superseding indictment (the "SSI") that charged Spivak with one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, ten counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff(a), and 17 C.F.R. § 240.10b-5, and twenty-one counts of wire fraud, in violation of 18 U.S.C. 1343.[1]

The SSI, in Count One, alleged a broad conspiracy among numerous participants (charged and uncharged) involving three interlocking concepts: (1) Spivak agreed to pay unregistered brokers a 50% commission to sell restricted stock, and Spivak and his co-conspirators concealed this payment from investors and made numerous other misrepresentations to investors to induce them to invest in USLG (*see, e.g.*, SSI ¶¶ 10-11, 22, 28, 29, 39, 41(c-d), (u-w), (ff-kk), (pp-vv), (aaa), (eee-iii), (vvv), (cccc), (ffff), (iiii-kkkk)), 48, 51); (2) Spivak conspired with Richard Mallion, Forrest Church, and others to fraudulently increase the price of USLG free-trading stock so that the sale of restricted stock would be attractive to investors (*see, e.g.*, SSI ¶¶ 8, 24, 41(yy), (zz), (lll), (mmm), (uuu) (llll-rrrr)); and (3) the reverse merger, in which Mallion held on to the

---

[1] For purposes of this Motion, Defendant Spivak references only the parts of the SSI that were included in Phase 1 of the trial.

free-trading shares and sent the proceeds of stock sales back to USLG, was somehow fraudulent (*see e.g.*, ¶¶ 20, 21, 30, 41 (a-b), (f-i), (l-t)). All thirty-one substantive counts incorporated the allegations of Count One and were alleged acts in furtherance of the overarching conspiracy.

The case proceeded to trial on August 19, 2024, and the Government presented eleven days of testimony. The Government's focus at trial was on the agreement between Spivak and the unlicensed brokers, dubbed "pirates," to lie to investors to raise money through the sale of restricted stock. The Government argued to the jury that "this is a case about greed and deception," "about how the defendants, Mr. Spivak and Mr. Scott, chose to steal $6.9 million from unwitting investors in USLG stock," "[a]nd it's about how they deceived investors by recruiting pirates to promote these restricted shares, by lying and hiding material facts from them: Facts about 50 percent commissions, aliases, hold periods, audits and on and on." Gov't Closing, 9/6/2024 Tr. at 103:10-11, 13-15, 19-23. In closing arguments alone, the Government used the term "pirates" more than fifty times and referred to the 50% commissions more than twenty times. These "pirates," including Chris Bongiorno, Jason Arthur, Larry Matyas, and Duwayne Hughe Graham, all testified.[2] The Government also called eleven investor witnesses to testify about their purchase of unrestricted stock from these "pirates."

The undisputed evidence at trial showed, as the Government said it would, that these "pirates" sold restricted stock to investors and failed to disclose that they were earning up to a 50% commission on the sale. Each of the "pirates" testified that USLG paid them up to a 50% commission for every sale of restricted stock and that they did not disclose this to the investors. *See* Mallion Test., 8/20/2024 Tr. at 165:12-25; Collins Test., 8/22/2024 Tr. at 23:22-24:22;

---

[2] Robert Carver was another unlicensed broker, referred to as a "pirate," that sold stock to investors under the alias "Don Howard." The government presented testimony about his role and his commission payments, but did not call him as a witness.

Bongiorno Test., 8/22/2024 Tr. at 157:2-11; Graham Test., 8/23/2024 Tr. at 199:23-25, 268:16-19; Matyas Test., 8/26/2024 Tr. at 237:3-8, 249:7-15. The Government asked each investor witness whether they knew that USLG was paying a 50% commission on their sale, and the investors denied being told about the commission. *See* McCusker Test., 8/21/2024 Tr. at 215:3-216:5; Rezac Test., 8/21/2024 Tr. at 325:18-22; Nolan Test., 8/23/2024 Tr. at 127:16-18; Patrick Test., 8/23/2024 Tr. at 165:4-6; Michaels Test., 8/26/2024 Tr. at 81:17-21; Petersen Test., 8/26/2024 Tr. at 126:20-127:8; Kane Test., 8/26/2024 Tr. at 151:2-9; Ifka Test., 8/26/2024 Tr. at 128:6-8; Stallings Test., 8/26/2024 Tr. at 191:6-11; Millett Test., 8/26/2024 Tr. at 215:15-20; Duarte Test., 8/27/2024 Tr. at 12:12-14; Austin Test., 8/28/2024 Tr. at 192:11-14; Bien Test., 8/29/2024 Tr. at 257:17-22; Fiege-Kollmann Test., 8/30/2024 Tr. at 39:21-23. The Government also presented evidence ad nauseam about invoices that the "pirates" sent to USLG for their work, including by showing every page of over two-hundred pages of invoices. *See* GX-111, 8/26/2024 Tr.; GX-112, 8/22/2024 and 8/27/2024 Trs.; GX-113, 8/23/2024 Tr.; GX-114, Tr. 9/3/2024; GX-115, 8/27/2024 and 9/3/2024 Trs. The evidence showed that, in total, in the last six months of 2016, "500,000 in investor dollars got paid to these pirates," and the Government argued to the jury that "[t]hese were payments, pure and simple, for the solicitation of stock, and these invoices were to cover it up." Gov't Closing, 9/6/2024 Tr. at 119:18-20. But importantly, the undisputed evidence also showed that every investor received a subscription agreement regarding their investment that disclosed information about holding periods and commissions, among other things. *See* Mallion Test., 8/20/2024 Tr. at 100:1-3; McCusker Test., 8/21/2024 Tr. at 200:2-201:7; Rezac Test., 8/21/2024 Tr. at 317:20-320:11; Patrick Test., 8/23/2024 Tr. at 167:14-20; Michaels Test., 8/26/2024 Tr. at 72:20-73:1; Petersen Test., 8/26/2024 Tr. at 124:2-126:19, 136:8-11; Kane Test., 8/26/2024 Tr. at 160:4-162:3; Ifka Test., 8/26/2024 Tr. at 173:13-174:5; Stallings Test., 8/26/2024 Tr. at 185:16-186:12, 187:21-

188:11; Millett Test., 8/26/2024 Tr. at 206:14-17; Austin Test., 8/28/2024 Tr. at 193:24-194:2; Bien Test., 8/29/2024 Tr. at 254:23-257:7; Fiege-Kollmann Test., 8/30/2024 Tr. at 16:1-22:5; GX-220 (Nolan file), 9/3/2024 Tr. And, the undisputed evidence also showed that USLG employees consulted attorneys about the contents of these subscription agreements. *See* DX-74, Loesch Test., 8/27/2024 Tr. at 166:7, 8/28/2024 Tr. at 79:7-81:12.

After three weeks of listening to this undisputed evidence, the jury **acquitted** Spivak of this conduct relating to the sale of restricted stock—including *all* ten counts of securities fraud, and nineteen of twenty-one counts of wire fraud. The acquittals break down into three categories: (1) investor purchases of USLG restricted stock; (2) commission payments from USLG to the "pirates"; and (3) transactions where Mallion sent money to USLG to purchase restricted stock. The specifics of these charges are described below:

| Description | Count | Securities/Wire Fraud | Verdict |
|---|---|---|---|
| **(1) Investor Purchases of USLG Restricted Stock** | | | |
| Robert Larson purchase of 20,000 shares in 2016 | 5 | Securities Fraud | Not Guilty |
| Arthur Rezac purchase of 10,000 USLG shares in 2016 | 6 24 | Securities Fraud Wire Fraud | Not Guilty |
| Linda Stallings purchase of 10,000 USLG shares in 2016 | 7 29 | Securities Fraud Wire Fraud | Not Guilty |
| Dudley Frank purchase of 300,000 USLG shares in 2016 | 8 30 | Securities Fraud Wire Fraud | Not Guilty |
| Duarte Trust purchase of 50,000 USLG shares in 2016 | 9 33 | Securities Fraud Wire Fraud | Not Guilty |
| Gary Nolan purchase of 50,000 USLG shares in 2016 | 10 | Securities Fraud | Not Guilty |
| Ifka purchase of 40,000 USLG shares in 2017 | 11 36 | Securities Fraud Wire Fraud | Not Guilty |
| Brehnholt purchase of 40,000 USLG shares in 2017 | 12 38 | Securities Fraud Wire Fraud | Not Guilty |
| Kane purchase of 140,000 USLG shares in 2018 | 18 40 | Securities Fraud Wire Fraud | Not Guilty |
| Shanner purchase of 50,000 USLG shares in 2018 | 19 42 | Securities Fraud Wire Fraud | Not Guilty |

| Description | Count | Securities/Wire Fraud | Verdict |
|---|---|---|---|
| Walter White purchase of USLG shares in 2016 | 32 | Wire Fraud | Not Guilty |
| June Austin purchase of USLG shares in 2016 | 34 | Wire Fraud | Not Guilty |
| **(2) Commission Payments from USLG to the "Pirates"** | | | |
| Commission payment to Jason Arthur | 25 | Wire Fraud | Not Guilty |
| Commission payment to Chris Bongiorno | 31 | Wire Fraud | Not Guilty |
| Commission payment to Jason Arthur | 35 | Wire Fraud | Not Guilty |
| Commission payment to Robert Carver | 37 | Wire Fraud | Not Guilty |
| Commission payment to Robert Carver | 39 | Wire Fraud | Not Guilty |
| Commission payment to Chris Bongiorno | 41 | Wire Fraud | Not Guilty |
| Commission payment to Larry Matyas | 43 | Wire Fraud | Not Guilty |
| **(3) Richard Mallion Transactions** | | | |
| Mallion purchase of USLG restricted stock in September 2016 | 23 | Wire Fraud | Not Guilty |
| Mallion purchase of USLG restricted stock in September 2016 | 26 | Wire Fraud | Not Guilty |
| Mallion purchase of USLG restricted stock in September 2016 | 27 | Wire Fraud | Guilty |
| Mallion purchase of USLG restricted stock in October 2016 | 28 | Wire Fraud | Guilty |

Despite the jury's overwhelming rejection of the Government's primary theory of liability, the jury convicted Spivak on the conspiracy count and on two wire fraud counts that relate to Mallion's purchase of USLG restricted stock.

## III.   APPLICABLE LEGAL STANDARDS

### A.   Federal Rule of Criminal Procedure 29

Under Rule 29, a court must ensure that a jury could *reasonably* find guilt beyond a reasonable doubt. *See United States v. Bradfield*, No. 98-2407, 2000 U.S. App. LEXIS 17556, at *9-10 (6th Cir. July 18, 2000). Reasonable doubt necessarily exists when the evidence plausibly supports a non-guilty verdict. *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (stating that the jury necessarily entertains reasonable doubt where the evidence provides "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence" (quoting *United States*

*v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002))). "The test for . . . a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure is the same as the test for . . . a claim that the evidence is insufficient to support a conviction." *Bradfield,* 2000 U.S. App. LEXIS 17556 at *8 (affirming the district court's grant of a Rule 29 motion where the evidence was insufficient to establish that the defendant had engaged in a criminal conspiracy).

### B.       Federal Rule of Criminal Procedure 33

Courts enjoy broad discretion to grant motions for a new trial in the interest of justice. *See* Fed. R. Crim. P. 33(a).  This broad discretion far exceeds a court's ability to grant a motion for judgment of acquittal. *See e.g.*, *United States v. Hughes*, 505 F. 3d 578, 593 (6th Cir. 2007).

When applying Rule 33, the court does <u>not</u> weigh the evidence in the light most favorable to the Government.  Instead, Rule 33 requires that the Court evaluate the evidence without any bias or presumption, and "act as a thirteenth juror" by "assessing the credibility of witnesses and the weight of the evidence" in determining whether to grant a new trial. *Id.* (citing *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)).

## IV.    ANALYSIS

The jury's verdict on the conspiracy count cannot stand because the substantive acquittals demonstrate that there was insufficient evidence to convict Spivak on the *charged* conspiracy count. The substantive acquittals also vitiated the basis to find that the overt acts furthered the conspiracy's objective. Additionally, the jury's convictions on the two wire fraud counts were likely based on an impermissible legal theory of wire fraud, rejected by the Supreme Court in *Ciminelli*. On these bases, the Court should grant a judgment of acquittal on the conspiracy and two wire fraud counts, or, in the alternative, order a new trial on these counts.

7

A. **The Court Should Grant Spivak's Motion for Acquittal on the Conspiracy Count Because the Acquittals on the Securities and Wire Fraud Counts Demonstrate that There Was Insufficient Evidence to Support a Conviction**

1.  <u>The substantive acquittals gut the charged conspiracy.</u>

It is undisputed that the jury's acquittals on all ten counts of securities fraud (counts 5-12 and 18-19), and nineteen of the wire fraud counts (counts 23-26, and 29-43) gut the overarching conspiracy to commit securities fraud. As illustrated in the chart above, the jury acquitted Spivak of every sale of restricted stock and every commission payment. These acquittals are a resounding rejection of the Government's core theory. Indeed, the only way to interpret the jury's verdict is that it found that the Government did not prove, as it charged in the indictment, that Spivak and his "pirate" co-conspirators, engaged in a scheme to defraud investors. As the Judge instructed the jury, the Government's failure to prove Spivak's involvement in the conspiracy charged in the indictment requires acquitting Spivak of the conspiracy charge.

> To convict any one of the defendants of the conspiracy charge, the United States must convince you beyond a reasonable doubt that the defendant was a member of the conspiracy ***charged*** in the indictment. If the United States fails to prove this, then you must find that defendant not guilty of the conspiracy charge, even if you find that he was a member of some other conspiracy.

Jury Instructions, 9/6/24 Tr. at 79:4-11 (emphasis added).

This is not an inchoate conspiracy. Put another way, this is not a situation where the jury acquitted because the Government failed to prove the alleged co-conspirators acted on their illegal agreement. Rather, after three weeks of listening to the Government's undisputed evidence of Spivak's undisclosed commission payments for the sale of restricted stock, the jury ***acquitted*** Spivak of this conduct. They determined that the actions of Spivak and the "pirates"—the very actions that form the basis of the alleged unlawful agreement in Count One—were not illegal.

The jury was instructed that "it is a crime for two or more persons to conspire or agree to commit a criminal act, even if they never actually achieve their goal." *See* Jury Instructions, 9/6/24

Tr. at 75:9-11. But that is not what happened here. Spivak and his co-conspirators did achieve their goal—for USLG to pay the "pirates" a 50% commission to promote USLG's stock and conceal this payment from investors—and the jury acquitted this conduct. For this reason, Spivak could not have been engaged in a conspiracy to commit an "offense against the United States" with these "pirates." A person cannot be guilty of conspiring to do a legal act. *See United States v. Wheat*, 988 F.3d 299, 306 (6th Cir. 2021) ("[T]he essence [of a conspiracy] is an agreement to commit an *unlawful* act." (emphasis added) (quoting *Iannelli v. United States*, 420 U.S. 770, 777 (1975)).

The effect of these verdicts was to gut the conspiracy charge, leaving only fragments of the conspiracy that are insufficient to prove the charged conspiracy beyond a reasonable doubt. *See United States v. Brooks*, 703 F.2d 1273, 1278-79 (11th Cir. 1983) (reversing defendant's conviction where the jury's acquittal on certain counts demonstrated that "the Government's proof was insufficient as a matter of law" on another count). Based on this, the Court should grant Spivak's motion for acquittal on the conspiracy count under Rule 29. *See Bradfield,* 2000 U.S. App. LEXIS 17556 at *8.

        2.    <u>The substantive acquittals undermine the weight of evidence on the Government's remaining theories of conspiracy and that the overt acts were in furtherance of a conspiracy.</u>

Further, the jury's acquittal of Spivak's conduct with the "pirates" calls into question (i) the weight of evidence on the government's other theories of the conspiracy and (ii) that the overt acts were in furtherance of a conspiracy. *United States v. Medeiros* is instructive here. No. 23-2019, 2023 U.S. App. LEXIS 33535 (10th Cir. Dec. 19, 2023). In that case, the jury convicted defendants of conspiracy to defraud the United States, and thereafter the district court acquitted defendants of the three substantive fraud counts and granted a motion for a new trial on the conspiracy count. *Medeiros*, 2023 U.S. App. LEXIS 33535 at *1. On appeal, the Tenth Circuit rejected the Government's argument that "the acquittals on the substantive counts had only a

'minimal impact on the body of conspiracy evidence,'" finding that "[t]he overlap between the conspiracy count and the acquittal on the substantive count[s] lightened the weight of the evidence on conspiracy." *Id*. at *16-18. The Tenth Circuit further found that "[t]he acquittals also undercut proof that several overt acts furthered the conspiracy's objectives[.]" *Id*. at *24-25. These conclusions warranted a new trial on the conspiracy count. *Id*. at *17. The same analysis applies here.

*First*, the acquittals on the substantive counts undermine the evidence on the remaining conspiracy allegations: the claim that the structure of the reverse merger somehow constituted securities fraud, and the claim that Spivak, Mallion, and others were manipulating the price of the free-trading stock. As the Government told the jury in opening statements, the "restricted stock side of the scheme" and the "free-trading side of the scheme" are inextricably linked:

> Now, a key feature of this scheme you will learn about is that there are two sides ***to the scheme that work together***, okay? Without one, the other can't work . . . the first is the free-trading stock side of the scheme; the second is the restricted stock side of the scheme.
>
> ….
>
> As you will hear, the free-trading side is keeping that price up by having that buying in the open market. And here was part of the pitch that they gave to those restricted stock investors. They would point them—they would tell them, 'Hey, go online, go to otcmarkets.com, check the price, USLG, you can look it up. $0.80, a dollar, whatever it says on there. We're offering you this restricted stock at $0.50 a share.' Heck, kept getting more and more desperate. 'We'll offer it to you at $0.25 per share.' . . . So they're discounting this price and they're giving people the view that, 'Hey, I'm getting an amazing deal.' They don't know that that price that they see online has been pumped up. And they think they're getting an incredible deal. ***So that's why the restricted stock side of the scheme can't work without the free-trading stock side of the scheme. The free-trading puts the price up, and then they use that price as part of their big pitch.***

Gov't Opening, 8/20/2024 Tr. at 35:1-7; 39:3-22 (emphasis added). The Government argued again at closing that Spivak and his co-conspirators "manipulate[d] the artificial stock price of the free-

10

trading shares upwards to make their restricted shares attractive[,]" and that Church sold his stock in order to "keep[] that stock price artificially inflated so that the restricted share discount looked real good to those investors." Gov't Closing, 9/6/24 Tr. at 103:16-18; 143:8-11.

Given this interdependence between the restricted stock and free-trading stock schemes, and the jury's acquittal of the restricted stock, the verdict on the conspiracy count cannot stand. *See Medeiros*, 2023 U.S. App. LEXIS 33535 at *18 ("The substantive acquittals called into question the weight of the evidence on every part of the alleged conspiracy count. We thus cannot say the district court abused its discretion in ordering a new trial on the conspiracy count.").

*Second*, like in *Medeiros*, "the substantive-count acquittals also affected the weight of the evidence on whether one or more of the alleged overt acts furthered the conspiracy's objectives." *Id.* at *19. Jurors were given a copy of the overt acts from the SSI and were instructed that in order to find Spivak guilty of conspiracy, they had to find, beyond a reasonable doubt, that "at least one of these overt acts was committed by a member of the conspiracy, and that it was committed for the purpose of advancing or helping the conspiracy." Jury Instructions, 9/6/24 Tr. at 78:9-12. As the Judge instructed, "This is essential" (*id*. at 78:13), because "[p]roving an overt act alone would not meet the Government's burden," as "[i]t needed to prove (1) an overt act that (2) furthered (3) the conspiracy's objective." *Medeiros*, 2023 U.S. App. LEXIS 33535 at *19. *See also id.* at *16 ("[T]he purpose of the [overt] act must be to further the conspiracy." (quoting *United States v. Nall*, 949 F.2d 301, 305 (10th Cir. 1991) (affirming district court's order dismissing defendants' conspiracy convictions))).

The SSI alleged approximately ninety overt acts. A little less than half of those overt acts relate to the sale of restricted stock and the payment of undisclosed commissions (*see e.g.* SSI ¶¶ 41(c-d), (u-w), (ff-kk), (pp-vv), (aaa), (eee-iii), (vvv), (cccc), (ffff), (iiii-kkkk)). As discussed,

11

the jury's acquittal of all securities fraud counts, which covered the sale of restricted securities to investors, and all of the wire fraud counts that covered both the sale of restricted stock and the payment of commissions, vitiates the evidentiary basis to find that these overt acts furthered the conspiracy's objective to commit the crime of securities fraud. *See Medeiros*, 2023 U.S. App. LEXIS 33535 at *22 ("It follows that even if the Government proved that Mr. Medeiros and Mr. Greaves made the statements alleged in Overt Acts 1 and 6, the court's acquittal of Count 3 vitiated the evidentiary basis to find that the overt acts furthered the conspiracy's 'essential objective'—to obtain contracts by misrepresentation.").

The remaining half of the overt acts in the SSI relate to (i) allegations that Mallion and Church were manipulating the price of USLG stock (*see e.g.*, SSI ¶¶ 41 (jjj-zzz), (llll-rrrr)); and (ii) the reverse merger and the agreement that Mallion would get the free-trading stock and send proceeds from the sale of that stock back to USLG (*see e.g.*, *Id*. ¶¶ 41 (a-b), (f-i), (l-t)). If, as the Government told the jury, "the free-trading stock side of the scheme" and "the restricted stock side of the scheme" are interdependent because "[w]ithout one, the other can't work," (Gov't Opening, 8/20/2024 Tr. at 35:1-7), and the jurors concluded that what occurred on "the restricted stock side of the scheme" was legal, then it cannot be said that the overt acts relating to the free-trading stock were in furtherance of a criminal conspiracy. Put another way, because the purported purpose of manipulating USLG's stock price was "to make their restricted shares attractive," (Gov't Closing, 9/6/2024 Tr. at 35:1-7), even if the Government proved that Mallion and Church manipulated the stock, the jury's acquittal of the substantive counts relating to the restricted stock scheme undermine that those overt acts were done for the purpose of advancing the conspiracy. Like in *Medeiros*, "we do not know which overt acts the jury relied upon to convict on the conspiracy count," so the jury's verdict cannot stand. 2023 U.S. App. LEXIS 33535 at *25.

12

For these reasons, the Court should grant Spivak's motion for a judgment of acquittal as to the conspiracy count under Rule 29. Given the substantive acquittals, the remaining conspiracy is fundamentally different than the one the grand jury charged, and there is no practical way to proceed with a new trial without risking the invasion of Spivak's constitutional rights.

**B. The Jury Was Permitted to Convict Defendant Spivak of Two Counts of Wire Fraud Based on an Illegal Ground**

      1. <u>The Court must vacate a verdict when, as here, it cannot be certain whether the jury considered a legally invalid theory.</u>

A guilty verdict must be vacated when a jury convicts on a count that *could* rest on a legally improper theory. Juries are charged with determining the facts, not the law. If there is a possibility that a jury's verdict may have rested on a legally flawed theory, the Court must vacate the verdict in the interests of justice. As the Supreme Court has stated,

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error.

*Griffin v. United States*, 502 U.S. 46, 59 (1991). When a case has been submitted to a jury in a way that the jury could convict based on conduct that is not actually criminalized by the statute, the resulting verdict must be overturned. That is precisely what happened here. *See United States v. Nordlicht*, No. 16-cr-00640 (BMC), 2023 U.S. Dist. LEXIS 119965, at *2 (E.D.N.Y. July 12, 2023) (granting a Rule 29 motion because, after *Ciminelli*, the evidence at trial was insufficient to sustain defendants' convictions).

2. The Supreme Court clarified in *Ciminelli* that the federal fraud statutes do not criminalize deprivation of an investor's right to valuable economic information.

In *Ciminelli v. United States*, the Supreme Court vacated a wire fraud guilty verdict, holding that only schemes to defraud involving the deprivation of *actual* property interests are criminal; deprivations of valuable economic information is not a theory of fraud proscribed by Congress. 598 U.S. at 314-16. The Court emphasized:

> [T]he wire fraud statute reaches our traditional property interests. The right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest.

*Id*. at 316.

Before *Ciminelli*, courts endorsed a "right-to-control theory" of wire fraud that allowed for conviction on "a showing that the defendant, through the withholding or inaccurate reporting of information that could impact on economic decisions, deprived some person or entity of potentially valuable economic information." *United States v. Percoco et al.*, 13 F.4th 158, 170 (2d Cir. 2021) (quoting *United States v. Lebedev*, 932 F.3d 40, 48 (2d Cir. 2019)), reversed and remanded by *Ciminelli*, 598 U.S. at 306. Examples of convictions under the right-to-control theory included when the scheme "affected the victim's economic calculus or the benefits and burdens of the agreement, pertained to the quality of services bargained for, or exposed the victim to unexpected economic risk." *Id.* (cleaned up).

In 2023, the Supreme Court roundly rejected the right-to-control theory. The Court noted a particular concern with the breadth of the right-to-control theory, which "vastly expands federal jurisdiction without statutory authorization." *Ciminelli*, 598 U.S. at 315. "Because the theory treats mere information as the protected interest, almost any deceptive act could be criminal." *Id*. Ultimately, the Court held that the right-to-control theory makes "a federal crime of an almost

14

limitless variety of deceptive actions traditionally left to state contract and tort law[,]" and "thus criminalizes traditionally civil matters and federalizes traditionally state matters." *Id.* at 315-16.

        3.      <u>The wire fraud convictions were based on the Government's invalid theory of wire fraud.</u>

The jury convicted Mr. Spivak on just two counts of wire fraud, involving payments on September 30, 2016 and October 4, 2016, totaling $10,000 and $5,000, respectively, from Mallion's SunTrust Bank account to USLG's Huntington Bank account. Remarkably, the Government offered zero evidence relating to these two transactions. During the entire three-week trial, the only time the Government even referenced these transactions was when it asked Alex Chuna, the Government's forensic accountant, whether he reviewed the transactions as part of his investigation and whether Government Exhibits 27A-C and 28A-C correspond with counts 27 and 28, respectively. *See* Chuna Test., 8/30/2024 Tr. at 234: 22-24; (Q: And you also, sir, compiled general records for HSF Investments, is that right? A: Yes.); *id.* at 236:6-237:13 ("Q: 27A, please. Wire details from the SunTrust-Truist account for HSF Investments? A: Yes. Q: 27B. Statement for HSF Investment Services containing wire information? A: Yes. Q: 27C. USLG Huntington 5187 statement showing the inflow of those funds from HSF Investments? A: Yes. Q: And that corresponds to Count 27? A: Yes. Q: 28A, please. Additional wire detail from HSF Investment account? A: Yes. Q: 28B. The SunTrust HSF Investment statement showing that wire? A: Yes. Q: 28C. USLG Huntington statement 5187 showing the inflow of that wire? A: Yes. Q: And that corresponds to Count 28? A: Yes."). Mr. Chuna said nothing about the purpose of the transactions, and the Government argued nothing at closing about these transactions or why they constitute wire fraud.

Notwithstanding the Government's failure to make even a prima facie showing that counts 27 and 28 constitute wire fraud, the Government argued generally in closing that the structure of

the reverse merger was somehow fraudulent. Under the Government's theory, the following information was concealed from investors purchasing free-trading shares of USLG stock from Mr. Mallion:

- Mallion was holding the free-trading shares because Mr. Spivak could not sell the shares as an affiliate of the company. *See* Gov't Closing, 9/6/2024 Tr. at 107:8-11 ("[Y]ou saw from Mr. Spivak's own words that he knew, because he was the CEO of USLG, that he could not be involved on the free trading side. That was going to be Mr. Mallion."); and

- Mallion would sell the free-trading shares and send the proceeds back to USLG. *Id*. at 107:16-19 ("So that's how it was structured. Mr. Mallion was to receive five million of the free-trading shares, and he was going to send those proceeds back to Mr. Spivak."); *id*. at 110:1-3 ("That is what Mr. Spivak expected, that from Mr. Mallion's sale of those free-trading stocks, he was going to get his money, and it was for USLG.").

Put together, the Government's theory, vague as it is, was that Spivak and Mallion deceived investors by misrepresenting that Mallion was selling stock, when it was really USLG selling the stock. But there is no evidence that the investors who purchased stock from Mallion did not get exactly what they bargained for: the shares of USLG stock. Accordingly, the information, concealed from investors, is nothing more than "valuable economic information," squarely insufficient to sustain a wire fraud conviction under *Ciminelli*. 598 U.S. at 316.

*SEC v. Govil*, 86 F.4th 89, 105 (2d. Cir. 2023) is instructive. There, the defendant caused his company "to engage in three fraudulent securities offerings," representing to investors that the company "would use the proceeds from the transactions to satisfy outstanding debts and for general corporate purposes." *Govil*, 86 F.4th at 93. Instead, the defendant diverted over $7.3 million of the offering proceeds to his own private accounts. *Id*. The Second Circuit reversed the district court's ruling ordering disgorgement, finding it insufficient that the defendant's lie "denied [the victims] the right to make an informed decision when considering whether to make [an] investment." *Id*. at 105 (citing *SEC v. Govil*, No. 21-CV-6150 (JPO), 2022 U.S. Dist. LEXIS

16

933834, at *2 (S.D.N.Y. May 24, 2022)). The Second Circuit stressed that "'the right to make informed decisions about the dispositions of one's assets' is not a property interest and offending that right does not result in pecuniary harm." *Id*. (citing *Ciminelli*, 143 S. Ct. at 1128).

Similarly, in *United States v. Milheiser*, the Ninth Circuit vacated defendants' convictions for mail fraud because the Government's theory of fraud based solely on misrepresentations did not hold up under *Ciminelli*. 98 F.4th 935, 938-942 (9th Cir. 2024). The Court held that "[i]n conformance with [*Ciminelli*], we have rejected the notion that depriving an individual of accurate information alone constitutes fraud." *Id.* at 942. Rather, the Government has to show that the defendant deceived customers about the "nature of the bargain" (i.e., price, quantity, or quality). *Id*. at 940.

Here, the Government's theory of wire fraud suffers from the same defects as in *Govil* and *Milheiser*. The Government showed nothing more than that Spivak and Mallion deprived investors of information they might have wanted, perhaps because it could have "affected the victim's economic calculus"—the essence of a "right to control" theory prohibited by *Ciminelli*. Given that this is the only theory of wire fraud that the Government presented to the jury relating to Mallion's payments to USLG, the Government left the jury the "option of relying upon a legally inadequate theory." *Griffin*, 502 U.S. at 59. The jury was permitted to—and, at the Government's urging, likely did—convict based on the concealment of purely economic information. Consequently, the jury's convictions on wire fraud counts 27 and 28 were tainted by an irresolvable error, requiring that the Court acquit Spivak on these counts, or, in the alternative, grant him a new trial.

## V.    CONCLUSION

For the foregoing reasons, Spivak respectfully requests that the Court grant his motion under Rule 29 for an acquittal of the conspiracy count and the two counts of wire fraud, or, in the alternative, grant his motion for a new trial under Rule 33.

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2024, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.


/s/  *David L. Axelrod*
David L. Axelrod (Admitted *Pro Hac Vice*)
Lauren Engelmyer (Admitted *Pro Hac Vice)*

*Attorneys for Defendant Paul Spivak*