**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:21-cr-00491 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| PAUL SPIVAK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

Following a sixteen-day trial, a jury convicted Defendant Paul Spivak of conspiracy to commit securities fraud and two counts of wire fraud.  It returned verdicts of not guilty on some twenty-nine counts charging securities fraud and wire fraud.  Then, Mr. Spivak pled guilty to a second charge of conspiracy to commit securities fraud and six counts of securities fraud and wire fraud rather than proceed to trial on those charges.  Now, he seeks a judgment of acquittal or, in the alternative, a new trial and also moves to withdraw his guilty pleas.  Further, he seeks to stay this case pending a ruling from the Supreme Court in a case argued in December 2024.

## BACKGROUND

In a second superseding indictment, a grand jury charged Paul Spivak with two separate conspiracies to commit securities fraud involving different co-conspirators over different periods of time, multiple counts of securities fraud and wire fraud in connection with each conspiracy, and three charges of obstruction of

justice.  The second superseding indictment charged three other defendants as well, one of whom was only charged in connection with the first conspiracy.  Earlier indictments charged a total of seven defendants in addition to Mr. Spivak, but the others pled guilty (the government dismissed one) before the grand jury returned the second superseding indictment.

In an Omnibus Opinion and Order (ECF No. 327), the Court decided numerous pretrial motions, including motions to dismiss, bifurcate, and sever.  On the motion of the United States, the Court reconsidered certain of these rulings.  (ECF No. 394.) As a result of these rulings, the Court scheduled trial to proceed in three phases before the same jury:  (1) a trial on the conspiracy charged in Count 1 and the related charges of securities fraud and wire fraud; (2) a trial on the conspiracy charged in Count 2 and its related charges; and (3) a trial on charges obstruction of justice against Mr. Spivak.  Two of the defendants charged in the second superseding indictment pled guilty before trial, leaving Mr. Spivak and Charles Scott for the first phase of trial.

During the first phase of trial, the jury heard testimony from twenty-six witnesses in the government's case-in-chief, including from others involved in the conspiracy charged.  Additionally, both Defendants called witnesses and presented evidence on their behalf.  The jury deliberated over three days before returning its verdicts.  It found Mr. Scott not guilty of the two counts with which he was charged— one count of conspiracy and one of wire fraud.  (ECF No. 446.)  As to Mr. Spivak, the jury found him not guilty of all ten counts of securities fraud and nineteen counts of

wire fraud.  (*Id.*)  But the jury unanimously found Mr. Spivak guilty beyond a reasonable doubt of conspiracy to commit securities fraud and two counts of wire fraud (Count 27 and Count 28).  (*Id.*)

After the jury returned its verdict on the afternoon of September 10, 2024, Mr. Spivak pled guilty the next morning pursuant to a written plea agreement under Rule 11(c)(1)(A).  At the conclusion of the change of plea hearing, the Court accepted Mr. Spivak's pleas of guilty.  (ECF No. 478, PageID #8783.)  Mr. Spivak's guilty pleas, and the government's agreement to dismiss the obstruction charges at sentencing, resolved the remaining charges as to Mr. Spivak, leaving Mr. Scott to stand trial in phase two alone.

## ANALYSIS

Through his trial counsel, Mr. Spivak timely filed a motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and, in the alternative, for a new trial pursuant to Rule 33.  (ECF No. 480.)  Later, he filed a motion to withdraw his subsequent guilty pleas.  (ECF No. 484.)  Finally, he moved to hold the proceedings in this case in abeyance pending a ruling from the Supreme Court in *Kousisis v. United States*, No. 23-909 (S. Ct.), which was argued on December 9, 2024.  The Court addresses each motion in turn.

## I.  Motion for a Judgment of Acquittal (Rule 29)

Under Rule 29, a court may set aside a verdict and enter a judgment of acquittal.  Fed. R. Crim P. 29(c)(2).  It may do so only where "the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  On a motion under Rule 29, "the relevant question is whether, after viewing the evidence in the light

3

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Wheat*, 988 F.3d 299, 306 (6th Cir. 2021).   In analyzing this question, it is the job of the jury—not a court—"fairly to resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Hamm*, 952 F.3d 728, 736 (6th Cir. 2020) (quoting *Jackson*, 443 U.S. at 319).

Under this standard, even a trial court, which heard the testimony of witnesses firsthand, does not weigh the evidence or judge the credibility of witnesses. *Burks v. United States*, 437 U.S. 1, 16 (1978); *United States v. Paulus*, 894 F.3d 267, 275 (6th Cir. 2018) (quoting *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)).   A court draws all reasonable inferences in favor of the jury's verdict. *United States v. Bowens*, 938 F.3d 790, 794 (6th Cir. 2019) (citation omitted).   And it determines whether a reasonable mind might fairly find guilt beyond a reasonable doubt based on the record as a whole. *United States v. Fawaz*, 881 F.2d 259, 261 (6th Cir. 1989); *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984).

### I.A.   Conspiracy (Count 1)

Defendant seeks a judgment of acquittal on Count 1, the conspiracy charge, arguing that "the jury's acquittals on the substantive securities and wire fraud counts gut the conspiracy."   (ECF No. 480, PageID #8999.)   Defendant predicates this argument on the "acquit[al of Mr.] Spivak of every sale of restricted stock and every commission payment."   (*Id.*, PageID #9006.)   The Court takes Defendant's point that the jury's acquittal of Mr. Spivak on securities and wire fraud charges relating to

restricted stock and commissions removes some of the government's evidence from consideration of the sufficiency of the evidence.  (*See* ECF No. 480, PageID #9006–07.)

### I.A.1. Evidence on Count 1

But the conspiracy went beyond restricted stock and commissions.  Defendant concedes that the second superseding indictment also charged Mr. Spivak and others with "manipulating the price of the free-trading stock."  (ECF No. 480, PageID #9008.) At trial, even disregarding evidence relating to restricted stock and commissions, the United States presented ample evidence from which a rational trier of fact could (and did) find beyond a reasonable doubt that Mr. Spivak conspired to engage in securities fraud with respect to free-trading shares of USLG stock.  As just one example, Forrest Church testified about his transformation from an investor in USLG to a co-conspirator who worked with Mr. Spivak to manipulate the price of the companies' stock.  His purchases of the stock inflated its price, and he held the stock at key moments during the conspiracy to conceal Mr. Spivak's role and to continue the operation of call centers to solicit others for capital.  At one point, Church testified that he and Mr. Spivak took substantial steps toward freezing out the call center operation and setting up one of their own.  This testimony alone establishes the elements of conspiracy.

And the United States presented considerably more evidence than that:  text messages and emails showing Mr. Spivak coordinating the efforts of others to prop up USLG's stock price, records from banks and financial institutions, summary charts and exhibits showing movements in the price of the stock, and on and on.  The evidence before the jury allowed it to find that Mr. Spivak agreed with others to

commit securities fraud, that he knowingly joined and participated in the conspiracy charged in Count 1, and that the co-conspirators took certain overt acts to accomplish the ends of the conspiracy.

Defendant maintains that the jury's acquittal of Mr. Spivak on the substantive fraud counts means that he "could not have been engaged in a conspiracy to commit an 'offense against the United States' with these 'pirates.'"  (ECF No. 480, PageID #9007.)  This argument proves too much.  For one thing, the conspiracy is the offense and does not depend on other criminal conduct.  *See Frohwerk v. United States*, 249 U.S. 204, 209 (1919).  For another, the evidence at trial allowed the jury to find that Mr. Spivak conspired to commit securities fraud even as it found that the United States failed to carry its burden of proof on many of the substantive counts.  After all, Mr. Spivak had little contact with most of the investors who lost money in the scheme and played a role more secondary in terms of contact with them.

In any event, the jury convicted on two counts of wire fraud—each of which involved Mr. Spivak sending money to Richard Mallion, who ran the call centers to solicit money from investors to maintain the price of USLG's stock.  These verdicts support the jury's verdict on Count 1 by independently establishing the elements of the conspiracy charge beyond the fact of the conspiracy and Mr. Spivak's voluntary participation in it.

### I.A.2. Additional Arguments

Defendant makes two additional arguments that require a brief mention.

*First*, he relies heavily on *United States v. Medeiros*, No. 23-2019, 2023 U.S. App. LEXIS 33535 (10th Cir. Dec. 19, 2023).  There, the United States charged two

defendants with contracting fraud in a project of the Veterans Administration.  A jury returned guilty verdicts on all counts.  On the defendants' post-trial motions, the district court entered judgments of acquittal on three counts and ordered a retrial on the remaining conspiracy charge because the verdict on that count "was against the weight of the evidence and influenced by cumulative prejudice arising from multiple trial errors."  *Id.* at *12.  On appeal, the Tenth Circuit agreed that the acquittals on the substantive counts and their effect on the overt acts in furtherance of the conspiracy cast the evidence in a sufficiently different light that the district court did not abuse its discretion in ordering a new trial.  *Id.* at *16–17.

Defendant's reliance on *Medeiros* is misplaced.  As already explained, the evidence presented at trial here satisfies the standard under Rule 29 to support the jury's verdict on Count 1.  Unlike *Medeiros*, Mr.  Spivak's acquittal on certain substantive fraud charges does not call into question the evidence supporting the conviction or suggest that the jury relied on improper evidence from the charges involving restricted stock or commissions.  Indeed, the jury's verdict shows that it carefully considered and parsed the evidence on Count 1 over its three days of deliberations.  It convicted Mr. Spivak (even as it acquitted on numerous charges) but returned a not guilty verdict on Count 1 against Mr. Scott.  Based on its review of the record, the Court is satisfied that the evidence is sufficient to sustain the conviction.

*Second*, Defendant's motion for acquittal on the conspiracy count relies in part on statements that the prosecutor made during opening statement:  "Now, a key feature of this scheme you will learn about is that there are two sides to the scheme

7

that work together, okay?  Without one, the other can't work . . . the first is the free-trading stock side of the scheme; the second is the restricted stock side of the scheme." (ECF No. 480, PageID #9008; ECF No. 464, PageID #5672.)

In the context of the opening statement, however, these statements do not amount to much.  The remainder of the relevant portion of the opening goes on to say that "the restricted stock side of the scheme can't work without the free-trading stock side of the scheme.  The free-trading puts the price up, and then they use that price as part of their big pitch."  (ECF No. 480, PageID #9008; ECF No. 464, PageID #5676.) The prosecutor further explained, between the two portions of the opening that Defendant emphasized in his motion:

> Getting people to buy kept the price up because the more people want to buy, the higher the price goes.  And it also kept the volume up. . . . And that allows them not only to make money on those sales to Mr. Mallion, which he can then share back with the company, but also to engage in the more lucrative side of the scheme.

(ECF No. 464, PageID #5674.)  In other words, part of the scheme might be less lucrative.  But that does not make it less illegal.  And the evidence presented in phase one of the trial advanced that theory and allowed the jury to find that the free-trading side of the scheme violated federal law.

*Third*, Defendant closes his argument by suggesting a different argument, based on a claimed variance.  "Given the substantive acquittals, the remaining conspiracy is fundamentally different than the one the grand jury charged, and there is no practical way to proceed with a new trial without risking the invasion of Spivak's constitutional rights."  (ECF No. 480, PageID #9011.)  To the extent that Defendant bases his motion on a variance, the Court addressed that argument at various points

8

during the trial. In his Rule 29 motion at the close of the government's case, Defendant made a different variance argument. (*See* ECF No. 477, PageID #8584–86.) In any event, he fails to develop that argument now, so the Court need not and does not consider it further.

For all the foregoing reasons, the Court **DENIES** Defendant's Rule 29 motion for a judgment of acquittal on Count 1.

### I.B.   Wire Fraud (Count 27 and Count 28)

Mr. Spivak also seeks a judgment of acquittal on the two wire fraud charges of which he was convicted, arguing that the jury might have convicted him on a legally invalid theory based on the Supreme Court's decision in *Ciminelli v. United States*, 598 U.S. 306 (2023).

### I.B.1. Procedural Background

On May 11, 2023, during the pendency of this case and some fifteen months before trial, the Supreme Court issued its decision in *Ciminelli*. Based on the Court's review of the numerous pretrial motions and hearings, as well as the over 4,000 pages of trial transcripts, the first time Defendant raised any issue regarding *Ciminelli* came during the oral Rule 29 motion after the close of the government's case during phase one of the trial. (*See* ECF No. 477, PageID #8590–91.) In fact, on the eve of trial when the parties submitted draft jury instructions pursuant to the Court's schedule, no party mentioned *Ciminelli*, cited it as authority, or requested an instructed based on the decision. (ECF No. 390.)

In his Rule 29 motion, defense counsel for Mr. Spivak argued:

There's a line of cases, most recently with—I think it's *Ciminelli versus United States* from the Supreme Court where the Supreme Court really has taken on the notion that the government—that U.S. fraud statutes don't encompass every type of lie. They say that those lies, those kind of noneconomic lies are better left for the states to pursue through contract and fraud theories. But the government is explicitly trying to turn its indictment of the lack of commissions into these noneconomic fraud cases; nonFINRA brokers; just for an instance, hold periods. And so that's kind of another argument why they shouldn't be permitted to do that.

(ECF No. 477, PageID #8590–91.) After a response from the prosecutor (*id.*, PageID #8614–16), the Court recessed to review *Ciminelli* and consider the parties' arguments as they applied to the case against Mr. Spivak. (*See id.*, PageID #8616.) Then, the Court denied Defendant's Rule 29 motion. (*Id.*, PageID #8617–21.)

During the final charge conference two days later, Defendant's counsel briefly mentioned *Ciminelli* while discussing a potential edit to the drafted instructions to avoid the possibility of a conviction based on a pure omission theory. (*See* ECF No. 461, PageID #5313–16.) After discussions with counsel about a pure omission theory following the Supreme Court's decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024), the Court proposed a revision, which prompted the following exchange:

[Defense Counsel]: Your Honor, I think that that is inaccurate.

I think we run into—we also run into *Ciminelli* issues about information, like what that allows the jury to find is that there's some duty to tell investors everything.

The Court: See, I don't think it says that.

I think what it says is so there's two different scenarios potentially in this case, and I'll just use the commissions because I think that's probably what you're fighting about.

10

[Defense Counsel]:  I just don't—my problem is I don't know.

The Court:  Well, if you don't know now, I mean, we're never going to know.

[Defense Counsel]:  That's fair.

The Court:  But to put it in the context of commissions, I think there—again I'm not trying to kind of step into where the jury might or might not be.

There's certainly some investors who had conversations, you know, with various pirates, we'll say, where the subject of commissions just flat out did not come up.

So I don't think you could convict on a pure omission theory there.

But where there were at least one or two, I'd have to go back and check my notes, where the subject of commissions was discussed.  And there, if the full commission, 30, 40, 50 percent, whatever it was, was not disclosed, then that could be the basis.

[Defense Counsel]:  So that puts a very fine point on exactly what I'm concerned about.

I'm concerned that they're going to go tell the jury that the commission, the 50 percent was never disclosed to these investors; every single one of them was spoken to by a pirate, and it was never disclosed; and they had a duty to tell material facts, and they intentionally concealed it because they knew those investors wouldn't invest if that was disclosed.

That is exactly word-for-word what I expect them to tell the jury.

(ECF No. 461, Page ID #5316–17.)  Then, the discussion continued to focus on the appropriate language for a jury instruction to account for the Supreme Court's decision in *Macquarie Infrastructure* regarding an omission theory.  (*Id.*, PageID #5317–21.)  That discussion concluded with defense counsel confirming that the issue regarding the jury instructions tied back to Defendant's motion to dismiss (ECF No. 283; ECF No. 284; ECF No. 291), which did not raise (or cite) *Ciminelli*:

11

[Defense Counsel]:  Your Honor, just for the record, we cited in our motion to dismiss there are various cases that say brokers have no duty to speak about their commissions where there's no fiduciary duty.

That, of course, ties into this entire argument and I think it's further support that this is an improper extension of the fraud statute.

The Court:  All right. I understand your position.

Again, my view is it's raised and preserved for the record, and I did address that in one of the pretrial rulings as well.

(ECF No. 461, Page ID #5320–21.)  No other discussion of *Ciminelli* took place.

In short, the record shows that the pretrial motions did not raise any issue regarding *Ciminelli*.  Defendant briefly mentioned *Ciminelli* in his Rule 29 motion (albeit for a duty of full disclosure, a different proposition than the one to which the case speaks).  Then, in the charge conference, he raised and preserved instructions and arguments based on an omission theory—not *Ciminelli*.  Nor did any party seek any instruction or modification to any instruction based on *Ciminelli*.

Against this background, the Court finds that Defendant waived any argument that the jury instructions permitted a conviction on a theory that *Ciminelli* disallows.  *See* Fed. R. Crim. P. 30(d).  In this procedural posture, the Court cannot say that Defendant's argument based on *Ciminelli* withstands plain-error review.  *See United States v. Semrau*, 693 F.3d 510, 527 (6th Cir. 2012) (citation omitted) (recognizing that the failure properly to raise an objection to jury instructions permits review only for plain error).  That is, the Court cannot say that the instructions, taken as a whole, were likely to produce a grave miscarriage of justice.

12

### I.B.2. Defendant's Argument

Out of an abundance of caution, the Court reviews Defendant's argument based on *Ciminelli* on the merits as well.  In that case, the Supreme Court resolved a circuit split regarding the reach of the wire fraud statute in the context of a public corruption prosecution.  The Governor of New York launched a billion-dollar program to redevelop parts of the State, administered through a non-profit board.  Unbeknownst to the board, the defendant worked with State government insiders to structure the process for allocation of grants through the program in his favor.  Ultimately, the board awarded the defendant a $750 million development contract.  A federal investigation resulted in the conviction of the defendant on wire fraud charges.  Under Second Circuit law, the government's case against the defendant depended on the "right to control" theory, under which the defendant's actions deprived the board of valuable economic information that compromised its intangible right to control the allocation of funds through the program and so amounted to fraud.  The Supreme Court reviewed the case to determine whether the right-to-control theory, an outlier in the lower courts, provides a valid basis for a conviction under the wire fraud statute and held that it does not.  598 U.S. at 311.

In this context, *Ciminelli* has little, if anything, to do with the facts presented at the trial of Mr. Spivak.  Indeed, this case generally involved fraud in the form of deprivation of property (money)—not any intangible interest or an exotic theory of fraud.  Count 27 and Count 28 in particular involved the wiring of money from Mr. Spivak to Mallion to pay for the operation of a call center that solicited money

13

from investors to maintain the price of USLG's stock. And the Court did *not* instruct the jury on a right-to-control theory.

Defendant pulls some discussion in *Ciminelli* out of context to support an argument for a judgment of acquittal. In particular, he relies on language from the decision emphasizing that "the wire fraud statute reaches our traditional property interests. The right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest." *Id.* at 316; ECF No. 480, PageID #9012. Relying on this language divorced from its context suffers from two fatal flaws.

*First*, the Supreme Court made clear in *Ciminelli* that the wire fraud statute reaches property as traditionally defined and understood. That is, the object of the fraud cannot be some interest based on a creative theory that the defendant somehow provided incomplete information to a victim. In this respect, the Supreme Court drew a distinction between the object of a scheme and the means by which it is accomplished. In short, information is not property. *United States v. An*, No. 22-CR-460 (KAM), 2024 WL 2010017, at *8 (E.D.N.Y. May 7, 2024).

*Second*, and in any event, unlike *Ciminelli*, which relied on Second Circuit law to extend the reach of the wire fraud statute to intangible interests on the part of a public board to accurate information to discharge its duties in awarding contracts, Mr. Spivak's convictions in Count 27 and Count 28 depend on the transfer by wire of traditional property interests—namely, money.

14

At trial, the evidence relating to these counts provided a sufficient basis for a rational trier of fact to convict.  For example, the United States presented evidence that Mr. Spivak conspired with others to obtain money from investors by using call centers artificially to inflate the price of USLG stock and that he inquired about and pressured others to push sales of free-trading USLG shares knowing that he could not.  His text messages and other communications with those involved in the scheme demonstrated his intent to defraud, focusing on his concern and need for obtaining money from investors.  This scheme involved numerous misrepresentations of material facts, contained in the various particular representations made to individual investors.  And these two counts involved specific use of the wires as a part of this scheme.  Accordingly, a rational finder of fact could (and did) find that the evidence established the elements of wire fraud charged in these counts.

Contrary to Defendant's argument (ECF No. 480, PageID #9013), the prosecution presented evidence on the purpose of these transfers as part of the broader scheme between Mr. Spivak, Mallion, and others.  That evidence is too numerous to recount here.  But it enabled a rational jury to review the specific documents supporting Count 27 and Count 28 and to connect it that broader scheme.  The jury was well within its rights to do so.  Also contrary to Defendant's claim (*id.*, PageID #9013–14), the United States did *not* argue or imply to the jury that the reverse merger that facilitated USLG's into the public markets was somehow itself unlawful or the subject of any criminal charge.  Indeed, it presented evidence to the contrary.  (*See, e.g.*, ECF No. 465, PageID #6173–74.)

In the end, the *Ciminelli* Court read "the text of the federal fraud statutes" as "limited in scope to the protection of property rights." 598 U.S. at 314 (quoting *McNalley v. United States*, 483 U.S. 350, 360 (1987)). In this case, the United States proceeded against Mr. Spivak on a fairly conventional theory of fraud. Defendant's attempts to maneuver the prosecution's square theory of the case to make it fit the round hole of *Ciminelli* miss the mark. Those arguments seek to exploit the element of wire fraud that requires a material misrepresentation or concealment of a material fact. (*See* ECF No. 461, PageID #5355.) On the evidence presented at trial, that element does not remove the prosecution's theory from the traditional property framework endorsed in *Ciminelli* or transform this case into one only about information. The Court did not so instruct the jury, and the record permitted a rational finder of fact to find the elements of the wire fraud on Count 27 and Count 28 based on the traditional property rights that the statute protects.

## II.    Motion for a New Trial (Rule 33)

In the alternative, Mr. Spivak asks for a new trial under Rule 33. This Rule gives a court discretion to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Motions for a new trial are not favored and are granted only with great caution." *United States v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976) (citing *United States v. Hoffa*, 382 F.2d 856, 862 (6th Cir. 1967)).

A motion for a new trial involves a more generous standard of review than a motion under Rule 29. *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979), *aff'd*, 633 F.2d 219 (6th Cir. 1980). Such a motion may raise the argument that the jury's verdict is against the manifest weight of the evidence, though that

16

evidence might be legally sufficient for a finding of guilt. *United States v. Hughes*, 505 F.3d 578, 592–93 (6th Cir. 2007). On a motion under Rule 33, the court may act as a thirteenth juror, assess the credibility of witnesses, and weigh the evidence. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998).

Still, "such motions are granted only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *Hughes*, 505 F.3d at 593 (quoting *Turner*, 490 F. Supp. at 593). The court's role seeks to insure against a miscarriage of justice, *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988), such as where the judge disagrees with the jury's resolution of conflicting evidence, *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

In this case, the Court has thoroughly analyzed Defendant's arguments, both those discussed above and the others contained in his briefing. Based on its experience hearing the evidence while presiding at trial and its post-trial review of the record in connection with post-trial motions, sentencings, and other matters, the Court cannot say that the interests of justice require a new trial, the jury's verdicts are against the manifest weight of the evidence, or the verdicts otherwise depend on facts, credibility determinations, or other evidentiary findings that call the verdicts into question. Nor can the Court say that this case presents any extraordinary circumstance justifying a new trial. Additionally, in the Court's view, Defendant's arguments and claimed errors, both individually and cumulatively, did not result in any substantial legal error. Therefore, the Court finds that this case does not meet

the high standard of Rule 33 and declines to exercise its discretion to order a new trial.

## III.    Motion to Withdraw Guilty Pleas

After a court accepts a guilty plea, a defendant may withdraw his plea before sentencing where the defendant can show, as relevant here, "a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  This Rule aims "to allow a hastily entered plea made with unsure heart and confused mind to be undone." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991).  It does not empower a defendant "to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty."  *Id.* (quoting *United States v. Carr*, 740 F.2d 339, 345 (6th Cir. 1984)).  Nor does it give a defendant a right to withdraw a guilty plea.  *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012).

To guide the exercise of their discretion under the Rule, courts consider the following factors:  (1) "the amount of time that elapsed between the plea and the motion to withdraw it"; (2) "the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings"; (3) "whether the defendant has asserted or maintained his innocence"; (4) "the circumstances underlying the entry of the guilty plea"; (5) "the defendant's nature and background"; (6) "the degree to which the defendant has had prior experience with the criminal justice system"; and (7) "potential prejudice to the government if the motion to withdraw is granted."  *Id.*; *see also United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994).  These considerations present a general, non-exhaustive list of the types of considerations a

court may use in the exercise of its discretion, and no one factor or consideration is dispositive. *United States v. Bazzi*, 94 F.3d 1026, 1027 (6th Cir. 1996) (per curiam). But where "any substantial time has passed after the entry of the plea," courts deny a motion to withdraw. *Martin*, 668 F.3d at 794 (citations omitted).

In reply, Defendant requests an evidentiary hearing "[t]o the extent the Court believes additional information is required." (ECF No. 531, PageID #10289.)  In the Court's view, no further information is necessary to decide this motion.

### III.A. Application of Sixth Circuit Law

The Court denies Defendant's motion to withdraw his pleas of guilty to Count 2 and the related charges for two reasons.

*First,* based on the record in the present procedural posture, the Court understands this motion as protective.  That is, succeeding on a motion under Rule 29 or Rule 33 does not necessarily do Defendant much good if his guilty pleas stand. With the denial of the Rule 29 motion and its alternative, Defendant's motion to withdraw his pleas of guilty has less practical consequence.

*Second*, taking the motion at face value, the law of this Circuit does not support allowing Mr. Spivak to withdraw his guilty pleas.  On September 11, 2024, Mr. Spivak pled guilty to Count 2, Count 20, Count 22, and Counts 44 through 47 of the second superseding indictment. (ECF No. 478.)  He did not seek to withdraw his guilty pleas until December 2, 2024, after he filed his post-trial motion and after he changed counsel. (ECF No. 484.)  Ordinarily, the Court would think that this nearly three-month delay weighs against granting the motion.  Indeed, the Sixth Circuit has

19

affirmed such determinations.  *See, e.g.*, *United States v. Durham*, 178 F.3d 796, 798 (6th Cir. 1999); *see also United States v. Ford*, 15 F. App'x 303, 307 (6th Cir. 2001). However, the change in counsel that accounts for enough of this time appears to be made in good faith and not for purposes of delay.  Further, in light of the pending post-trial motion, it does not materially affect the timing of any further proceedings. These countervailing points restore to balance the considerations attending the timing of the motion.  Accordingly, the Court disregards the timeliness of the motion in disposing of Defendant's request and does not take the first two factors under *Bashara* into account.  27 F.3d at 1181.

Still, the most salient applicable factors the Sixth Circuit identifies to guide the Court's discretion in deciding the motion weigh in favor of its denial.  Defendant's guilty plea did not arise as a surprise or come out of the blue.  At the final pretrial conference on August 13, 2024, the Court afforded the parties an opportunity to make a record about their plea discussions.  At the end of counsel's comments, Mr. Spivak's trial counsel reported, simply, that based on the position of the United States it did not appear that further discussions would be fruitful.  Mr. Spivak then interjected and asked to advise the Court about the offer he made to the United States before his counsel, appropriately, shut down further remarks.  The Court had no other knowledge of any plea discussions and no involvement in them.

Based on its pretrial management of the case against Mr. Spivak, from detention proceedings through various discovery issues, pretrial motions, and preparations for trial, the Court always understood that Mr. Spivak was prepared to

admit to some or all conduct bound up with Count 2 and the related substantive fraud charges, which were set for phase two of the trial.  Indeed, the government's evidence against Mr. Spivak on those charges resulted from an investigation, much of which was included recorded conversations, resulting in particularly incriminating evidence.  In the face of that evidence, even the limited amount available in the second superseding indictment and through other pretrial proceedings, it was difficult to see how Mr. Spivak could prevail at a trial on those charges.

Then, after the jury returned its verdict in phase one, the Court spoke at side bar with counsel.  Mr. Spivak's trial counsel volunteered that "given the verdict, we need to figure out whether—what decision makes sense, what course makes sense, and it may be that we don't go to trial if we can work something out, but I need a little more time to figure that out, and I'll do it as quickly as possible."  (ECF No. 463, PageID #5632.)  Even as the parties, the Court, and the jury prepared for phase two, the Court emphasized its desire to afford Mr. Spivak and his counsel enough time under the circumstances to make a decision between pleading guilty or proceeding to trial.  (*Id.*, PageID #5633.)  The next morning, Mr. Spivak pled guilty.  (ECF No. 478.)

With this additional background, Mr. Spivak's decision to plead guilty was not impulsive or the product of momentary weakness following a long and tiring trial.  Instead, it came as the product of at least a month or more of reflection and discussions with his counsel—and only following the jury's verdict in phase one with the prospect of moving to a trial on charges with a considerably lower likelihood of

success.  Additionally, on the face of this record, that decision did not result from poor legal advice or ineffective assistance of counsel.

Contrary to Defendant's argument, the prejudice to the United States from allowing a change of plea at this late date would be substantial.  Although the Court sequenced the trial in different phases, co-defendant Charles Scott already stood trial on the charges in phase two.  Accordingly, the government would need to prepare for a separate trial of Mr. Spivak (after the Court ruled, several times, that it would only try the charges at issue in phase two in one trial of any and all defendants) and bring its witnesses for another trial—some of whom have already testified twice.  None of that accounts for the prejudice resulting from securing additional time on the Court's trial docket.  All of these considerations go well beyond the simple "inconvenience" of trial.  Indeed, in our constitutional order, a trial is the ordinary method for resolution of criminal case.  *See* U.S. Const. art III, § 2 & amend. VI.  It is the obligation of the Court and the government to try cases, not an inconvenience.  Here, the prejudice arises not from a trial on Count 2 and the related substantive charges (and potentially on the phase three obstruction counts) but from the fact that Mr. Spivak already had a trial, knowingly and voluntarily waived his right to a trial on the remaining charges, and effectively seeks to revisit the pretrial rulings he previously sought, largely successfully.

In the Court's view, these considerations outweigh the competing factors that favor Mr. Spivak.  Admittedly, he has little previous experience with the justice system.  But he had able counsel who served him well, which counteracts his limited

first-hand knowledge and experience.  And Mr. Spivak is well educated and sophisticated and made a considered decision to plead guilty based on many weeks or months of discussions with his trial counsel (and his prior counsel too).  Finally, *Bashara* gives weight to "whether the defendant has asserted or maintained his innocence." 27 F.3d at 1181.  The Court has given due consideration to this factor as set forth in Defendant's papers.  (ECF No. 484, PageID #9199–9200; ECF No. 531, PageID #10285 n.1 & #10287.)  In the exercise of the Court's discretion, that consideration fails to justify withdrawal of Mr. Spivak's guilty pleas for the reasons set forth above.

For these reasons, based on consideration of the factors the Sixth Circuit has identified to guide the Court's discretion in ruling on a motion to withdraw a plea of guilty, the Court declines to do so.

### III.B. The Change-of-Plea Colloquy

Defendant makes one additional argument, which the Court addresses briefly. As a final reason to allow withdrawal of his guilty pleas, Defendant notes that, "[d]uring the guilty plea colloquy on September 11th, this Court left the door open to allowing Spivak to withdraw his guilty plea."  (ECF No. 484, PageID #9201.) Defendant pled guilty pursuant to an agreement under Rule 11(c)(1)(A), and the Court accepted his guilty pleas.  (ECF No. 478, PageID #8783.)  Notwithstanding the evidence presented in the phase one trial, the Court deferred acceptance of the plea agreement until after the preparation of a presentence investigation and report pursuant to Rule 11(c)(3)(A).  (*Id.*, PageID #8781.)  The Court indicated that, after review of the presentence report, if it rejects the plea agreement, the Court will follow

23

the procedures set forth in Rule 11(c)(5). None of that amounts to providing a right to Mr. Spivak to withdraw his plea later for whatever reason.

## IV. Motion to Hold in Abeyance

The Court's power to stay an action is "incidental to the power inherent in every court" to manage its docket "with economy of time and effort" for all involved. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6th Cir. 2014) (quoting *Ohio Env't Council v. United States Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)); *see Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936). To decide whether a stay is appropriate, the Court considers (1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be "unduly prejudiced or tactically disadvantaged"; (4) whether a stay will simplify the issues; and (5) whether the burden of litigation will be reduced for the parties or the Court. *Abington Emerson Capital, LLC v. Adkins*, No. 2:17-cv-143, 2018 WL 2454601, at *2 (S.D. Ohio June 1, 2018) (citation omitted). This test is not precise, and the party seeking a stay bears the burden of showing both the need for delay and that no party or the public will suffer harm from it. *Id.* (citing *Ohio Env't Council*, 565 F.2d at 396).

On December 9, 2024, the Supreme Court heard oral argument in *Kousisis v. United States*, No. 23-909 (S. Ct.). The Court granted review to address questions related to fraudulent inducement to commit wire or mail fraud in the context of a public contract. That case arose out of a conviction for misrepresentations about the role of minority businesses on the project to meet federal participation goals—not the cost of the project or the quality of the work. In that respect, like *Ciminelli*, the case involves intangible harms that do not inflict economic losses on the victim and has

24

little, if any, direct relevance here.  One might fairly think that, if it did, one of the many lawyers involved in the pretrial work-up of this case might have raised it at some point after the Supreme Court granted the petition for a writ of certiorari on June 19, 2024.

Notably, the Sixth Circuit long ago rejected the fraudulent inducement theory at issue in *Kousisis*.  *See United States v. Sadler*, 750 F.3d 585, 590 (6th Cir. 2014).  Therefore, the theory of liability under the wire fraud statute on which the Supreme Court might soon pass has little bearing on this case.  Based on Sixth Circuit precedent, it simply played no role in the evidence, argument, or jury instructions at the trial of Mr. Spivak.  Although Defendant argues to the contrary now (ECF No. 579, PageID #10211), this motion presents the first occasion in the life of this case where any party has raised *Sadler*.  In any event, the defendant there "ordered pills and paid the distributors' asking price, nothing more." *Sadler*, 750 F.3d at 590.  Here, in contrast, there is more.  Much more.  The United States presented ample evidence, under any standard, from which a rational jury could (and did) find Mr. Spivak's fraudulent intent.

Based on its review of the record in *Kousisis*, with appropriate caution for making any prediction based on it or the oral argument, which the Court has reviewed, the Supreme Court's decision is unlikely to affect the legal issues in this case based on the evidence supporting the jury's verdicts.  Accordingly, the need for and benefits of a stay are minimal.  Because this case stands ready for its conclusion, the Court sees no reason to delay it further.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Spivak's Rule 29 motion, his alternative Rule 33 motion (ECF No. 480), his motion to withdraw his guilty plea (ECF No. 484), and his motion to hold these proceedings in abeyance (ECF No. 519).

**SO ORDERED.**

Dated:  February 12, 2025

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio

26