# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 1:21-cr-491-1 |
| ) | |
| Plaintiff, ) | Judge J. Philip Calabrese |
| ) | |
| v. ) | Magistrate Judge |
| ) | Jonathan D. Greenberg |
| PAUL SPIVAK, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Following a sixteen-day trial, a jury convicted Defendant Paul Spivak of conspiracy to commit securities fraud and two counts of wire fraud.  It returned verdicts of not guilty on some twenty-nine counts against him charging securities fraud and wire fraud.  Then, Mr. Spivak pled guilty to a second charge of conspiracy to commit securities fraud and six counts of securities fraud and wire fraud rather than proceed to trial on those charges.

At sentencing, application of the new guideline governing acquitted conduct presented questions of first impression in determining the loss amount.  In particular, the questions involve calculation of the loss amount where Defendant was convicted of conspiracy but acquitted on certain substantive fraud counts.  Because of the novelty and complexity of this issue, the Court memorializes its analysis of this issue under the United States Sentencing Guidelines.

## FACTUAL AND PROCEDURAL BACKGROUND

Along with a number of co-Defendants, Paul Spivak was charged as part of a criminal scheme to defraud investors and potential investors in US Lighting Group, Inc., a publicly traded company. At its core, the scheme involved the artificial manipulation of the share price of this penny stock to allow Defendant to enrich himself at the expense of investors.

### A. The Second Superseding Indictment

In the second superseding indictment, the grand jury charged Paul Spivak with two counts of conspiracy to commit securities fraud (Count 1 and Count 2), securities fraud (Counts 5 through 12 and Counts 18, 19, 20, and 22), wire fraud (Counts 23 through 43 and Counts 44 through 47), and obstruction of justice (Counts 48, 49, and 50).

Because the conspiracies charged in Count 1 and Count 2 involved different co-conspirators and took place over different periods of time, the Court severed trial on each conspiracy and its related substantive charges into separate phases before the same jury. Before trial, others charged in each conspiracy pled guilty, leaving Mr. Spivak to stand trial in the first phase of the trial on the Count 1 conspiracy with one other Defendant, Charles Scott.

### B. The Jury's Verdicts in Phase 1 and Phase 2

Following the first phase of trial on Count 1 and the related substantive charges, the jury returned a verdict on September 10, 2024. The jury found Paul Spivak guilty of Count 1, conspiracy to commit securities fraud and on two wire fraud charges (Count 27 and Count 28). It found him not guilty on securities fraud

(Counts 5 through 12 and Counts 18 and 19) and on other wire fraud charges (Count 23 through 26 and Counts 29 through 43). The jury found co-Defendant Charles Scott not guilty on Count 1 and on one count of securities fraud (Count 13).

Before the phase two trial commenced, Mr. Spivak pled guilty to the conspiracy charged in Count 2 and the related substantive charges, which included six counts of securities and wire fraud. The United States agreed to dismiss the obstruction of justice charges. Mr. Scott then proceeded to trial on the Count 2 conspiracy and its related substantive charges. The jury found him guilty on Count 2 and Count 20, a substantive count of securities fraud, but not guilty on two wire fraud charges (Count 45 and Count 47).

## ANALYSIS

Under federal law, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

### I.     The Acquitted Conduct Guideline (Section 1B1.3(c))

Section 1B1.3 of the United States Sentencing Guidelines addresses the relevant conduct a court may consider in determining the guideline range for a particular defendant. Until recently, conduct of which a defendant was acquitted at trial could serve as relevant conduct because of the different standards of proof for finding guilt (proof beyond a reasonable doubt) and at sentencing (preponderance). *See United States* v. *Watts*, 519 U.S. 148, 156 (1997) (per curiam).

3

Effective November 1, 2024, Amendment 826 modified Section 1B1.3 to prohibit the consideration of acquitted conduct in determining a defendant's guideline range, adding subsection (c), which provides that "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court." U.S.S.G. § 1B1.3(c). This new guideline comes with an important qualification: "unless such conduct also establishes, in whole or in part, the instant offense of conviction." *Id.* The amended guideline provides, in its entirety:

> *Acquitted Conduct.*—Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction.

*Id.*

In the run of cases, the line between acquitted conduct and "the instant offense of conviction" might prove fairly straightforward or, at least, manageable. In a case involving a conspiracy, however, matters quickly become more complicated. In conspiracy offenses, relevant conduct embraces "all acts and omissions committed . . . and in the case of a jointly undertaken criminal activity all acts and omissions of others that [are] [1] within the scope of the jointly undertaken criminal activity, [2] in furtherance of that criminal activity, and [3] reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3 cmt. n.3(A)–(B). Even without accounting for acquitted conduct, identifying relevant conduct in a conspiracy can prove difficult because relevant conduct and the scope of a conspiracy are not necessarily the same. *Id.* cmt. n.3(B). To determine a defendant's accountability under the guidelines, "the court must first determine the scope of the criminal activity

4

the particular defendant agreed to jointly undertake (*i.e.*, the scope of the specific conduct and objectives embraced by the defendant's agreement)." *Id.* "Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct." *Id.*

Against this backdrop, the new acquitted conduct guideline in Section 1B1.3(c) makes what might appear to be a modest change, removing from the equation responsibility for conduct for which a defendant was federally charged and acquitted. For a defendant such as Mr. Spivak, however, whose conduct the record shows extends to the ends of the conspiracy, the jury's verdict of guilty on the conspiracy stands in some tension with acquittal on the underlying substantive offenses. To be clear, that tension arises only for guideline purposes—specifically, determining the loss amount. As the Court explained elsewhere (*see, e.g.*, ECF No. 540, PageID #10370–72), the verdicts are not inconsistent. Put another way, a conspiracy may—as in this case—subsume underlying substantive counts such that, when determining the guideline range, not taking that conduct into account understates the conduct at issue in the conspiracy, notwithstanding an acquittal on that underlying charge. Recognizing the complexity of the issue, the Sentencing Commission explained in a podcast that it did not "try and come up with a resolution to every single murky case. [The Commission] actually left it to the discretion of the federal judge who hopefully sat through that trial and will be able to better parse through" the record. *Sentencing Practice Talk: Episode 27, Part 2*, United States Sentencing Commission (Oct. 31, 2024).

5

Based on its study and analysis of this issue since the jury returned its verdicts, the Court determines that the "unless" clause in the new acquitted conduct guideline in Section 1B1.3(c) does a lot of work to address this problem. That is, where the offense of conviction also establishes what would otherwise be acquitted conduct, then the sentencing court may take the acquitted conduct into account in its guideline calculation. A new application note confirms this reading of the guideline:

> Subsection (c) provides that relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct establishes, in whole or in part, the instant offense of conviction. There may be cases in which certain conduct underlies both an acquitted charge and the instant offense of conviction. In those cases, the court is in the best position to determine whether such overlapping conduct establishes, in whole or in part, the instant offense of conviction and therefore qualifies as relevant conduct.

U.S.S.G. § 3B1.3(c) cmt. n.10. In short, when calculating the guideline range, a court may consider any evidence of the total loss within the scope of the conspiracy, even if a jury acquitted a defendant of some conduct accounting for some specific losses.

## II. The Loss Amount and Paul Spivak's Acquitted Conduct

Defendant Paul Spivak objects to the loss amount in his guideline calculation based on the inclusion of amounts in the Count 1 conspiracy of which he was acquitted. He maintains that the recommended guideline calculation relied on acquitted conduct to determine the loss amount. (ECF No. 532, PageID #10291.) However, Defendant did not undertake a loss calculation of his own or propose (or demonstrate) such a calculation using a different method. For its part, the United States maintains, simply, that the acquitted conduct rules do not prelude the Court

6

from considering the full range of conduct underlying a conspiracy conviction. (ECF No. 573, PageID #11096.)

For purposes of the Count 1 conspiracy, the loss consists of the sum of (1) the amount investors spent to acquire restricted stock, plus (2) the amount they spent to acquire free-trading stock. These are actual losses, not intended losses. At trial, the evidence showed that the Count 1 conspiracy involved a total of $6.9 million. (ECF No. 461, PageID #5367; *see also id.*, PageID #5437.) Notwithstanding the efforts of the United States to point to greater losses now (ECF No. 573, PageID #11099–11102), the Court sticks to the evidence presented at trial for purposes of calculating the guideline loss amount and declines to engage in creative accounting to augment or tamp down the number.

But that calculation of the loss amount from the phase one trial comes before accounting for acquitted conduct. As Defendant summarizes in his post-trial motion for a judgment of acquittal (ECF No. 480, PageID #9003-04), the jury acquitted Mr. Spivak of charges involving investor purchases of restricted USLG stock, commissions paid from USLG to the pirates, and two transactions with co-Defendant Richard Mallion (though the jury unanimously convicted Mr. Spivak on two counts of wire fraud in connection with transactions involving Mr. Mallion). Because many of acquittals involve transactions charged as both securities fraud and wire fraud, the number of not guilty verdicts looks like it has a greater effect than it does. By the Court's calculation, the counts of acquittal amount to $303,500 of the total loss amount.

7

Under the acquitted conduct guideline in Section 1B1.3(c), however, the court may consider this amount in calculating the loss amount if Mr. Spivak's conviction for conspiracy in Count 1 also establishes this loss amount. Assuming that it does, the traditional relevant conduct guideline counsels against including at least some of this amount in the loss calculation. *See* U.S.S.G. § 1B1.3 cmt. n.3(B). "Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct." *Id.* Erring on the side of caution, excluding the entirety of this amount drops the loss amount to just under $6.6 million.

To this amount, the Court must add the amount of intended loss for the Count 2 conspiracy, which involved an undercover operation and, accordingly, did not involve actual losses. (*See* ECF No. 573, PageID #11099.) At the sentencing of Charles Scott, the Court found a loss amount of $3.25 million for the Count 2 conspiracy and noted that that figure was conservative. Again, the Court need not wade through various calculations or additional brokerage account statements or the like to try to adjust this figure. To be sure, there are different amounts of stock available for the co-conspirators in this count, and application of the relevant conduct guideline might result in a different calculation for each. In this case, however, the interests of judicial economy and consistency among the primary co-conspirators in Count 2 weighs in favor of using the same loss amount. In any event, with additional points in the guideline calculation at losses of $9.5 million and $25 million, there is not much reason to calculate the loss to the penny. For those reasons too, the Court

8

does not delve into the intricacies of determining how much of the $303,500 in losses tied to Mr. Spivak's acquitted conduct may still be relevant conduct under the new guideline. The specific answer to that question simply does not affect the calculation of the loss amount under the guidelines.

## CONCLUSION

After sitting through weeks of trial, and after analyzing for months how the issue of acquitted conduct and the guideline might affect sentencing following a conspiracy conviction, the Court finds itself in the position the Sentencing Commission contemplated—using its experience and familiarity with the record to apply the acquitted conduct guideline to a complicated set of facts. For all the foregoing reasons, giving Defendant the benefit of the doubt in its application of the guidelines, the Court finds that the loss amount for Mr. Spivak in the Count 1 conspiracy is just under $6.6 million plus $3.25 million in the Count 2 conspiracy, for a total loss amount of more than $9.5 million, which adds 20 levels to the guideline calculation.

Dated: April 22, 2025

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

9